# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT COURT OF EASTERN ARKANSAS

## JONESBORO, DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 2 6 2022

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

| | |
|---|---|
| Stephen Ward | ) |
| (*pro se Plaintiff*) | ) |
| vs | ) |
| HAROLD COPENHAVER | ) |
| LARRY ROGERS | ) CIVIL CASE # 3:22-cv-00250-LPR |
| JEFFREY MOORE | ) |
| WANNDA TURNER | ) |
| LISA TREVATHAN | ) **COMPLAINT FOR DAMAGES** |
| KIMBERLY RANDALL | ) |
| MELISSA KATHRYN MORRISON | ) |
| SIMRIT KAUR (*alias*) | ) **JURY TRIAL DEMANDED** |
| STAN MORRIS | ) |
| BILL CAMPBELL | ) |
| (*Defendants*) | ) |

This case assigned to District Judge Rudofsky
and to Magistrate Judge Ray

1

## INTRODUCTION

1. Comes Now, Plaintiff, Stephen Ward, an individual in his human
   capacity(hereinafter"Plaintiff"),hereby sues in this COURT OF
   RECORD , Defendants Harold Copenhaver, Larry Rogers, Jeffrey
   Moore, Wannda Turner, Lisa Trevathan, Kimberly Randall, Melissa
   Morrison, Simrit Kaur (alias), Stan Morris and going by their real name
   or pseudonym ,Simrit Kaur, Kimberly Randall, Melissa Kat, each in
   their individual capacity, who acted under color of law (collectively
   "Defendants"): The Plaintiff Stephen Ward is a natural human being
   who retains all rights unless they are specifically transferred in writing.
   The Plaintiff specifically does not consent to any under duress or
   implied rights transfers in any instance or any court of record.  The
   Plaintiff demands a Jury trial  AS SET FORTH ABOVE and sues the
   DEFENDANTS pursuant to ( Including but not limited to) First, Fourth
   & Fourteenth Amendments to the U.S. Constitution ,18 U.S.C 241 ,42 U.S.C
   2000a; 42 U.S.C. § 1983, Common Law Defamation, Common Law
   Defamation per se, Arkansas Codes § 16-63-207 - Libel and slander

## GENERAL ALLEGATIONS

2. This action seeks to compensate Plaintiff for violations of his First, Fourth &

   Fourteenth Amendments to the U.S. Constitution ,18 U.S.C 241 ,42 U.S.C

   2000a; 42 U.S.C. § 1983, 42 U.S.C. § 1985  Common Law Defamation,

Common Law Defamation per se. The Defendants acts were of complex design, pre planned and perpetrated upon him (according to the facts) without any regard for his rights granted to him by the United States Constitution. The Defendants under color of law pre planned an outcome that each Defendant played a very specific role intended to discriminate,seize, harass,humiliate, defame, ruin the Plaintiff because of his religion and for exercising his constitutional rights granted to him by the United States Constitution. In support thereof, Plaintiff states as follows:

## GENERAL ALLEGATIONS

### PARTIES

3. Plaintiff Stephen Ward is natural human being, an individual domiciled in Paragould, Arkansas and is sui juris. At times material hereto, Stephen Ward lived at 744 N 2nd st ,Paragould Arkansas.

4. Defendant Larry Rogers is being sued in his individual capacity , is an individual and is sui juris.At all times material hereto, Larry Rogers was the Jonesboro Animal Control Supervisor located at 6119 E Highland drive Jonesboro, Arkansas.

1. Defendant Jeffrey Moore is being sued in his individual capacity , is an individual and is sui juris.At all times material hereto,Jeffrey Moore was the

Jonesboro Animal Control Supervisor located at  6119 E Highland drive Jonesboro, Arkansas.

2.  Defendant Harold Copenhaver is being sued in his individual capacity , is an individual and is sui juris.At all times material hereto, Harold Copenhaver was the Mayor of Jonesboro Arkansas with his office located at 300 S Church st. Jonesboro, Arkansas.

3.  Defendant Bill Campbell is being sued in his individual capacity , is an individual and is sui juris.At all times material hereto, Bill Campbell was the Director of Communication for Jonesboro Arkansas with his office located at 300 S Church st. Jonesboro, Arkansas.

4.  Defendant Wannda Turner  is being sued in her individual capacity , is an individual and is sui juris.At all times material hereto, Wannda Turner was the Director of NAFA RESCUE and  lived at 412 county rd 763 , Brookland, Arkansas. nafahelp@gmail.com

5.  Defendant Lisa Trevathan  is being sued in her individual capacity , is an individual and is sui juris.At all times material hereto: Lisa Trevathan lived at 4629 Summit Ridge Jonesboro Arkansas and works at Northeast Arkansas Humane society  located at 6111 E Highland Dr, Jonesboro, AR ltrevathan@bellsouth.net

6. Defendant Kimberly Randall  is being sued in her individual capacity , is an individual and is sui juris.At all times material hereto: Kimberly Randall  lived at 6007 Beaver Creek lane  # 183 Jonesboro Arkansas. kimberlyrandall@gmail.com, & kimberly.randall@gmail.com

7. Defendant Simrit Kaur *( alias)*  is being sued in her individual capacity , is an individual and is sui juris. At all times material hereto:  Simrit Kaur *( alias)* lives in Memphis Tn and is personally known by Defendant Kimberly Randall so the actual address can be obtained during discovery.  Her verified email is ksimrit8@gmail.com   her verified Facebook messenger is : https://www.facebook.com/simrit.kaur.351

8. Defendant Stan Morris  is being sued in his individual capacity , is an individual and is sui juris.At all times material hereto he was the lead reporter at NEA news : Stan Morris  lived at 1611 W Washington , Jonesboro Arkansas. news@neareport.com

9. Defendant Melissa Kathryn Morrison is being sued in her individual capacity , is an individual and is sui juris.At all times material hereto: Melissa Morrison is believed to live at 2506 S Culberhouse st, Jonesboro Arkansas. Her  verified Facebook Messenger is   https://www.facebook.com/newt.and.toad

## JURISDICTION AND VENUE

10. This action seeks damages and injunctive relief under 42 U.S.C. §§ 1981 &

1983. This court has subject matter jurisdiction over this action under 28

U.S.C. §§ 1331 and 1343. It has supplemental jurisdiction over the state law

claims under 28 U.S.C. § 1367. This court also has jurisdiction under the

provisions of 28 U.S.C. § 2201 as this action is filed to obtain declaratory

relief regarding the constitutionality of the actions and policies of local

government.

11. Venue properly lies within this District under 28 U.S.C. § 1391(b). The named

defendants perform their official duties in this District, and the events and

omissions giving rise to the plaintiff's claims occurred in this District.

Intradistrict venue is proper in the IN THE UNITED STATES DISTRICT

COURT FOR THE DISTRICT COURT OF EASTERN ARKANSAS

JONESBORO, DIVISION because the claims asserted herein arise from

acts and/or omissions which occurred in CRAIGHEAD, GREENE

County, Arkansas

12. Venue properly lies within this District pursuant to the FRCP 4. Rule

4(k)(1)(a) and pursuant to Ar Code § 17-24-401 - "Long arm" jurisdiction for a

Defendant who had minimum contact with the State , solicits new business,

solicits collections,collects, contacts through email, mail phone citizens within

the States of Arkansas.

13. Venue properly lies within this District pursuant to 28 U.S. Code § 1332 (a) - Diversity of citizenship because the party is a resident of the city of Memphis which is divided into West Memphis on the Arkansas side and Memphis in the State of Tennessee.

14. Venue properly lies within this District pursuant to 28 U.S. Code § 1369 (a)- Multiparty, multiforum jurisdiction because more than 75% of the other Defendants reside in the state of Arkansas where the events took place and a Tennessee Defendant participated.

## STATEMENT OF FACTS

15. The Plaintiff Stephen Ward was almost murdered by his landlord" Paul Ervin" on Sept 27th 2021 as can be seen in case 28CR-21-810.

16. The Plaintiff Stephen Ward was unlawfully and immediately evicted at that time and was barred from returning to the property as can be seen in case 28CV-22-313.

17. After the murder attempt with a 4 ft axe handle the Plaintiff Stephen Ward as unable to return to his rented homestead to retrieve his inventories, equipment, tools of his trade, money, property, personal property, birth certificate, ss card and other employment documents.

18. As a result of being unlawfully evicted, having everything he owned stolen and all of his employment documents the Plaintiff and his Fiance became penniless and homeless.

19. The Plaintiff had lost everything except for a mini pony that was being housed elsewhere.

20. As a result of being instantly homeless ,having no money, no tools,no employment documents, physical address to get new employment documents etc, The Plaintiff exercised his first amendment right to panhandle while using his pony consistent with our muslim faith ,As the Quran has it, "**Prophet Muhammad took a night trip to heaven aboard a trusty winged pony-horse-mule-ish creature called Buraq".**

21. The Plaintiff panhandled as a means to get by until he could get his property, personal property and personal possessions and get things back to normal.

22. The Plaintiff's pony rides were an estimated 2-3 min ride and the Plaintiff would hum muslim songs and would post a sign in honor of his faith stating.


"Verily, God is compassionate and is fond of compassion, and He gives to the compassionate what he does not give to the harsh."

- Prophet Muhammad.

23.  The Plaintiff would donate his time to senior citizens centers, and would panhandle at different public accomodation spots throughout the city as defined under 42 U.S.C. § 2000a. Including the city of Jonesboro, Arkansas as a whole, The North Pole attraction (place of exhibition or entertainment) ,Huddle house, Susies, Arbys,  Golden Corral, gas station at the corner of Red wolf and East highland.  Overstock parking lot which many times had food truck vendors,

24.  In March 2022, he started hearing rumors from customers that the Mayor, Animal control officer and  animal rights groups were posting defamation posts on Facebook.com and was planning to shut the Plaintiff's pony rides down because they didn't like muslims and were getting tired of seeing the Plaintiff panhandling around town ,

25.In March 2022, Defendants Larry Rogers in his Individual Capacity, Harold Copenhaver in his individual capacity ,Jeffrey Moore in his individual capacity, Wannda Turner in her individual capacity and Lisa Trevathan in

her individual capacity acting under color of law plotted against Plaintiff

Stephen Ward's panhandling activities.

.

From  Wannda Turner < nafahelp@gmail com >
Sent  Tuesday. June 21 2022 2 49 PM
To  Larry Rogers <LRogers@jonesboro org>  Jeffrey Moore < JMoore@jonesboro org>
Subject  Shots costs and pony rides
Please let me know how much money I need to bring to pay for the shots  etc   when I come
on Monday.
Also, I did not hear back from the Mayor about the pony rides. Did he mention it during the
department head meetings. If not, I need to go to plan B.
--
Wannda Turner
http ./www facebook com/NAFA rescue
Jonesboro  Arkansas
870-243-4362


too degrees  I don t think he knows what
I am so sorry that I got you involved  This guy is crazy
Sent by Wannda Turner
From Lisa Travathan - No I commented on Mary dacus post
month or so ago and he sent that
I want them shut down

26. Defendants Larry Rogers in his Individual Capacity, Harold Copenhaver in

his individual capacity , Jeffrey Moore in his individual capacity,, Wannda

Turner in her individual capacity and Lisa Trevathan in her individual

capacity acted under color of law by spreading misinformation and used

their position within the city of Jonesboro, Arkansas, employment by

the city of Jonesboro, Arkansas, partnerships with the city of Jonesboro,

Arkansas , and joint activities within the city of Jonesboro, Arkansas to

validate their malicious violation of the Plaintiffs 1st, 4th, and 14th

amendment rights in violation of 18 U.S.C. 241 &, 42 U.S. Code §

2000a in a plot to (in their own words) "COMBAT PONY RIDES."

&"SHUT THEM DOWN".

 **NAFA Rescue**
July 4 · ⊖                                                                                                  ...

NAFA Rescue continues to receive 5-7 complaints during the weekends from citizens of Jonesboro
concerning the "Pony Rides" that are being held in parking lots within the City of Jonesboro.
Other organizations have also received complaints and concerns. As a result, we are sending,
what we believe is an informative email to businesses where the pony rides are occurring during
the hot summer days.

What the public can do ... encourage friends and families not to use the pony ride services while
they are on parking lots and in the heat.

Our concerns are as follows:

1. The animals do not have access to water and shade at all times
2. With the temperatures and humidity as hot as they have been (anything over 80 degrees in the
direct sunlight), the ponies/horses' feet are exposed to overheated concrete/asphalt that can
damage their feet.
3. The individuals who are presenting the pony rides do not have sufficient liability insurance. As a
result, if a child or their parent or injured during the pony rides, in many circumstances the
businesses will be held responsible for such injuries.
4. Finally, the locations on the corner of two busy streets makes this a significant traffic issue.

27. Defendants Larry Rogers in his Individual Capacity, Harold Copenhaver in

his individual capacity ,Jeffrey Moore in his human capacity, and Lisa

Trevathan through Defendant Wannda Turner posted false claims on the

website Facebook.com falsely accusing the Plaintiff of neglecting and

abusing the horses in violation of Ar code 5-62-104 .(SEE ABOVE )

28. Defendant Wannda Turner's posts made claims that: the horses were

   unhealthy , even though the horses had been :

   a)checked by Jonesboro, Arkansas police officers who did wellness

   checks and stated that the horse & pony were healthy and in good shape..

   b) checked by Jonesboro, Arkansas animal control.

29. Defendant Wannda Turner posts were written specifically to incite public

   outrage and encourage  people to call the Jonesboro, Arkansas police and

   Jonesboro AR animal control which was promoted, magnified and

   supervised by Defendant Lisa Trevatha, who encouraged people to call

   Jonesboro, Arkansas Police dept to make complaints.(SEE ABOVE )

30. The horses had also been checked by Jeffrey Moore acting under the color

   of law.  who attempted to make false claims in April about imaginary

   complaints.

31. Defendant Jeffrey Moore in his individual capacity acting under color of

   law  from the Jonesboro, Arkansas animal control violated the Plaintiff  by

   doing an unlawful search and seizure (violation of 4th amendment), on a

   private parking lot which he had no jurisdiction by claimed that there was a

   complaint about the Plaintiff and his  horse and pony  and he was  shutting

   the Plaintiff down and making him leave.

32. When the Plaintiff asked who made the complaint and what the complaint was about Defendant Jeffrey Moore claimed that there was not a complaint and that he had lied. , but was still shutting the Plaintiff down and making him leave.

33. Defendant Jeffrey Moore then stated that he was just passing by and saw the Plaintiff and that the mayor wanted the Plaintiff shut down.

34. The Plaintiff already knew that Defendant Jeffrey Moore was lying about passing by because a Jonesboro, Arkansas Animal control officer arrived before Defendant Jeffrey Moore and asked to wait to answer the Plaintiffs questions about the unlawful detention, investigation , search and seizure until Defendant Jeffrey Moore could arrive on the scene.

35. Defendant Jeffrey Moore began his unlawful detention, investigation , search and seizure by demanding to see the coggins papers and inspected the horse and pony as if there was a real complaint.

36. Defendant Jeffrey Moore acting under color of law proceeded to attempt to shut the panhandling pony ride down and told the Plaintiff to leave town even though the horses were healthy and he had the proper paperwork.

37. According to the Jonesboro, Arkansas Police Dept and Animal control records that the Plaintiff received through the Freedom of Information Request there was not a complaint about the Plaintiff or equine.

38. Defendant Jeffrey Moore's purpose for the stop was to profile the Plaintiff Stephen Ward and Shawntay Ervin with the intention of harassing, intimidating and depriving the Plaintiff of his ability to panhandle because of his Biased based policing technique because of the Plaintiff's gender, sexual orientation, religion, economic status, background, age, and culture which was the sole basis for conducting his fishing expedition search and siezure warrantless investigation.

39. Defendant Jeffrey Moore Jonesboro, Arkansas searched, seized. Harassed, investigated and attempted to shut the Plaintiff's panhandling and pony ride down even though they agreed that the ponies and horses were healthy, taken care of, not a danger to the community and even though there was not a crime in progress nor was the Plaintiff suspected of any crime.

40. The Plaintiff begged Defendant Jeffrey Moore to call the Jonesboro, Arkansas city hall to confirm that the Plaintiff was within his rights to panhandle, however he clearly stated that the Mayor did not want the Plaintiff panhandling in Jonesboro, Arkansas and demanded that we pack up and leave.

41. The Plaintiff heard Defendant Jeffrey Moore say to the other Animal control officer that the Plaintiff was just a white trash muslim and that the mayor wanted him gone.

42.  Plaintiff Stephen Ward got city hall on the phone which did confirm that the Plaintiff was lawful to be there and Defendant Jeffrey Moore stated that the mayor wanted the Plaintiff gone but "they could figure it out at city hall"

43. Defendant Jeffrey Moore contacted the real estate owner and had him remove the Plaintiff from the property even though the Plaintiff and food vendors had permission by the lessee ( Owner of Overstock  and the manager of Overstock who both agreed & approved us to set up the pony ride attraction.

44. According to the response from my FOIA requests, The only complaint that Defendants Harold Covenhaver , Jeffrey Moore, Larry Rogers or Jonesboro, Arkansas animal control received  was weeks before the incident and was from Defendants Wannda Turner and Lisa Trevathan who claim that  they got a few unverified phone calls. Which even if true is just hearsay as  there is no verification that the complaint was credible.

45.  Defendants Harold Covenhaver ,Jeffrey Moore, Larry Rogers ,Wannda Turner and Lisa Trevathan who claimed that they got complaints already knew the pony and horse was being well cared for because the Jonesboro, Arkansas Animal control and Jonesboro, Arkansas police dept had already checked the horses and told the Defendants that the horses were fine.

46. Defendants Harold Copenhaver,Larry Rogers,Wannda Turner and  Lisa

Trevathan  have never seen the Plaintiff's horse or pony up close nor are

they able to make animal diagnosis without a veterinary license pursuant to

AR code 17-101-307.

47.Defendant Wannda Turner and  Lisa Trevathan acted under color of law

even though they were not authorized to take complaints for and/ or dispatch

the Jonesboro, Arkansas Ar animal control , shut the Plaintiff's pony rides

down because they are not employees of the City of Jonesboro, Arkansas

48.Internal emails received through the FOIA requests show that even though

the horses were healthy and panhandling was protected speech, Defendants

Wannda Turner,Jeffrey Moore, Lisa Trevathan , Harold Copenhaver and

Larry Rogers  were still determined to " SHUT THEM DOWN" According

to Lisa Trevathan and combat pony rides according to Larry Rogers.

49. Defendants through Wannda Turner posted a Defamation post on June 3rd

that placed the Plaintiff and his pony rides in a false light by portraying that :

a) The horses standing on the concrete was abusive to them even though

she knew or should have known that horses cannot feel heat through

their hooves from hot pavement as demonstrated when " hot shoeing"

a horse with a red hot horse shoe which has no effect on them.



b) That the horses were too hot and didn't have shade even though on

   July 3rd before 2pm was mid 80s and cloudy. Most horse vets and

   authorities state that horses are fine in a heat index of up to 150

   degrees and the Plaintiff had 2 very large umbrellas for shade if the

   horses wanted it.

c) That the horse and ponies didn't have food or water even though the

   horses got offered food and water every 30 mins.



d) That the horse and ponies were too close to the road and a public hazard even though there had never been any such hazard and they were normally 10- 50 ft from the road.

e) That there was a liability to the property owner if there was an accident even though the equine liability act was established and adopted in 47 states including Arkansas code § 16-120-202 that protects based on the inherent risk associated with equine activities.

    f) And as a result of the false light and defamatory statements  the post encouraged everyone to ask their friends and family not to use the pony rides.

50.  Internal emails received through the FOIA requests show that even though the horses were healthy and panhandling was protected speech, Defendant Wannda Turner told Defendant Larry Rogers that she was moving  to plan B, ( which was to stir public outrage with Defamation ,disinformation and lies in order to convince people to harass the Plaintiff, to make complaints to the mayor, the city and  have the property owners not allow the Plaintiff to set up on their property in an attempt to " Shut them down".

51. The Plaintiff contacted Defendant Wannda Turner within an hour of her making the false light, and defamatory Facebook post with a "Cease and Desist" and asked her to remove it as it was going to cause significant damage and it was untrue.

From  Wannda Turner <nafahelp@gmail com>
Sent  Monday July 04  2022 8 01 PM
To  Larry Rogers  <LRogers@jonesboro org>   Jeffrey Moore <JMoore@jonesboro org>
Subject  messages from pony ride people
These are the Facebook Messages that I received from  Shawntay Ervin with regard to my post
on NAFA's Facebook Page
Cease And Desist
The facts in the post about the pony rides are inaccurate and
this  post is considered malicious liable  I recommend you take
this post down immediately because it is and will continue to
cause damage  At this moment I can see no option but to take
your organization and the actual person who wrote this post to
court  This is your only warning

52. Defendant Wannda Turner refused to remove or update the post even after

she was given proof that the post was untrue.



53. Other Facebook members who had experienced the Plaintiff and his horses

rides  contacted her saying that her post was untrue and she blocked many of

them to conceal the truth.

54. Even Facebook members who follow Wannda's NAFA RESCUE page and

had experience with horses left comments saying that her post was untrue

and she ignored them and would only respond to people that advanced her

cause.

55. Defendant Wannda Turner was proud that her post had run through the area

like wildfire so she sent the CEASE AND DESIST email that the Plaintiff

sent to Defendant Larry Rogers so that and the may he was informed of their

progress.(see email above)

56. The Facebook post was shared 349 times with almost 200 comments that she hadn't removed.

.



57. The Defendants through Defendant Stan Morris acting under color of law republished the Defendant Wannda Turner's defamatory post on his Facebook Page named " NEA REPORT"  with an audience of over 44,000 local residents all of which who are the Plaintiff's customers and/ or potential customers.

58. The Defendants through Defendant Stan Morris refused to publish on his Facebook page named  NEA REPORT the Plaintiff's post which addressed and invalidated Defendant Wannda Turner's NAFA defamation post.

59. The Defendants through Defendant Wannda Turner refused to publish on NAFA RESCUE's Facebook Page ,the Plaintiff's post which addressed  and invalidated the Defendant Wannda Turner's NAFA defamation post.

60.  The Plaintiff contacted Defendant Stan Morris who is the lead reporter and owner of NEA report and made him aware that the post was defamatory and that it should be removed and retracted.

61. Defendant Stan Morris refused by simply stating " You're and idiot"

62. Defendant Wannda Turner's PLAN B was a huge smear campaign by posting false claims concerning Plaintiff  Stephen Ward, Defaming him by accusing him of animal neglect and abuse which  was intended to fabricate outrage from the public and encourage them to make complaints to the mayor Harold Copenhaver, Larry Rogers, Jonesboro, Arkansas Police Dept, Jonesboro, Arkansas Animal control claiming animal abuse.

63.  These unjustified / unverified calls that were created by the Defendants Defamation efforts  would then be used as justification by Defendants, Larry Rogers and  Harold Copenhaver, to create and sponsor the Jonesboro, Arkansas ordinance   SUBSECTION 13 PROVIDING FOR GUIDELINES ON THE HANDLING, DISPLAYING, OR GIVING AWAY OF ANIMALS IN THE CITY OF Jonesboro, Arkansas.

64.  Defendant  Larry Rogers stated that the ordinance  was to " COMBAT PONY RIDES" because of the complaints created by the Defendants themselves through Wannda Turner's Facebook  posts and even though he already knew that the Horses were healthy and the post were false.

.

RIDES".Larry Rogers Statements " Combat pony rides" can be seen in many places including on kait8..
https://www.kait8.com/2022/07/20/council-committee-sends-animal-ordinance-full-counci l/?fbclid=IwAR1kIsDaOSyZj0t3HfrRUIIILuAFPaPfiZsP88SP4JiE0b5b40Q7YRh97fM

65. Defendants Harold Copenhaver, Jeffrey Moore and Larry Rogers,knew and/ or should have known that even if there were 1000 unverified untrue complaints. No amount of unverified or untrue complaints rise to the level that would allow the Defendants to violate the Plaintiffs 1st , 4th and 14th amendments of the United States Constitution 18 U.S.C. 241 and 42 U.S. Code § 2000a by passing an ordinance that is specifically geared to threaten , harass and COMBAT the Plaintiff and his pony rides.

66. Defendant Wannda Turner under color of law wrote the terms for SUBSECTION 13 PROVIDING FOR GUIDELINES ON THE HANDLING, DISPLAYING, OR GIVING AWAY OF ANIMALS IN THE CITY OF Jonesboro, Arkansas which specifically exempted the organizations that Defendants Wannda Turner & Defendant Lisa Trevathan represented and even though she does not work for the city of Jonesboro, Arkansas and has no authority granted by statute, custom, code in the State of Arkansas or subdivision of to write ordinances or act under the color of law.

.

child or adult be injured

I believe owners of the such entities should be required to get written permission from the owner of the property or the City of Jonesboro if it is city owned property and have it available along with health and vaccination records.

If you think proposed legislation would be a good route to address this, please let me know and I could provide a draft of something for the city attorney to examine and the Public Safety Committee to examine.

Thank you

--

Wannda Turner

http://www.facebook.com/NAFA.rescue

67. Defendants Harry Copernhaver, Larry Rogers, Lisa Trevathan and Wannda Turner while acting under color of law discriminated against the Plaintiff by creating SUBSECTION 13 PROVIDING FOR GUIDELINES ON THE HANDLING, DISPLAYING, OR GIVING AWAY OF ANIMALS IN THE CITY OF Jonesboro, Arkansas which they knew would prevent the Plaintiff from exercising his 1st, 4th, 14th amendments of the Constitution of the United States in violation of 18 U.S.C. 241 and 42 U.S.C. 2000a to the extent that the Plaintiff could no longer exercise said rights in Jonesboro, Arkansas or within at least a 50 mile radius.

68. Defendants Harry Copernhaver, Larry Rogers, Lisa Trevathan and Wannda Turner while acting under color of law knowingly created unfair trade practice and anti trust violations to specifically COMBAT the Plaintiffs pony rides.

69. The Plaintiff looked up Defendant Larry Rogers on Facebook and could not

believe his eyes when he saw posts stating that :

    a)  It's time to play cowboys and muslims.





**Larry Rogers**
May 28, 2011 · 🌐

I think he is a Republican, I like him.



    b)  How about I put my carbon footprint up your liberal ass

(SEE ABOVE)

c) Democrats making the world safe for terrorist.

(SEE ABOVE)

d) A mostly nude picture of himself.





**Larry Rogers**
June 5, 2011

So, here I was standing in the water trying to cool down, shook the water out of my hair and looked up on the bank. There were about 100 girls just staring at me. I felt so cheap.

e) Lots of " a womans place is in the kitchen " themed post



**Larry Rogers**
May 26, 2011 · 🌐

And they don't talk back.





f)  Lots of anti democrat post.

(SEE ABOVE)

g)  A post claiming that cops hate everyone.



70. After seeing the facebook posts of Defendant Larry Rogers, The Plaintiff realized that his worst nightmare had come true. Larry Rogers really did hate Muslims, Democrats, and apparently everyone and the Plaintiff had been his victim.

71. After seeing the facebook posts of Defendant Larry Rogers, The Plaintiff sent a freedom of information act request where he asked for all complaints about the Plaintiff's panhandling pony rides, and according to both Jonesboro, Arkansas animal control and Jonesboro, Arkansas Police dept

there were only the complaints made by Defendants Wannda Turner and Lisa Trevathan.

72. The Plaintiff sent a freedom of information act request where he asked for all emails to and from Defendants Wannda Turner, Lisa Trevathan and Larry Rogers and was shocked to see that Jonesboro, Arkansas Mayor Defendant Harold Copenhaver was involved the entire time and personally discriminated against the Plaintiff preventing the Plaintiff from exercising his 1st, 4th, 14th amendments of the Constitution of the United States in violation of 18 U.S.C. 241 and 42 U.S.C. 2000a to the extent that the Plaintiff could no longer exercise said rights in Jonesboro, Arkansas or within at least a 50 mile radius.

73. On Aug 16th the Plaintiff wrote a letter to Mayor Defendant Harold Copenhaver explaining the entire history of deprivation and harassment from the Defendants.

   a) The Plaintiff told Defendant Harold Copenhaver about the more than 20 discriminatory posts on Defendant Larry Rogers Facebook page and sent screenshots.

   b) The Plaintiff told Defendant Harold Copenhaver about the violations of his civil rights by Larry Rogers and Jonesboro animal control.

c) Stephen Ward and Shawntay Ervin would like to work this out with the city of Jonesboro, Arkansas so that everyone can simply put this behind us with everybody winning and nobody losing.

d) Stephen Ward and Shawntay Ervin would like the city of Jonesboro, Arkansas to consider making necessary upgrades in the Jonesboro, Arkansas Animal control facility so that the city can better monitor whats happening over there and prevent it from ever happening to anyone ever again.

e) Stephen Ward and Shawntay Ervin would like the city of Jonesboro, Arkansas to provide a location for us to use to set up the pony rides , since Larry Rogers and Jonesboro, Arkansas Animal control made it impossible for us to set up in our usual spot.

f) . Lastly we feel that we have proven the facts and under these circumstances that it is a very good win win opportunity for everyone involved.

g) We simply want life to go back to as normal as it can be under these awful circumstances.

h) Thanks in advance and please let me know either way on this.

.

63. Because of the negligence of the city of Jonesboro, Stephen Ward and Shawntay Ervin will have been discriminated against, harassed and will have real world struggles trying to recover from having their reputation and business ruined.

64. Stephen Ward and Shawntay Ervin would like to work this out with the city of Jonesboro so that everyone can simply put this behind us with everybody winning and nobody losing.

65. Stephen Ward and Shawntay Ervin would like the city of Jonesboro to make every effort to help rebuild their reputation within the community since it was lost due to the unfortunate behaviour of Larry Rogers and Jonesboro Animal control.

66. Stephen Ward and Shawntay Ervin would like the city of Jonesboro to consider making  the animal ordinance moot so  that the animal lovers in Jonesboro will not be a  victim of  Larry Rogers, Jonesboro Animal control ,  felon Wannda Turner, NAFA RESCUE, Lisa Trevathan, NEAHS, NORTHEAST ARKANSAS HUMANE SOCIETY.'s conspiracy .

67. Stephen Ward and Shawntay Ervin would like the city of Jonesboro to consider making necessary upgrades in the Jonesboro Animal control facility so that the city can better monitor whats happening over there and prevent it from ever happening to anyone ever again.

74. The Plaintiff Stephen Ward sent this email to Defendant Harold Copernhaver and every single member of the city counsel and Defendant Harold Copenhaver did not respond which deprived the Plaintiff of equal protection under the law in violation of  Ar code **14-43-504. Powers and duties of mayor generally.**

**(b)** The mayor shall:

**(1)** Supervise the conduct of all the officers of the city, examine the grounds of all reasonable complaints made against them, and cause all their

violations of duty or other neglect to be properly punished or reported to the
proper tribunal for correction;

75. The Plaintiff pointed out the anti trust and monopoly created by the
ordinance and the Defendants corrected their own ordinance because they
basically let Defendant Wannda Turner write the ordinance that would have
created a monopoly for her and Lisa Trevathan's organizations that they
represent while making it impossible for an average citizen of Jonesboro,
Arkansas to buy, sell or display dogs and cats except through the Defendant
Wannda Turner and Lisa Trevathns organizations that they represent.

76. Defendants Harold Covenhaver , Jeffrey Moore and Defendant Larry Rogers
actions and inactions were in direct violation of the Jonesboro, Arkansas
employee Handbook.

77. Defendant Larry Rogers and Jeffrey Moore's actions and inactions were
in direct violation of the Arkansas " 1020. THE LAW
ENFORCEMENT CODE OF ETHICS"

*(1) The Law Enforcement Code of Ethics shall be subscribed to by each*
*certified law enforcement officer. Violation of any portion of the Code*
*may, upon Commission direction, result in revocation of law*
*enforcement certification.*

78. During July and Aug The Plaintiff made several posts hoping to repair the damage caused by the Defamatory statements and exposed the evil deeds of the Defendants.

79. Defendants Kimberly Randall posing as psychologist in violation of AR Code § 5-37-208 (2015) Criminal Impersonation , and Alias Simrit Kaur posing as psychologist in violation of  Tenn code 39-16-302 - Impersonation of licensed professional, along with Defendant Melissa Morrison made Defamatory statements to ruin the Plaintiffs reputation by claiming that he had sex with under age girls in order to ruin any credibility the Plaintiff had and to aid  Defendants Wannda Turner,Lisa Trevathan, Jeffrey Moore, Larry Rogers, Harold Copenhaver in " COMBATING PONY RIDES and SHUTTING HIM DOWN, The Defendants stated goal.

80. Defendant Kimberly Randell while impersonating a psychologist and `under color of law reached out to the Plaintiffs Fiance accusing the Plaintiff of sex crimes with minors, child abuse and threatened to send DHS to the Plaintiffs house even though the Plaintiff has no kids in the house.





81. Defendant Kimberly Randell while impersonating a psychologist and `under color of law made many unwanted diagnosis in her professional opinion about the Plaintiff and shared them publically in violation of AR Code § 5-37-208 (2015) Criminal Impersonation AR CODE 17-95-402 practicing without a license, The federal privacy HIPPA Rule.

82. Several Defendants including Kimberly Randall claim that they know all the local judges and implied that the Plaintiff could not get a fair trial.

And no, my father would recuse himself. However, he is great friends with every judge in Craighead County. So, I very mu ⬇ ook forward to your "case .lthough it

By the way, my fiancée is an attorney. So is my brother. And my father is a judge. Should I give you a list of the thousands of court cases they filed? 😂😂😂 Hey, maybe my father will be the judge in your case. Wouldn't that be super fun!

Go ahead and keep making threats. Nobody is scared of a couple of low class, uneducated, pieces of white trash like the two of you.

I can't wait to see your imaginary "court case". You

recuse himself. However, he
is great friends with every
judge in Craighead County.
So, I very much look forward
to your "case". Although it
will never happen.

 Kimberly 📞 📹



to my office right now and
talk to my face. He's a tiny
little short guy with tiny man
syndrome. I dare either of
you to set foot in front of
me. You're all talk. And
you're too broke to even hire
an attorney. But it has been
fun talking to the court
clerks office and police clerk
this morning and laughing
about how crazy you are. So
thanks for that.



God you know literally
noting about the law. This
has been so fun. We have a
group chat sharing all of
your threats. It's hilarious.
Grade A trailer trash
entertainment. I'm not

37

83. Defendant Simrit Kaur *( alias*)  while impersonating a psychologist and

    `under color of law made many unwanted diagnosis in her professional

    opinion about the Plaintiff and shared them publically in violation of    Tenn

    Code § 39-16-302 - Impersonation of licensed professional Criminal

    Impersonation Tenn caode 63-19-108 practicing without a license, The

    federal privacy HIPPA Rule.

84. Defendant Simrit Kaur ( Alias) while impersonating a psychologist and

    `under color of law reached out to the Plaintiffs Fiance accusing the Plaintiff

    (in her so called professional opinion )of sex crimes with minors, being a

    theif and very dangerous.



38

Defendant Simrit Kaur ( Alias) while impersonating a psychologist stated

that she illegally accessed through her work the Plaintiffs file though the "

Crime information Center" which had been sealed and shared the contents

with the Plaintiffs Fiance advising her to leave him.

**However, viewing sealed records is quite difficult. Only a few agencies can view sealed records, including the Crime Information Center, which is how I viewed them. There**

**I really can't be more specific without getting myself in trouble. But, just be careful. I think there are a lot of lies being told to you a history of theft, of abuse, of stalking, of creating situations where a woman has no choice but to depend on him, of coercing her into**

He has had some arrests
sealed is all I can say. But
this guy is not a good man.

friend or anyone I know be
anywhere near him. He has
a very ugly history. You will
end up a victim one way or
another if you stay with him.

85. Defendant Simrit Kaur ( Alias) while impersonating a psychologist made a
fake appointment with the intent to lure the Plaintiffs Fiance to Memphis Tn.

86. After processing several FOIA requests for the Plaintiff,  On Sept 22 , 2022
, Bill Campbell in his individual capacity acting under color of law deprived
the Plaintiff of his equal access to government services by refusing to answer
any emails, or to process the Plaintiffs Stephen Ward's Freedom of
information act requests unless The Plaintiff provided his personal address
that the Plaintiff by law or statute had no duty to provide, and even though
the Plaintiff would be receiving his FOIA requests via email.

.

**Bill Campbell**

to me ▾

Sir, I have asked for your address every time I have written you. If you are from Arkansas, this should not be a problem. If you are not, let me know and we will move on.

I don't want to drag this out any more than you, probably less. I have plenty on my plate and this is not something I care to quibble over. This is my last response until you send your address.

Thank you,

**Bill Campbell**

Director of Communications

City of Jonesboro

870-336-7164 (w), 870-919-7042 (m)

.

87. The Defendants through Defendant Larry Rogers refused to answer emails
or approve the Plaintiff as an approved animal rescue who is exempt from
the ordinance even though the Plaintiff had a proven track record and was
eligible to be excluded from the $1 million dollar insurance requirement.

### EQUITABLE ALLEGATIONS

**88.** In violation of State and Federal Constitutional and Statutory provisions,
Defendants, and their agents and employees, including  Jonesboro police
department , have, and unless enjoined, will continue to subject the Plaintiff
to excessive discrimination, deprivation of rights  and injury that will cause
the  Plaintiff harm,  The Plaintiff is and will continue to be fearful of

exercising his rights in the city of Jonesboro because of their malicious, wanton, outrageous in the extreme, and especially calculated acts of evil that the Defendants were willing to go to deprive the Plaintiff of his rights so secured to him under the 1st, 4th, 14th amendments to the United States constitution.

89. Defendants Harold Copenhaver, Jeffrey Moore, Larry Rogers, Wannda Turner, Lisa Trevathan, Bill Campbell, Kimberly Randall, Melissa Morrison, Simrit Kaur *(alias)* and Stan Morris Riley knew or should have known that the courts have consistently determines that the Plaintiffs activities were protected under the 1st amendment to the constitution of the United States which provide for protected speech concerning solicitation of charitable contributions & commercial speech as can be seen in Riley v. Nat'l Fed'n of the Blind of N.C., Inc., 487 U.S. 781, 789 (1988) (solicitation of charitable contributions is protected speech); and Edenfield v. Fane,507 U.S. 761, 767 (1993) (commercial speech protected under First Amendment);Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981).

90. The city of Jonesboro Arkansas is a major public accommodations stop for out of state travelers because of **Interstate 555 (I-555)** which is an

interstate highway that connects Turrell, Arkansas at I-55 to Jonesboro at Highway 91. Formerly known as U.S. Highway 63.

91. The Plaintiff would normally set up within a few 100 ft to 2 miles from the highway described above,major off ramps and intersections on lots that provided public accommodations as listed under 42 U.S.C. 2000a.

## COUNT I

### Declaratory Relief

### (28 U.S.C. § 2201 ,28 U.S.C. § 1292)

**Plaintiff repeats and incorporates by reference each and every statement and allegation contained in all preceding paragraphs as though fully set forth in this section.**

92. There presently exists an actual controversy within this Court's jurisdiction regarding whether or not Defendants' actions and inactions described in all preceding Paragraphs are lawful, pursuant to:

   a)   the First and Fourth and Fourteenth Amendments of the U.S. Constitution.Ar Code 16-123-107, 42 U.S.C 2000a & 28 U.S.C. 1985.

   b)   18 U.S.C. 241 or 18 U.S.C 242 for all acts in paragraphs 1 through 92 specifically when they  harassed, defamed, threatened, blocked the

43

Plaintiff from using available services, blocked the Plaintiff from
making complaints,threatening  and intimidating the Plaintiff  by
making public statements  to " COMBAT PONY RIDES, AND SHUT
THEM DOWN" referring to the Plaintiff, making ordinances
specifically against the Plaintiff,and by refusing the Plaintiff lawful
information under the Arkansas code  **25-19-105** FOIA act,

93. There presently exists an actual controversy within this Court's jurisdiction
regarding whether or not the  Jonesboro Ar Ordinance Chapter 10, Article I,
Section 10 of the Jonesboro Code of Ordinances is lawful? The statute
states:

> *Sec. 10-13 - Other animal activities*
>
> *(a)        Any vendor, group, person, or business wishing to charge a fee, seek*
> *monetary donations, or receive any financial benefit for any activities associated*
> *with animal rides, handling, or displaying any animal in the City of Jonesboro*
> *must possess and display, or make immediately available for inspection upon*
> *demand of any representative of the City of Jonesboro, proof of current liability*
> *insurance of no less than $1,000,000 (one million dollars) AND possess written*
> *permission personally endorsed by the property owner or legally responsible*
> *party for the property on which they are located.  Said endorsement must include*
> *a valid contact number for verification.*

*(b) Any vendor, group, person or business involved in the selling or giving away of animals in a public location on property they do not own must possess written permission personally endorsed by the property owner or legally responsible party for the property on which they are located.  Said endorsement must include a valid contact number for verification.*

*(c)        The City of Jonesboro retains the right to stop any such activity should it be determined that there is not proper documentation or that a safety hazard or health concern exists to the public, or that the conditions place a clear risk to the animal(s) health and well-being.*

*(d)        Animal rescue and/or adoption organizations that have been verified by the City of Jonesboro are specifically excluded from the insurance requirements of this section.*

A) Whether or not the Defendants can create a special ordinance targeting the Plaintiff and by forcing him to purchase a  $1 million insurance policy for giving pony rides, even though the "Equine Liability Act" was adopted by 47 states including Arkansas Code 16-120-202 which shields equine sponsors from liability.

B)  Whether or not  the Defendants can legally prevent the Plaintiff from being  "specifically excluded" from the insurance requirement by refusing him equal access to apply for available privileges, protections and exclusions of ordinance  by refusing

to  answer the Plaintiff's requests that he show that he  is easily qualified for exclusion and has been a verified animal rescue for decades.

C) Whether or not the Defendants by creating this ordinance are violating the Clayton act or any antitrust laws by  collaborating with the Plaintiff's  competitors and  creating  2 classes of PEOPLE / and/or people , one which has to have a $1 Million insurance policy while  their Animal Rescue and/or adoption organization competitors are specifically excluded from the requirement.

D) Whether or not the Defendants by creating this ordinance are violating the 4th amendment by deputizing ANY representative of the city of Jonesboro and by  creating an ordinance  which creates for the city of Jonesboro representatives an unlawful right of  search and seizure in which the person being seized must provide proof that they have a $1 million insurance policy even though there is no reason to suspect the person being seized doesn't have one.

E) Whether or not the Defendants by creating this ordinance would be violating the 4th amendment by giving themselves

jurisdiction on private property that they don't presently and by

granting ANY city of Jonesboro representative the authority to

do an unlawful search and seizure by allowing them to search

for insurance policies and unlawful permission slips upon

demand simply for being seen and without being suspected of

any cognizable crime.

F)  Whether or not the Defendants by creating this ordinance

would be  in violation of the 14th amendment by self declaring

for themselves  a right to stop any activity on private property

by claiming "there is not proper documentation, a health risk or

hazard" without a clear definition of what those risks may be or

may not be or by including any type of process that would give

the Plaintiff any type of trial that would allow him to defend

himself or allow him any type of equal protection under the law.

.

G)  Whether or not the Defendants by creating this ordinance

would be  in violation of the 14th amendment by self declaring

for themselves though this ordinance a new law enforcement

agency that deputizes ALL employees of the city of Jonesboro

as law enforcement personnel , which will collectively be used

to only to enforce this ordinance which was according to their internal emails was specifically created to deprive, target and harass the Plaintiff.

H) Whether or not this ordinance is in violation of AR code 5-37-208 - Criminal impersonation (a) (1) which is a class D felony. By creating a new law enforcement agency and deputizing ALL employees of the city of Jonesboro by making them untrained law enforcement personnel who would be acting under the color of law .

94. There presently exists an actual controversy within this Court's jurisdiction regarding whether or not the Defendants acted unlawful when.

a) Through Defendant Simrit Kaur (alias) unlawfully requested and received the Plaintiff's Crime information Center report through her employer's access to CIC files.

b) Through Defendant Simrit Kaur *( alias)* received a court ordered sealed case because of her request.

c) Through Defendant Simrit Kaur *( alias)* Published details to others the contents of the sealed case.

    d) Is there a consequence for this type of disclosure by the Defendants.

95. There presently exists an actual controversy within this Court's jurisdiction

regarding whether or not the city of Jonesboro is a place of public

accommodation pursuant to  Ar Code 16-123-107, 42 U.S.C 2000a & 28

U.S.C. 1985.

96. There presently exists an actual controversy within this Court's jurisdiction

regarding whether or not the Defendant Harold Copenhaver is fit to continue

his duties as Mayor of Jonesboro Arkansas because of :

    a)  His participation and leading of a  "COMBAT PONY RIDES" and

        SHUT THEM DOWN" combat operation that publicly threatened and

        targeted the Plaintiff specifically.

    b) He willfully neglected his duties causing an intentional injustice to the

        Plaintiff under color of law.

    c)  His participation and leading of an operation that targeted and refused

        the Plaintiff his free exercise and enjoyment of his 1st, 4th,14th

        amendments of the U.S. constitutional rights, Ar Code 16-123-107

        Arkansas bill of rights.

    d)  He refused to conduct a meaningful investigation of the events

        specified in paragraphs 1 through 92 when the Plaintiff sent him

several emails which Defendant Harold Copenhaver refused to respond to.

e) Because he refused to let the Plaintiff be excluded from an ordinance that he qualified to be excluded from.

f) Because he refused to properly punish Defendant Larry Rogers for making Facebook posts with nude pictures of himself, Discrimination against woman with the basic theme " a woman's place is in the kitchen", a post that said " It's time to play cowboys and muslims" ,post that made sodemy statements : Bend over its gonna hurt", posts about hating democrats etc.

g) Because he refused to allow the Plaintiff to request and receive documents under the Arkansas FOIA because they would uncover his wanton and outrageous conduct against the Plaintiff.

h) Had actions and inactions that he intended to prevent or hinder the Plaintiff from his free exercise or enjoyment of his right or privilege so secured,

i) He introduced and passed an ordinance written by the Plaintiff's competitor that gave undue hardship to the Plaintiff and gave unfair advantages to the Plaintiff's competition.

j)  Because he has failed to faithfully execute his duties as defined under

**14-43-504. Powers and duties of mayor generally** which states:

***(b)** The mayor shall :*

***(1)** Supervise the conduct of all the officers of the city, examine the grounds of all reasonable complaints made against them, and cause all their violations of duty or other neglect to be properly punished or reported to the proper tribunal for correction;*

97. There presently exists an actual controversy within this Court's jurisdiction regarding whether or not it is considered Defamation, Defamation per se, libel per se when a :

a)  Facebook user shares, re-publishes the defamation post of another user on Facebook.com without any regard for the truth or falsity of the post. Is the  user who shared or re published a defamation post guilty of defamation libel as well as the person who wrote the post.

b)  Uses his business page as an interactive news page where Facebook user submit posts that he has final say on what he approves to go on his page. Under this tpe of setup does this Facebook user have any extra protection against a defamation lawsuit simply because the Facebook user styled his  facebook page as a news outlet *(instead of any other type outlet* )  in which he 100% controls what content he lets

people add to his page. *(This question refers to 47 U.S.C. § 230, a Provision of the Communication Decency Act)*

    c) Facebook user uses the Facebook icons on a defamation post, does that create a defamation for the one who supported the post by use of the icon.

    d) Is a publisher, who gathers posts from other Facebook users really protected under section 230 simply because user tag him and he decides what to accept for his page. If this were true every single Facebook user has the ability to be protected simply by changing their settings to require approval for any post they are tagged in. This question is referring to 47 U.S.C. § 230, a Provision of the Communication Decency Act

98. There presently exists an actual controversy within this Court's jurisdiction regarding whether or not:

    a) Does Defendants Harold Copenhaver (mayor),Larry Rogers and Jeffrey Moore (both city animal control) lose all types of immunity when they intentionally deprived a citizen of his Constitutional rights of the U.S. constitution as set forth in Paragraphs 1 through 92 as long as they are sued in their individual capacity, but under the color of law.

b) What if any  are the consequences for a city that refuses services to a single citizen? As set out in paragraphs 1 through 92, The city of Jonesboro refuses to answer any emails, refuses a meaningful investigation of several very serious incidents concerning a city worker with tons of evidence, to let the Plaintiff participate in ordinance exclusions that he is eligible for. Refuses to honor the small and lawfully obtainable FOIA requests without lawful cause.

c) What if any  are the consequences for a city that publicly declares war against a single citizen who is giving lawful pony rides? They declared war against a peaceful citizen by claiming that they are going to " COMBAT PONY RIDES & SHUT THEM DOWN.

d) What immunity is available for the Plaintiff within the city of Jonesboro Ar, The mayor, city and city workers have various types of immunity and as a result they have attacked the Plaintiff in every way possible as set forth in paragraphs 1 through 92,. They claim immunity protection and I would like to be immune as well so that they don't attempt anything like what they have done again. I have never transferred any rights whether  implied or otherwise to them, I am not a shareholder in the City of Jonesboro Corporation and as a natural human being I have reserved all my human rights and have the

right to be left alone as I have not granted anyone in the city of

Jonesboro city any authority over me.

99. The Plaintiff has worked very hard to learn and execute this complaint as to

fulfill his duties  and obligations to the court because he cannot afford an

attorney ,nor does he wish to have one appointed. The Plaintiff is qualified

and intends to take the California BAR exam in 2023 because California

along with 3 other states do not have the law school requirement.  There

presently exists an actual controversy within this Court's jurisdiction

regarding whether or not the Plaintiff as a pro se ACTUALLY has:

a) Equal access to the court with a meaningful trial to be decided by an

uninfluenced jury, who has not been influenced other than by the facts

of the case.

b) The right to have his case not be dismissed  for technical reasons as

long as he has a valid claim, evidence that his claim is true and that he

is owed damages. ( *example being the principles officer solution. Both*

*sides tell their version of the story and the one who was in the wrong*

*gets punished. This is instead of the modern day court proceedings*

*where the wrongdoer gets away because his attorney outsmarted the*

*other attorney.)*

c) The right to have the court not weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of the facts for that of the jury.

d) The right for the Plaintiff to benefit from all reasonable inferences that may be drawn from the evidence he has presented.

e) The right to a meaningful trial on the merits that benefits the Plaintiff because he has provided this Complaint and proof that the allegations in paragraph 1 through 92 are true and that the Plaintiff is entitled to relief under the law.

f) The right to prevail as a matter of law which provides for substantial justice under the law.

g) The right to file things electronically through pacer or some other format as the Plaintiff lives 30 miles away.

100. The Plaintiff is interested parties because he was subject to actions and inactions described and, accordingly, seek a declaration of his rights concerning the legality of those actions and inactions to which he was or will be subject.

## PRAYER FOR RELIEF

101. Pursuant to 28 U.S.C. § 2201 states that any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other

legal relations of any interested party seeking such declaration, whether or

not further relief is or could be sought. Any such declaration shall have the

force and effect of a final judgment or decree and shall be reviewable as

such. AND/OR

102.    Pursuant to 28 U.S. Code § 1292 - Interlocutory decisions states

(b) When a district judge, in making in a civil action an order not otherwise

appealable under this section, shall be of the opinion that such order involves

a controlling question of law as to which there is substantial ground for

difference of opinion and that an immediate appeal from the order may

materially advance the ultimate termination of the litigation, he shall so state

in writing in such order. The Court of Appeals which would have

jurisdiction of an appeal of such action may thereupon, in its discretion,

permit an appeal to be taken from such order, if application is made to it

within ten days after the entry of the order: Provided, however, That

application for an appeal hereunder shall not stay proceedings in the district

court unless the district judge or the Court of Appeals or a judge thereof

shall so order.

103.    Wherefore, Pursuant to 28 U.S. Code § 1292 "The Plaintiff  is entitled

to have these  controlling questions  as to which there is substantial ground

for difference of opinion answered and that an immediate appeal from the

order may materially advance the ultimate termination of the litigation, The

Plaintiff Stephen Ward respectfully requests that this approve his

application and order or for the Court to enter an order pursuant to 28

U.S. Code § 1292 directing the controlling questions found in Paragraphs 93

through 98 to the court of appeals to be answered.

Alternatively, Please answer these controlling questions Pursuant to 28

U.S.C. § 2201, The Plaintiff is entitled from any court of the United States,

upon the filing of an appropriate pleading, may declare the rights and other

legal relations of any interested party seeking such declaration, whether or

not further relief is or could be sought. Any such declaration shall have the

force and effect of a final judgment or decree and shall be reviewable as

such.. The Plaintiff Stephen Ward respectfully requests that this Court

enter an order pursuant to  28 U.S.C. § 2201 directing the controlling

questions found  in Paragraphs 93 through 98  to any court of the United

States to be answered.


## COUNT II

## VIOLATIONS OF  CIVIL RIGHTS

**(Violations of the 1st, 4th, 14th amendments of the United States**

**constitution, 42 U.S.C 2000a : 42 U.S.C. §1983, 18 U.S.C 241)**

**Plaintiff repeats and incorporates by reference each and every statement and allegation contained in all preceding paragraphs as though fully set forth in this section.**

104.   The fourth amendment of the United States constitution that  states in pertinent part:

*The Plaintiff's right to be secure from unreasonable searches and seizures.*

105.   The first amendment of the United States constitution that states in pertinent part:  *The First Amendment guarantees freedoms concerning religion, expression, assembly, and the right to petition.   It guarantees freedom of expression the rights of individuals to speak freely.  It also guarantees the right of citizens to assemble peaceably and to petition their government.*


106.   The fourteenth  amendment of the United States constitution that  states in pertinent part:  Equal Protection of the laws for United States citizens

107.   42 U.S.C 2000a  states in pertinent part:

(a) Equal access

*All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public*

*accommodation, as defined in this section, without discrimination or segregation*

*on the ground of race, color, religion, or national origin.*

108.   18 U.S.C 241  states in pertinent part:

*If two or more persons conspire to injure, oppress, threaten, or intimidate any*

*person in any State, Territory, Commonwealth, Possession, or District in the free*

*exercise or enjoyment of any right or privilege secured to him by the Constitution*

*or laws of the United States, or because of his having so exercised the same; or*

*If two or more persons go in disguise on the highway, or on the premises of*

*another, with intent to prevent or hinder his free exercise or enjoyment of any right*

*or privilege so secured—*

109.   42 U.S.C 1983 says in pertinent part :

*Every person who, under color of any statute, ordinance, regulation, custom,*

*or usage, of any State or Territory or the District of Columbia, subjects, or*

*causes to be subjected, any citizen of the United States or other person within*

*the jurisdiction thereof to the deprivation of any rights, privileges, or*

*immunities secured by the Constitution and laws, shall be liable to the party*

*injured in an action at law, suit in equity, or other proper proceeding for*

*redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.*

110.   From April to present The Defendants acting under color of law were and are in violation of 42 U.S.C 1983 by DEPRIVING the Plaintiff and18 U.S.C 241 by CONSPIRING against the Plaintiff's 1st, 4th,&14th Amendments to the United States Constitution and in violation of 42 U.S.C 2000a when they conspired to deprive the Plaintiff because he is a muslim , from setting up to panhandle at places throughout the city that were by 42 U.S.C 2000a standards are a place of public accomodation such as a restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises,including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station; any motion picture house, sports arena, or other place of exhibition or entertainment; and (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.of full and equal enjoyment of the goods, services,

facilities, privileges, advantages, and accommodations of any place of public accommodation,

111.  By undertaking the activities set forth in Paragraphs 1 through 92 Defendants through Defendant Jeffrey Moore committed acts in violation 18 U.S.C 241 and U.S.C. 2000a by making discriminatory statement because the Plaintiff is a muslim.

112.  By undertaking the activities set forth in Paragraphs 1 through 92 Defendants through Defendant Larry Rogers committed acts in violation 18 U.S.C 241 and U.S.C. 2000a by posting discriminatory statements on his Facebook page that its" time to play cowboys and muslims.

113.   In Mid April, Defendants acting under color of law through Defendant Jeffrey Moore acting under the color of law were in violation of 42 U.S.C. §1983,  when they violated the Plaintiffs Fourth Amendment rights to be free from unreasonable searches and seizure by harassing him, demanding papers, while conducting an unlawful investigation even through the Plaintiff:

   a)  was private property, outside of the officers jurisdiction.

   b)  Was not in the commision of any crime.

   c)  Was not suspected of any crime.

   d)  Had the right to be left alone.

e) Was panhandling which is a first amendment right of the United States Constitution.

f) Plaintiff had a constitutional right to be secure in his property.

114. From April to present The Defendants acting under color of law were and are in violation of 18 U.S.C 241 and of 42 U.S.C. §1983, when they conspired todeprive ,injure, oppress, threaten, or intimidate, preventing him from his first amendment right while Panhandling.

115. From April to present The Defendants acting under color of law were and are in violation of 18 U.S.C and 42 U.S.C. §1983, when they deprived the Plaintiff of his 14th amendment right of the U.S. constitution by depriving him of his equal protection under the law when they prevented him from enjoying the same privileges of other citizens even though he was eligible, by preventing him from receiving a meaningful investigation into his complaints, and by not allowing him equal access to records under the Arkansas freedom of information act, even though other citizens are able to request and receive records.

116. By undertaking the activities set forth in Paragraphs 1 through 92 Defendants through Defendant Jeffrey Moore committed acts in violation of 18 U.S.C 241, 42 U.S.C. §1983, 42 and U.S.C 2000a by discriminating against

the Plaintiff because he is a muslim and by violating the Plaintiff's first ,Fourth and fourteenth Amendment of the U.S. constitution.

117.    By undertaking the activities and violations set forth in Paragraphs 1 through 92 , The Defendants through Defendant Jeffrey Moore have violated 42 U.S.C. §1983, by violating the Plaintiff's first ,Fourth and fourteenth Amendment of the U.S. constitution..which prevented the Plaintiff from fully enjoying his 1st,4th and 14th Amendment right of the U.S. Constitution which is so secured.

118.    The Defendants knew or should have known that the methods, acts, omissions, and practices set forth in Paragraphs 1 through 92 were in violation of 18 U.S.C. 241 and 42 U.S.C. §1983, when they deprived the Plaintiff of his 1st, 4th and 14th amendment right of the U.S. constitution and in violation of 42 U.S.C.2000a when they made discriminatory remarks because the Plaintiff is a muslim and would not allow him equal access to public accomodations.

119.    The Defendants have committed acts in violation of 18 U.S.C and 42 U.S.C. §1983, when they deprived the Plaintiff of his 1st, 4th and 14th amendment rights of the U.S. constitution and 42 U.S.C 2000a which are alleged herein which have and continue to injure. Unless The Defendants are permanently enjoined from engaging further in the acts and violations alleged herein, the continued activities of The Defendants will result in irreparable

injury to the Plaintiff in violation of 42 U.S.C. §1983, 18 U.S.C 241 and his

1st, 4th and 14th amendment right of the U.S. constitution and 42 U.S.C 2000a

**120.**  As set forth in paragraphs 1 through 92, Plaintiff has been injured by

Defendants' .

**121.**  As a result of the above-described conduct, Plaintiff has suffered and

continues to suffer great pain of mind and body, shock, emotional distress,

physical manifestations of emotional distress, embarrassment, loss of

self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented

and will continue to be prevented from performing Plaintiffs daily activities

and obtaining the full enjoyment of life; has sustained and will continue to

sustain loss of earnings and earning capacity; and will incur expenses for

psychological treatment, therapy and counseling.

**122.**  The prima facie case to be made out, the Defendant's conduct was "wanton,

outrageous in the extreme, and especially calculated to cause serious mental

distress." Shewmaker v. Minchew, 504 F. Supp. at 163.

### PRAYER FOR RELIEF

**123.**  Pursuant to 42 U.S.C. §1983, provides a civil cause of action against the

person responsible and grants the Plaintiff a private right to sue for

compensatory, and punitive damages.

**124.**   Wherefore, Pursuant to  42 U.S.C. §1983, The Plaintiff  is entitled  to

compensatory  & punitive damages.  , The Plaintiff Stephen Ward

respectfully requests that this Court enter an order and judgment in favor

of the Plaintiff and:. The Plaintiff demands against Defendants in their

individual capacity , jointly and severally, Compensatory & punitive  damages

in excess of seventy - five thousand $75,000 dollars  ,or the maximum amount

allowed by law., together with  interest, and damages for prejudgment and

post-judgment delay.

## COUNT III

## (COMMON LAW DEFAMATION PER SE, AR CODE § 16-63-207 - Libel and slander)

**Plaintiff repeats and incorporates by reference each and every statement and allegation contained in all preceding paragraphs as though fully set forth in this section.**

125.   The statements made in paragraphs 1 through 92  by the Defendants, via

email,group chat and through Defendant Wannda Turner's Facebook posts,

accusing the Plaintiff of animal abuse, neglect and animal mistreatment were

false or known to be false at the time they were made and were made

intentionally, fraudulently, maliciously and in bad faith.

126.   Defendants through Defendants Lisa Trevathan and Stan Morris shared

and /or republished Wannda Turner's posts on their Facebook pages so that

the Defamation/ Libel statements could reach a much larger audience even

though they were false or known to be false at the time they were made and

were made intentionally, fraudulently, maliciously and in bad faith.

127.   The statements made by the Defendants, via email,group chat and

through Defendants KImberly Randall, Melissa Morrison and *( alias)* Simrit

Kaur's Facebook accounts which accused the Plaintiff of various sex crimes

accusing him of child abuse, rape of a minor, sex with a minor, being a thief,

a dangerous criminal with an extensive past history of crime were false or

known to be false at the time they were made and were made intentionally,

fraudulently, maliciously and in bad faith.

128.   Alternatively, The defendants made, published, republished,and shared

the disparaging remarks about the Plaintiff in reckless disregard for their

truth or falsity.

129.   The defendants made statements in malice or with reckless disregard for

their falsity .

130.   Defendant;s disparaging comments concerning the Plaintiff were such as

to cause injury to the Plaintiff's reputation.

131.   Defendant;s disparaging comments concerning the Plaintiff were such as
to cause injury to the Plaintiff by accusing him of an infamous indictable
offense and destroyed confidence in his  integrity, character and moral
turpitude .

132.   The Plaintiffs allege "that the Defendants posted,published, published,
commented, emailed, messengered or group chatted the Defamation and or
Libel Statements in paragraphs 1-92  "knowing of its falsity and
sensationalizing sting, with malice by intentional action or with reckless
disregard for the truth, with an intent to disparage and demonize Plaintiff
and the Plaintiff's pony rides in the hope of achieving their stated goal to "
SHUT THEM DOWN..

133.   As a  direct and proximate cause of the Defendants libelous statements,
The Plaintiff has been damaged by having to stop giving pony rides in the
area where he is domiciled.

134.   By making and publishing the false , defamatory and or libel statements
set forth in paragraphs 1 through 92 the Defendants have caused damage to
the Plaintiff.

135.   The Defendants knew or should have known that the methods, acts and
practices set forth in Paragraphs  1 through were going to cause damage to the
Plaintiff and his pony ride attraction.

136.  As a  direct and proximate cause of the Defendants Defamatory and

libelous statements, The Plaintiff has suffered irreparable damage to his

reputation and has lost scheduled parties, events, attraction possibilities for

the rest of his life in the area where he is domiciled.

137.  The Defendants portrayed Plaintiff Stephen Ward and his Pony ride

business as an animal abuser, who  is intentionally preying on the

community to get near underage kids.

138.  Defendants have through the national and international publication

of such sensational and defamatory (though false) allegations permanently

injured and damaged the Plaintiff's reputation which will prevent him from

continuing his pony ride attraction and future employment opportunities.

139.  The Defendants refused to retract their post even after they had received

the information that proved their post as being false.

140.  The Defendants published statements have cost the Plaintiff his earning

capacity and or loss of business opportunities for the rest of his life ,unless

the Plaintiff moves far away and starts over.

141.  The Defendants posts, email, groups chats,messages and comments

'accused The Plaintiff of a felony,' and by falsely accusing him of being

such a felon pursuant to AR code **§ 12-18-103, Ar code, § 5-14-110** holds

him up to 'contempt, hatred, scorn, and ridicule in the eyes of the public and

discredits him in the eyes of most law-abiding citizens, and future

employers.'

142.   The Defendants  comments of hurting the horses because they were

standing on hot pavement  'accused The Plaintiff of a felony,' as defined

under Ar code 5-62-104 (a) ;and that to falsely accuse him of being such a

felon holds him up to 'contempt, hatred, scorn, and ridicule in the eyes of the

public and discredits him in the eyes of most law-abiding citizens, and future

employers.'

143.   The Defendants made defamatory and/or libel statements through

Kimberly Randall and Simrit Kaur *(alias)* who claimed to be psychologists

contacted the Plaintiff's fiance claiming that they had unlawfully obtained

the court sealed records of the Plaintiff and claimed that he was a Pedophile,

thief and a very dangerous man causing his Fiance to distrust the Plaintiff.

144.   As a  direct and proximate cause of the Defendants libelous statements,

The Plaintiff has been damaged by having to close his pony ride attraction in

the area where he is domiciled.

145.   As a result of the above-described conduct, Plaintiff has suffered and

continues to suffer great pain of mind and body, shock, emotional distress,

physical manifestations of emotional distress, embarrassment, loss of

self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented

and will continue to be prevented from performing Plaintiffs daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and will incur expenses for psychological treatment, therapy and counseling.

146. The Defendants Libeled the Plaintiff and the Plaintiff is entitled to damages pursuant to Common Law Defamation Per Se  § 16-63-207 - Libel and slander

147. The prima facie case to be made out, the Defendants conduct was "wanton, outrageous in the extreme, and especially calculated to cause serious mental distress." Shewmaker v. Minchew, 504 F. Supp. at 163.

148. Under common  law, defamation per se is a statement that is so damaging that the law presumes its defamatory meaning *per se*, or "on its face." When the plaintiff proves their defamation per se case, the court presumes damages.

## PRAYER FOR RELIEF

149. Pursuant to Common Law Defamation per se and libel per se the Plaintiff is entitled to damages Libel per se include statements that falsely claim that a person committed a crime of moral turpitude  Unlike in a traditional action for libel, in an action libel per se, malice is presumed, and damages may be recovered without the plaintiff needing to plead or proving special damages .

150.    Wherefore, Pursuant to common law Defamation per se, The Plaintiff

Stephen Ward is entitled to general damages, actual, special damages ,

nominal & punitive damages. The Plaintiff Stephen Ward respectfully

requests that this Court enter an order and judgment in favor of the

Plaintiff and:. . The Plaintiff demands  against Defendants in their individual

capacity, jointly and severally, actual,  & punitive  damages in excess of twenty

five thousand ($25,000.00) dollars ,or the maximum amount allowed by law.,

together with  interest, and damages for prejudgment and post-judgment delay

### COUNT IV

### (COMMON LAW INVASION OF PRIVACY)

**Plaintiff repeats and incorporates by reference each and every statement and
allegation contained in all preceding paragraphs as though fully set forth in this
section.**

151.    Defendants through Defendants Simrit Kaur *(alia)* unlawfully obtained

the Plaintiff's court sealed records through the Criminal Information Center

records request through her job.

152.    Defendants through Defendants Simrit Kaur *(alia)* unlawfully obtained

the Plaintiff's court sealed records without the Plaintiff's permission .

153.    Defendants through Defendants Simrit Kaur *(alia)* unlawfully obtained the Plaintiff's court sealed records so that they could unlawfully publish and share the contents without regard for the court decision sealing them.

154.    Defendants through Defendants Simrit Kaur *(alia)* unlawfully obtained the Plaintiff's court sealed records and contacted the Plaintiff's Fiance to try to split up their relationship.

155.    As a  direct and proximate cause of the Defendants  invasion of privacy the Plaintiff started having rumors circulate about the Plaintiff being dangerous.

156.    By making and publishing the contents of the Plaintiff's sealed court records as set forth in paragraphs 1 through 92 the Defendants have caused damage to the Plaintiff.

157.    The Defendants knew or should have known that the methods, acts and practices set forth in Paragraphs  1 through 92 were going to cause damage to the Plaintiff and his pony ride attraction.

158.    As a  direct and proximate cause of the Defendants invasion of privacy The Plaintiff has suffered irreparable damage to his reputation and has lost scheduled parties, events, attraction possibilities for the rest of his life in the area where he is domiciled.

159.  The Defendants used the contents of his sealed court records to portrayPlaintiff Stephen Ward as a thief, abuser, and generally a bad guy who  is intentionally preying on the community to get near underage kids.

160.  Defendants have through the publication of such sensational allegations permanently injured and damaged the Plaintiff's reputation which will prevent him from continuing his pony ride attraction and future employment opportunities.

161.  The Defendants refused to share the contents of his file so that the Plaintiff could verify their truthfulness.

162.  The only files that could have been sealed concerning the Plaintiff is the files from the time when he was a juvenile and in the foster care system prior to his 13th birthday.

163.  The Defendants publishing the contents of his Sealed court file and making public statements about private matters have cost the Plaintiff his earning capacity and or loss of business opportunities for the rest of his life ,unless the Plaintiff moves far away and starts over.

164.  The Defendants used the contents of the sealed court file to support their defamatory posts, email, groups chats,messages and comments 'accused The Plaintiff of a felony,' and by falsely accusing him of being such a felon

pursuant to AR code **§ 12-18-103, Ar code, § 5-14-110** holds him up to

'contempt, hatred, scorn, and ridicule in the eyes of the public and discredits

him in the eyes of most law-abiding citizens, and future employers.'

**165.** The Defendants  comments based on the contents of the file that to

falsely accuse him of being such a felon holds him up to 'contempt, hatred,

scorn, and ridicule in the eyes of the public and discredits him in the eyes of

most law-abiding citizens, and future employers.'

**166.** The Defendants acted  through Kimberly Randall and Simrit Kaur *(alias)*

who claimed to be psychologists and who  contacted the Plaintiff's fiance

claiming that they had unlawfully obtained the court sealed records of the

Plaintiff and claimed that he was a Pedophile, thief and a very dangerous

man causing his Fiance to distrust the Plaintiff.

**167.** As a  direct and proximate cause of the Defendants libelous statements,

The Plaintiff has been damaged by having to close his pony ride attraction in

the area where he is domiciled.

**168.** As a result of the above-described conduct, Plaintiff has suffered and

continues to suffer great pain of mind and body, shock, emotional distress,

physical manifestations of emotional distress, embarrassment, loss of

self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented

and will continue to be prevented from performing Plaintiffs daily activities

and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and will incur expenses for psychological treatment, therapy and counseling.

169.    The Defendants invaded the Plaintiff's privacy  and as a result  the Plaintiff is entitled to damages pursuant to Common Invasion of Privacy.

170.    The prima facie case to be made out, the Defendants conduct was "wanton, outrageous in the extreme, and especially calculated to cause serious mental distress." Shewmaker v. Minchew, 504 F. Supp. at 163.

171.    Under common  law, invasion of privacy is  based on public disclosure of private facts, where recognized, the plaintiff does not have to prove any mental element, but, rather, need only show that the disclosed matter was private and not of legitimate concern to the public, and that disclosure would be highly offensive to a reasonable person[is a statement that is so damaging that the law presumes its defamatory meaning *per se*, or "on its face." When the plaintiff proves their defamation per se case, the court presumes damages.


## PRAYER FOR RELIEF

172.    Pursuant to invasion of privacy, the Plaintiff is entitled to damages Wherefore, Pursuant to common law Defamation per se, The Plaintiff Stephen Ward is entitled to general damages, actual, special damages ,

nominal & punitive damages. The Plaintiff Stephen Ward respectfully

requests that this Court enter an order and judgment in favor of the

Plaintiff and:. . The Plaintiff demands  against Defendants in their individual

capacity, jointly and severally, actual,  & punitive  damages in excess of twenty

five thousand ($25,000.00) dollars ,or the maximum amount allowed by law.,

together with  interest, and damages for prejudgment and post-judgment delay

## COUNT V

## ( COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS TORT OF OUTRAGE)

**Plaintiff repeats and incorporates by reference each and every statement and allegation contained in all preceding paragraphs as though fully set forth in this section.**

173.   The Arkansas Supreme Court in AMI 401 and in  Ross v. Patterson, 307

Ark. 68, 817 S.W.2d 418 (1991); Cordes v. Outdoor Living Center, Inc., 301

Ark. 26, 781 S.W.2d 31 (1989); Harris v. Arkansas Book Co., 287 Ark. 353,

700 S.W.2d 41 (1985); Tandy Corp. v. Bone, supra; Givens v. Henson, 275

Ark. 370, 631 S.W.2d 263 (1982). Provides that a Plaintiff is entitled to relief and damages based on Intentional infliction of emotional distress and set the conditions for the entitlement,  The Supreme court cases above and AMI 401 say in pertinent part:

AMI 401 Issues—Tort of Outrage—Burden of Proof

(Plaintiff) claims damages from (defendant), and has the burden of proving each of the following three essential propositions:

First, that *[he][she]* has sustained damages;

Second, that (defendant) willfully and wantonly engaged in extreme and outrageous conduct;

And third, that such conduct proximately caused damage to (plaintiff) in the nature of emotional distress [and bodily harm].

*[If you find from the evidence in this case that each of these propositions has been proved, then your verdict should be for (plaintiff); but if, on the other hand, you find that any of these propositions has not been proved, then your verdict should be for (defendant).]*

*A person acts willfully and wantonly when [he][she] knows or should know in the light of surrounding circumstances that [his][her] conduct will*

*naturally and probably result in emotional distress [and bodily harm] and continues such conduct in reckless disregard of the consequences.*

*By extreme and outrageous conduct, I mean conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.*

*Emotional distress must be reasonable and justified under the circumstances and must be so severe that no reasonable person could be expected to endure it.*

174.    The Plaintiff Stephen Ward had rights granted to him by the 1st,4th and 14th amendments to the United States Constitution.

175.    The Defendants under color of law and or not under the color of law violated those rights as set forth in paragraphs 1 through 92.

176.    The Defendants under color of law deprived the Plaintiff of his 1st, 4th, 14th amendments to the United States constitution so secured as set forth in paragraphs 1-92.

177.    By undertaking the activities set forth in Paragraphs 1 through 92 , Defendants acts against the Plaintiff were in violation of 18 U.S.C 241, 42 U.S.C 1983., 42 U.S.C 2000a, Ar Code 16-123-107.

178.  Defendants through Wannda Turner, Kimberly Randall, Melissa
      Morrison,Simrit Kaur *( alias)* and Stan Morris injured the Plaintiff and his
      reputation by publishing and/ or republishing defamation statements that
      were not true and that permanently deprived the Plaintiff his ability to
      panhandle without outrage from the public.

179.  As set forth above and in paragraphs 1 through 92 The, Plaintiff has
      been injured by Defendant.

180.  By undertaking the activities and violations set forth above and in all
      Paragraphs of this COMPLAINT, The Defendants have caused damage to
      the Plaintiff.

181.  The prima facie case to be made out, the Defendants conduct was
      "wanton, outrageous in the extreme, and especially calculated to cause
      serious mental distress." Shewmaker v. Minchew, 504 F. Supp. at 163.

182.  As a result of the above-described conduct, Plaintiff has suffered and
      continues to suffer great pain of mind and body, shock, emotional distress,
      physical manifestations of emotional distress, embarrassment, loss of
      self-esteem, disgrace, humiliation and loss of enjoyment of life; was
      prevented and will continue to be prevented from performing Plaintiffs daily
      activities and obtaining the full enjoyment of life; has sustained and will

continue to sustain loss of earnings and earning capacity; and will incur

expenses for psychological treatment, therapy and counseling.

183. Common law and Arkansas law recognizes intentional infliction of

emotional distress as an outrage claim.


## PRAYER FOR RELIEF

184. Pursuant to common law and  The Arkansas Supreme Court in AMI 401

and in  Ross v. Patterson, 307 Ark. 68, 817 S.W.2d 418 (1991); Cordes v.

Outdoor Living Center, Inc., 301 Ark. 26, 781 S.W.2d 31 (1989); Harris v.

Arkansas Book Co., 287 Ark. 353, 700 S.W.2d 41 (1985); Tandy Corp. v.

Bone, supra; Givens v. Henson, 275 Ark. 370, 631 S.W.2d 263 (1982). Which

provides that a Plaintiff is entitled to relief and damages based on Intentional

infliction of emotional distress and set the conditions for the entitlement,  The

Supreme court cases above and AMI 401 the Supreme Court has stated that the

Plaintiff is entitled to damages because he has proven that the Defendants

actions were intentional , wanton and fall within the guidelines to be

considered " Intentional Infliction of Emotional Distress.

185. Pursuant to  libel and slander AR Code § 16-63-207 which provides for a

civil cause of action.

186.    Pursuant to common law and  The Arkansas Supreme Court in AMI 401

and in  Ross v. Patterson, 307 Ark. 68, 817 S.W.2d 418 (1991); Cordes v.

Outdoor Living Center, Inc., 301 Ark. 26, 781 S.W.2d 31 (1989); Harris v.

Arkansas Book Co., 287 Ark. 353, 700 S.W.2d 41 (1985); Tandy Corp. v.

Bone, supra; Givens v. Henson, 275 Ark. 370, 631 S.W.2d 263 (1982). Which

provides that a Plaintiff is entitled to relief and damages based on Intentional

infliction of emotional distress and set the conditions for the entitlement,  The

Supreme court cases above and AMI 401 the Supreme Court has stated that the

Plaintiff is entitled to damages because he has proven that the Defendants

actions were intentional , wanton and fall within the guidelines to be

considered " Intentional Infliction of Emotional Distress.

187.    Wherefore, Pursuant to The Arkansas Supreme Court in AMI 401 and in

Ross v. Patterson, 307 Ark. 68, 817 S.W.2d 418 (1991); Cordes v. Outdoor

Living Center, Inc., 301 Ark. 26, 781 S.W.2d 31 (1989); Harris v. Arkansas

Book Co., 287 Ark. 353, 700 S.W.2d 41 (1985); Tandy Corp. v. Bone, supra;

Givens v. Henson, 275 Ark. 370, 631 S.W.2d 263 (1982). The Plaintiff Stephen

Ward respectfully requests that this Court enter an order and judgment in

favor of the Plaintiff and:. The Plaintiff demands against Defendants in their

individual capacity,, jointly and severally, appropriate , nominal, compensatory,

contemptuous, exemplary & punitive  damages in excess of seventy five

thousand ($75,000.00) dollars ,or the maximum amount allowed by law.,

together with  interest, and damages for prejudgment and post-judgment delay.

## DEMAND FOR JURY TRIAL

188.  The Plaintiff demands trial by jury in this action of all issues so triable.

## RESERVATION OF RIGHTS

189.  The  Plaintiff reserves the right to further amend this Complaint, upon completion of his investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.

190.  The  Plaintiff reserves the right to further amend this Complaint, if the court finds that this case cannot be pursued for reasons such as Failure to state a claim or ANY other reasons that would prevent the Plaintiff from presenting his case to the jury to have it ruled upon the merits of the case.

191.  The Plaintiff requests this court award such other relief as the interests of justice shall require and that this Honorable Court may deem just and proper; The Plaintiff requests a full hearing on the merits Confirming The Constitutional Right of Meaningful Access to the Courts in Non-Criminal Cases.

Stephen Ward
744 N 2nd st
Paragould AR, 72450
( 573) 919-0305
musicscary0@gmail.com

## AFFIDAVIT OF STEPHEN WARD

## WARD V COPENHAVER.

1. The Plaintiff Stephen Ward was almost murdered by his landlord" Paul Ervin" on Sept 27th 2021 as can be seen in case 28CR-21-810.

2. The Plaintiff Stephen Ward was unlawfully and immediately evicted at that time and was barred from returning to the property as can be seen in case 28CV-22-313.

3. After the murder attempt with a 4 ft axe handle the Plaintiff Stephen Ward as unable to return to his rented homestead to retrieve his inventories, equipment, tools of his trade, money, property, personal property, birth certificate, ss card and other employment documents.

4. As a result of being unlawfully evicted, having everything he owned stolen and all of his employment documents the Plaintiff and his Fiance became penniless and homeless.

5. The Plaintiff had lost everything except for a mini pony that was being housed elsewhere.

6. As a result of being instantly homeless ,having no money, no tools,no employment documents, physical address to get new employment documents etc, The Plaintiff exercised his first amendment right to panhandle while using his pony consistent with our muslim faith ,As the

Quran has it, "**Prophet Muhammad took a night trip to heaven aboard a trusty winged pony-horse-mule-ish creature called Buraq".**

7. The Plaintiff panhandled as a means to get by until he could get his property, personal property and personal possessions and get things back to normal.

8. The Plaintiff's pony rides were an estimated 2-3 min ride and the Plaintiff would hum muslim songs and would post a sign in honor of his faith stating.


"Verily, God is compassionate and is fond of compassion, and He gives to the compassionate what he does not give to the harsh."

- Prophet Muhammad.

9. The Plaintiff would donate his time to senior citizens centers, and would panhandle at different public accomodation spots throughout the city as defined under 42 U.S.C. § 2000a. Including the city of Jonesboro, Arkansas as a whole, The North Pole attraction (place of exhibition or entertainment) ,Huddle house, Susies, Arbys, Golden Corral, gas station at the corner of Red wolf and East highland. Overstock parking lot which many times had food truck vendors,

10.  In March 2022, he started hearing rumors from customers that the Mayor, Animal control officer and  animal rights groups were posting defamation posts on Facebook.com and was planning to shut the Plaintiff's pony rides down because they didn't like muslims and were getting tired of seeing the Plaintiff panhandling around town ,

11. In March 2022, Defendants Larry Rogers in his Individual Capacity, Harold Copenhaver in his individual capacity ,Jeffrey Moore in his individual capacity, Wannda Turner in her individual capacity and Lisa Trevathan in her individual capacity acting under color of law plotted against Plaintiff Stephen Ward's panhandling activities.

From. Wannda Turner <nafahelp@gmail com>
Sent Tuesday June 21 2022 2 49 PM
To Larry Rogers <LRogers@jonesboro org> Jeffrey Moore <JMoore@jonesboro org>
Subject Shots costs and pony rides
Please let me know how much money I need to bring to pay for the shots. etc  when I come on Monday.

Also, I did not hear back from the Mayor about the pony rides. Did he mention it during the department head meetings. If not, I need to go to plan B.

Wannda Turner
http //www facebook com/NAFA rescue
Jonesboro Arkansas
870-243-4362


too degrees  I don't think he knows what
I am so sorry that I got you involved  This guy is crazy
Sent by Wannda Turner
From Lisa Travathan - No I commented on Mary dacus post
month or so ago and he sent that
I want them shut down

12. Defendants Larry Rogers in his Individual Capacity, Harold Copenhaver in

    his individual capacity , Jeffrey Moore in his individual capacity,, Wannda

    Turner in her individual capacity and Lisa Trevathan in her individual

    capacity acted under color of law by spreading misinformation and used

    their position within the city of Jonesboro, Arkansas, employment by

    the city of Jonesboro, Arkansas, partnerships with the city of Jonesboro,

    Arkansas , and joint activities within the city of Jonesboro, Arkansas to

    validate their malicious violation of the Plaintiffs 1st, 4th, and 14th

amendment rights in violation of 18 U.S.C. 241 &, 42 U.S. Code §

2000a in a plot  to (in their own words) "COMBAT PONY RIDES."

&"SHUT THEM DOWN".



**NAFA Rescue**
July 4 · 🌐                                                              ···

NAFA Rescue continues to receive 5-7 complaints during the weekends from citizens of Jonesboro
concerning the "Pony Rides" that are being held in parking lots within the City of Jonesboro.
Other organizations have also received complaints and concerns.  As a result, we are sending,
what we believe is an informative email to businesses where the pony rides are occurring during
the hot summer days.

What the public can do ... encourage friends and families not to use the pony ride services while
they are on parking lots and in the heat.

Our concerns are as follows:

1. The animals do not have access to water and shade at all times
2. With the temperatures and humidity as hot as they have been (anything over 80 degrees in the
direct sunlight), the ponies/horses' feet are exposed to overheated concrete/asphalt that can
damage their feet.
3. The individuals who are presenting the pony rides do not have sufficient liability insurance.  As a
result, if a child or their parent or injured during the pony rides, in many circumstances the
businesses will be held responsible for such injuries.
4. Finally, the locations on the corner of two busy streets makes this a significant traffic issue.

13. Defendants Larry Rogers in his Individual Capacity, Harold Copenhaver in

his individual capacity ,Jeffrey Moore in his human capacity, and Lisa

Trevathan through Defendant Wannda Turner  posted  false claims on the

website Facebook.com  falsely accusing the Plaintiff of neglecting and

abusing the horses in violation of Ar code 5-62-104 .(SEE ABOVE )

14. Defendant Wannda Turner's posts made claims that: the horses were

unhealthy , even though the horses had been :

a)checked by Jonesboro, Arkansas police officers who did wellness

checks and stated that the horse & pony were healthy and in good shape..

b) checked by Jonesboro, Arkansas animal control.

15. Defendant Wannda Turner posts were written specifically to incite public

outrage and encourage  people to call the Jonesboro, Arkansas police and

Jonesboro AR animal control which was promoted, magnified and

supervised by Defendant Lisa Trevatha, who encouraged people to call

Jonesboro, Arkansas Police dept to make complaints.(SEE ABOVE )

16. The horses had also been checked by Jeffrey Moore acting under the color

of law.  who attempted to make false claims in April about imaginary

complaints.

17. Defendant Jeffrey Moore in his individual capacity acting under color of

law  from the Jonesboro, Arkansas animal control violated the Plaintiff  by

doing an unlawful search and seizure (violation of 4th amendment), on a

private parking lot which he had no jurisdiction by claimed that there was a

complaint about the Plaintiff and his  horse and pony  and he was  shutting

the Plaintiff down and making him leave.

18. When the Plaintiff asked who made the complaint  and what the complaint

was about  Defendant Jeffrey Moore  claimed that there was not a complaint

and that he had lied. , but was still shutting the Plaintiff down and making him leave.

19. Defendant Jeffrey Moore then stated that he was just passing by and saw the Plaintiff and that the mayor wanted the Plaintiff shut down.

20. The Plaintiff already knew that Defendant Jeffrey Moore was lying about passing by because a Jonesboro, Arkansas Animal control officer arrived before Defendant Jeffrey Moore and asked to wait to answer the Plaintiffs questions about the unlawful detention, investigation , search and seizure until Defendant Jeffrey Moore could arrive on the scene.

21. Defendant Jeffrey Moore began his unlawful detention, investigation , search and seizure  by demanding to see the coggins papers and inspected the horse and pony as if there was a real complaint.

22. Defendant Jeffrey Moore acting under color of law proceeded to attempt to shut the panhandling pony ride down and told the Plaintiff to leave town even though the horses were healthy and he had the proper paperwork.

23. According to the Jonesboro, Arkansas Police Dept and Animal control records that the Plaintiff  received through the Freedom of Information Request there was not a complaint about the Plaintiff or equine.

24. Defendant Jeffrey Moore's  purpose for the stop was to profile the Plaintiff Stephen Ward and Shawntay Ervin with the intention of harassing,

intimidating and depriving the Plaintiff of his ability to panhandle because of his Biased based policing technique because of the Plaintiff's gender, sexual orientation, religion, economic status, background, age, and culture which was the sole basis for conducting his fishing expedition search and siezure warrantless investigation.

25. Defendant Jeffrey Moore Jonesboro, Arkansas searched, seized. Harassed, investigated and attempted to shut the Plaintiff's panhandling and pony ride down even though they agreed that the ponies and horses were healthy, taken care of, not a danger to the community and even though there was not a crime in progress nor was the Plaintiff suspected of any crime.

26. The Plaintiff begged Defendant Jeffrey Moore to call the Jonesboro, Arkansas city hall to confirm that the Plaintiff was within his rights to panhandle, however he clearly stated that the Mayor did not want the Plaintiff panhandling in Jonesboro, Arkansas and demanded that we pack up and leave.

27. The Plaintiff heard Defendant Jeffrey Moore say to the other Animal control officer that the Plaintiff was just a white trash muslim and that the mayor wanted him gone.

28. Plaintiff Stephen Ward got city hall on the phone which did confirm that the Plaintiff was lawful to be there and Defendant Jeffrey Moore stated that the mayor wanted the Plaintiff gone but "they could figure it out at city hall"

29. Defendant Jeffrey Moore contacted the real estate owner and had him remove the Plaintiff from the property even though the Plaintiff and food vendors had permission by the lessee ( Owner of Overstock  and the manager of Overstock who both agreed & approved us to set up the pony ride attraction.

30. According to the response from my FOIA requests, The only complaint that Defendants Harold Covenhaver , Jeffrey Moore, Larry Rogers or Jonesboro, Arkansas animal control received  was weeks before the incident and was from Defendants Wannda Turner and Lisa Trevathan who claim that  they got a few unverified phone calls. Which even if true is just hearsay as  there is no verification that the complaint was credible.

31. Defendants Harold Covenhaver ,Jeffrey Moore, Larry Rogers ,Wannda Turner and Lisa Trevathan who claimed that they got complaints already knew the pony and horse was being well cared for because the Jonesboro, Arkansas Animal control and Jonesboro, Arkansas police dept had already checked the horses and told the Defendants that the horses were fine.

32. Defendants Harold Copenhaver, Larry Rogers, Wannda Turner and Lisa
    Trevathan have never seen the Plaintiff's horse or pony up close nor are
    they able to make animal diagnosis without a veterinary license pursuant to
    AR code 17-101-307.

33. Defendant Wannda Turner and Lisa Trevathan acted under color of law
    even though they were not authorized to take complaints for and/ or dispatch
    the Jonesboro, Arkansas Ar animal control , shut the Plaintiff's pony rides
    down because they are not employees of the City of Jonesboro, Arkansas

34. Internal emails received through the FOIA requests show that even though
    the horses were healthy and panhandling was protected speech, Defendants
    Wannda Turner, Jeffrey Moore, Lisa Trevathan , Harold Copenhaver and
    Larry Rogers were still determined to " SHUT THEM DOWN" According
    to Lisa Trevathan and combat pony rides according to Larry Rogers.

35. Defendants through Wannda Turner posted a Defamation post on June 3rd
    that placed the Plaintiff and his pony rides in a false light by portraying that :

    a) The horses standing on the concrete was abusive to them even though
       she knew or should have known that horses cannot feel heat through
       their hooves from hot pavement as demonstrated when " hot shoeing"
       a horse with a red hot horse shoe which has no effect on them.



b) That the horses were too hot and didn't have shade even though on July 3rd before 2pm was mid 80s and cloudy. Most horse vets and authorities state that horses are fine in a heat index of up to 150 degrees and the Plaintiff had 2 very large umbrellas for shade if the horses wanted it.

c) That the horse and ponies didn't have food or water even though the horses got offered food and water every 30 mins.



d) That the horse and ponies were too close to the road and a public hazard even though there had never been any such hazard and they were normally 10- 50 ft from the road.

e) That there was a liability to the property owner if there was an accident even though the equine liability act was established and adopted in 47 states including Arkansas code § 16-120-202 that protects based on the inherent risk associated with equine activities.

f) And as a result of the false light and defamatory statements the post encouraged everyone to ask their friends and family not to use the pony rides.

36. Internal emails received through the FOIA requests show that even though the horses were healthy and panhandling was protected speech, Defendant Wannda Turner told Defendant Larry Rogers that she was moving to plan B, ( which was to stir public outrage with Defamation ,disinformation and lies in order to convince people to harass the Plaintiff, to make complaints to the mayor, the city and have the property owners not allow the Plaintiff to set up on their property in an attempt to " Shut them down".

37. The Plaintiff contacted Defendant Wannda Turner within an hour of her making the false light, and defamatory Facebook post with a "Cease and Desist" and asked her to remove it as it was going to cause significant damage and it was untrue.

From Wannda Turner <nafahelp@gmail.com>
Sent Monday July 04 2022 8 01 PM
To Larry Rogers <LRogers@jonesboro org> Jeffrey Moore <JMoore@jonesboro org>
Subject messages from pony ride people
These are the Facebook Messages that I received from Shawntay Ervin with regard to my post on NAFA's Facebook Page
Cease And Desist
The facts in the post about the pony rides are inaccurate and this post is considered malicious liable I recommend you take this post down immediately because it is and will continue to cause damage At this moment I can see no option but to take your organization and the actual person who wrote this post to court This is your only warning

38. Defendant Wannda Turner refused to remove or update the post even after
she was given proof that the post was untrue.



39. Other Facebook members who had experienced the Plaintiff and his horses
rides  contacted her saying that her post was untrue and she blocked many of
them to conceal the truth.

40. Even Facebook members who follow Wannda's NAFA RESCUE page and
had experience with horses left comments saying that her post was untrue
and she ignored them and would only respond to people that advanced her
cause.

41. Defendant Wannda Turner was proud that her post had run through the area
like wildfire so she sent the CEASE AND DESIST email that the Plaintiff
sent to Defendant Larry Rogers so that and the may he was informed of their
progress.(see email above)

42. The Facebook post was shared 349 times with almost 200 comments that

she hadn't removed.



43. The Defendants through Defendant Stan Morris acting under color of law

republished the Defendant Wannda Turner's defamatory post on his

Facebook Page named " NEA REPORT"  with an audience of over 44,000

local residents all of which who are the Plaintiff's customers and/ or

potential customers.

44. The Defendants through Defendant Stan Morris refused to publish on his

Facebook page named  NEA REPORT the Plaintiff's post which addressed

and invalidated Defendant Wannda Turner's NAFA defamation post.

45. The Defendants through Defendant Wannda Turner refused to publish on

NAFA RESCUE's Facebook Page ,the Plaintiff's post which addressed  and

invalidated the Defendant Wannda Turner's NAFA defamation post.

46.  The Plaintiff contacted Defendant Stan Morris who is the lead reporter and owner of NEA report and made him aware that the post was defamatory and that it should be removed and retracted.

47. Defendant Stan Morris refused by simply stating " You're and idiot"

48. Defendant Wannda Turner's PLAN B was a huge smear campaign by posting false claims concerning Plaintiff  Stephen Ward, Defaming him by accusing him of animal neglect and abuse which  was intended to fabricate outrage from the public and encourage them to make complaints to the mayor Harold Copenhaver, Larry Rogers, Jonesboro, Arkansas Police Dept, Jonesboro, Arkansas Animal control claiming animal abuse.

49.  These unjustified / unverified calls that were created by the Defendants Defamation efforts  would then be used as justification by Defendants, Larry Rogers and  Harold Copenhaver, to create and sponsor the Jonesboro, Arkansas ordinance   SUBSECTION 13 PROVIDING FOR GUIDELINES ON THE HANDLING, DISPLAYING, OR GIVING AWAY OF ANIMALS IN THE CITY OF Jonesboro, Arkansas.

50.  Defendant  Larry Rogers stated that the ordinance  was to " COMBAT PONY RIDES" because of the complaints created by the Defendants themselves through Wannda Turner's Facebook  posts and even though he already knew that the Horses were healthy and the post were false.

.

RIDES".Larry Rogers Statements " Combat pony rides" can be seen in many places
including on kait8..
https://www.kait8.com/2022/07/20/council-committee-sends-animal-ordinance-full-counci
l/?fbclid=IwAR1kIsDaOSyZj0t3HfrRUIIlLuAFPaPfiZsP88SP4JiE0b5b40Q7YRh97fM

51. Defendants Harold Copenhaver, Jeffrey Moore and Larry Rogers,knew and/
or should have known that even if there were 1000 unverified untrue
complaints. No amount of unverified or untrue complaints rise to the level
that would allow the Defendants to violate the Plaintiffs 1st , 4th and 14th
amendments of the United States Constitution 18 U.S.C. 241 and 42 U.S.
Code § 2000a by passing an ordinance that is specifically geared to threaten
, harass and COMBAT the Plaintiff and his pony rides.

52.  Defendant Wannda Turner under color of law wrote the terms for
SUBSECTION 13 PROVIDING FOR GUIDELINES ON THE HANDLING, DISPLAYING, OR
GIVING AWAY OF ANIMALS IN THE CITY OF Jonesboro, Arkansas  which specifically
exempted the  organizations that Defendants Wannda Turner & Defendant
Lisa Trevathan represented and  even though she does not work for the city
of Jonesboro, Arkansas and has no authority granted by statute, custom,
code in the State of Arkansas or subdivision of to write ordinances or act
under the color of law.

child or adult be injured

I believe owners of the such entities should be required to get written permission from the owner of the property or the City of Jonesboro if it is city owned property and have it available along with health and vaccination records.

If you think proposed legislation would be a good route to address this, please let me know and I could provide a draft of something for the city attorney to examine and the Public Safety Committee to examine.

Thank you

--

Wannda Turner

http //www.facebook.com/NAFA rescue

53. Defendants Harry Copernhaver, Larry Rogers, Lisa Trevathan and Wannda Turner while acting under color of law discriminated against the Plaintiff by creating SUBSECTION 13 PROVIDING FOR GUIDELINES ON THE HANDLING, DISPLAYING, OR GIVING AWAY OF ANIMALS IN THE CITY OF Jonesboro, Arkansas which they knew would prevent the Plaintiff from exercising his 1st, 4th, 14th amendments of the Constitution of the United States in violation of 18 U.S.C. 241 and 42 U.S.C. 2000a to the extent that the Plaintiff could no longer exercise said rights in Jonesboro, Arkansas or within at least a 50 mile radius.

54. Defendants Harry Copernhaver, Larry Rogers, Lisa Trevathan and Wannda Turner while acting under color of law knowingly created unfair trade practice and anti trust violations to specifically COMBAT the Plaintiffs pony rides.

55. The Plaintiff looked up Defendant Larry Rogers on Facebook and could not

believe his eyes when he saw posts stating that :

    a)  It's time to play cowboys and muslims.





**Larry Rogers**
May 28, 2011

I think he is a Republican, I like him.



    b)  How about I put my carbon footprint up your liberal ass

(SEE ABOVE)

c) Democrats making the world safe for terrorist.

(SEE ABOVE)

d) A mostly nude picture of himself.

 **Larry Rogers**
June 5, 2011 · 

So, here I was standing in the water trying to cool down, shook the water out of my hair and looked up on the bank. There were about 100 girls just staring at me. I felt so cheap.



e) Lots of " a womans place is in the kitchen " themed post

 **Larry Rogers**
May 28, 2011 ·

And they don't talk back.





f) Lots of anti democrat post.

   (SEE ABOVE)

g) A post claiming that cops hate everyone.



**Larry Rogers**
March 28, 2011 ·

She must be a retired cop.

56. After seeing the facebook posts of Defendant Larry Rogers, The Plaintiff realized that his worst nightmare had come true. Larry Rogers really did hate Muslims, Democrats, and apparently everyone and the Plaintiff had been his victim.

57. After seeing the facebook posts of Defendant Larry Rogers, The Plaintiff sent a freedom of information act request where he asked for all complaints about the Plaintiff's panhandling pony rides, and according to both Jonesboro, Arkansas animal control and Jonesboro, Arkansas Police dept

there were only the complaints made by Defendants Wannda Turner and Lisa Trevathan.

58. The Plaintiff sent a freedom of information act request where he asked for all emails to and from Defendants Wannda Turner, Lisa Trevathan and Larry Rogers and  was shocked to see that  Jonesboro, Arkansas Mayor Defendant Harold Copenhaver was involved the entire time and personally discriminated against the Plaintiff  preventing the Plaintiff from exercising his 1st, 4th, 14th amendments of the Constitution of the United States in violation of 18 U.S.C. 241 and 42 U.S.C. 2000a to the extent that the Plaintiff could no longer exercise said rights in Jonesboro, Arkansas or within at least a 50 mile radius.

59. On Aug 16th the Plaintiff wrote a letter to Mayor Defendant Harold Copenhaver explaining the entire history of deprivation and harassment from the Defendants.

   a)  The Plaintiff told Defendant Harold Copenhaver about the more than 20 discriminatory posts on Defendant Larry Rogers Facebook page and sent screenshots.

   b)  The Plaintiff told Defendant Harold Copenhaver about the violations of his civil rights by Larry Rogers and Jonesboro animal control.

c)   Stephen Ward and Shawntay Ervin would like to work this out with the city of Jonesboro, Arkansas so that everyone can simply put this behind us with everybody winning and nobody losing.

d)   Stephen Ward and Shawntay Ervin would like the city of Jonesboro, Arkansas to consider making necessary upgrades in the Jonesboro, Arkansas Animal control facility so that the city can better monitor whats happening over there and prevent it from ever happening to anyone ever again.

e)   Stephen Ward and Shawntay Ervin would like the city of Jonesboro, Arkansas to provide a location for us to use to set up the pony rides , since Larry Rogers and Jonesboro, Arkansas Animal control made it impossible for us to set up in our usual spot.

f)   . Lastly we feel that we have proven the facts and under these circumstances that it is a very good win win opportunity for everyone involved.

g)   We simply want life to go back to as normal as it can be under these awful circumstances.

h)   Thanks in advance and please let me know either way on this.

63. Because of the negligence of the city of Jonesboro, Stephen Ward and Shawntay Ervin will have been discriminated against, harassed and will have real world struggles trying to recover from having their reputation and business ruined.

64. Stephen Ward and Shawntay Ervin would like to work this out with the city of Jonesboro so that everyone can simply put this behind us with everybody winning and nobody losing.

65. Stephen Ward and Shawntay Ervin would like the city of Jonesboro to make every effort to help rebuild their reputation within the community since it was lost due to the unfortunate behaviour of Larry Rogers and Jonesboro Animal control.

66. Stephen Ward and Shawntay Ervin would like the city of Jonesboro to consider making the animal ordinance moot so that the animal lovers in Jonesboro will not be a victim of Larry Rogers, Jonesboro Animal control, felon Wannda Turner, NAFA RESCUE, Lisa Trevathan, NEAHS, NORTHEAST ARKANSAS HUMANE SOCIETY.'s conspiracy .

67. Stephen Ward and Shawntay Ervin would like the city of Jonesboro to consider making necessary upgrades in the Jonesboro Animal control facility so that the city can better monitor whats happening over there and prevent it from ever happening to anyone ever again.

60. The Plaintiff Stephen Ward sent this email to Defendant Harold Copernhaver and every single member of the city counsel and Defendant Harold Copenhaver did not respond which deprived the Plaintiff of equal protection under the law in violation of Ar code **14-43-504. Powers and duties of mayor generally.**

**(b)** The mayor shall:

**(1)** Supervise the conduct of all the officers of the city, examine the grounds of all reasonable complaints made against them, and cause all their

violations of duty or other neglect to be properly punished or reported to the proper tribunal for correction;

61. The Plaintiff pointed out the anti trust and monopoly created by the ordinance and the Defendants corrected their own ordinance because they basically let Defendant Wannda Turner write the ordinance that would have created a monopoly for her and Lisa Trevathan's organizations that they represent while making it impossible for an average citizen of Jonesboro, Arkansas to buy, sell or display dogs and cats except through the Defendant Wannda Turner and Lisa Trevathns organizations that they represent.

62. Defendants Harold Covenhaver , Jeffrey Moore and Defendant Larry Rogers actions and inactions were in direct violation of the Jonesboro, Arkansas employee Handbook.

63. Defendant Larry Rogers and Jeffrey Moore's actions and inactions were in direct violation of the Arkansas " 1020. THE LAW ENFORCEMENT CODE OF ETHICS"

*(1) The Law Enforcement Code of Ethics shall be subscribed to by each certified law enforcement officer. Violation of any portion of the Code may, upon Commission direction, result in revocation of law enforcement certification.*

64. During July and Aug The Plaintiff made several posts hoping to repair the damage caused by the Defamatory statements and exposed the evil deeds of the Defendants.

65. Defendants Kimberly Randall posing as psychologist in violation of AR Code § 5-37-208 (2015) Criminal Impersonation , and Alias Simrit Kaur posing as psychologist in violation of Tenn code 39-16-302 - Impersonation of licensed professional, along with Defendant Melissa Morrison made Defamatory statements to ruin the Plaintiffs reputation by claiming that he had sex with under age girls in order to ruin any credibility the Plaintiff had and to aid Defendants Wannda Turner,Lisa Trevathan, Jeffrey Moore, Larry Rogers, Harold Copenhaver in " COMBATING PONY RIDES and SHUTTING HIM DOWN, The Defendants stated goal.

66. Defendant Kimberly Randell while impersonating a psychologist and `under color of law reached out to the Plaintiffs Fiance accusing the Plaintiff of sex crimes with minors, child abuse and threatened to send DHS to the Plaintiffs house even though the Plaintiff has no kids in the house.





67. Defendant Kimberly Randell while impersonating a psychologist and `under color of law made many unwanted diagnosis in her professional opinion about the Plaintiff and shared them publically in violation of  AR Code § 5-37-208 (2015) Criminal Impersonation AR CODE 17-95-402 practicing without a license, The federal privacy HIPPA Rule.

68. Several Defendants including Kimberly Randall claim that they know all the local judges and implied that the Plaintiff could not get a fair trial.

And no, my father would recuse himself. However, he is great friends with every judge in Craighead County. So, I very mu⸍ ⸍ook forward to your "case ⸍ ⸍ithough it ⸍⸍⸍

By the way, my fiancée is an attorney. So is my brother. And my father is a judge. Should I give you a list of the thousands of court cases they filed? 😂😂😂 Hey, maybe my father will be the judge in your case. Wouldn't that be super fun!

Go ahead and keep making threats. Nobody is scared of a couple of low class, uneducated, pieces of white trash like the two of you.

I can't wait to see your imaginary "court case". You

recuse himself. However, he
is great friends with every
judge in Craighead County.
So, I very much look forward
to your "case". Although it
will never happen.

 Kimberly    📞    📹

to my office right now and
talk to my face. He's a tiny
little short guy with tiny man
syndrome. I dare either of
you to set foot in front of
me. You're all talk. And
you're too broke to even hire
an attorney. But it has been
fun talking to the court
clerks office and police clerk
this morning and laughing
about how crazy you are. So
 thanks for that.

God you know literally
noting about the law. This
has been so fun. We have a
group chat sharing all of
your threats. It's hilarious.
Grade A trailer trash
entertainment. I'm not



69. Defendant Simrit Kaur *( alias)* while impersonating a psychologist and
`under color of law made many unwanted diagnosis in her professional
opinion about the Plaintiff and shared them publically in violation of   Tenn
Code § 39-16-302 - Impersonation of licensed professional Criminal
Impersonation Tenn caode 63-19-108 practicing without a license, The
federal privacy HIPPA Rule.

70. Defendant Simrit Kaur ( Alias) while impersonating a psychologist and
`under color of law reached out to the Plaintiffs Fiance accusing the Plaintiff
(in her so called professional opinion )of sex crimes with minors, being a
theif and very dangerous.



Defendant Simrit Kaur ( Alias) while impersonating a psychologist stated

that she illegally accessed through her work the Plaintiffs file though the "

Crime information Center" which had been sealed and shared the contents

with the Plaintiffs Fiance advising her to leave him.

**However, viewing sealed records is quite difficult. Only a few agencies can view sealed records, including the Crime Information Center, which is how I viewed them. There**

**I really can't be more specific without getting myself in trouble. But, just be careful. I think there are a lot of lies being told to you a history of theft, of abuse, of stalking, of creating situations where a woman has no choice but to depend on him, of coercing her into**

He has had some arrests
sealed is all I can say. But
this guy is not a good man.

friend or anyone I know be
anywhere near him. He has
a very ugly history. You will
end up a victim one way or
another if you stay with him.

71. Defendant Simrit Kaur ( Alias) while impersonating a psychologist made a

fake appointment with the intent to lure the Plaintiffs Fiance to Memphis Tn.

72. After processing several FOIA requests for the Plaintiff,  On Sept 22 , 2022

, Bill Campbell in his individual capacity acting under color of law deprived

the Plaintiff of his equal access to government services by refusing to answer

any emails, or to process the Plaintiffs Stephen Ward's Freedom of

information act requests unless The Plaintiff provided his personal address

that the Plaintiff by law or statute had no duty to provide, and even though

the Plaintiff would be receiving his FOIA requests via email.



**Bill Campbell**

to me ▼

Sir, I have asked for your address every time I have written you. If you are from Arkansas, this should not be a problem. If you are not, let me know and we will move on.

I don't want to drag this out any more than you, probably less. I have plenty on my plate and this is not something I care to quibble over. This is my last response until you send your address.

Thank you,

Bill Campbell
Director of Communications
City of Jonesboro
870-336-7164 (w), 870-919-7042 (m)

73. The Defendants through Defendant Larry Rogers refused to answer emails or approve the Plaintiff as an approved animal rescue who is exempt from the ordinance even though the Plaintiff had a proven track record and was eligible to be excluded from the $1 million dollar insurance requirement.

## EQUITABLE ALLEGATIONS

**74.** In violation of State and Federal Constitutional and Statutory provisions, Defendants, and their agents and employees, including Jonesboro police department , have, and unless enjoined, will continue to subject the Plaintiff to excessive discrimination, deprivation of rights and injury that will cause the Plaintiff harm, The Plaintiff is and will continue to be fearful of

exercising his rights in the city of Jonesboro because of their malicious, wanton, outrageous in the extreme, and especially calculated acts of evil that the Defendants were willing to go to deprive the Plaintiff of his rights so secured to him under the 1st, 4th, 14th amendments to the United States constitution.

75. Defendants Harold Copenhaver, Jeffrey Moore, Larry Rogers, Wannda Turner, Lisa Trevathan, Bill Campbell, Kimberly Randall, Melissa Morrison, Simrit Kaur *(alias)* and Stan Morris Riley knew or should have known that the courts have consistently determines that the Plaintiffs activities were protected under the 1st amendment to the constitution of the United States which provide for protected speech concerning solicitation of charitable contributions & commercial speech as can be seen in Riley v. Nat'l Fed'n of the Blind of N.C., Inc., 487 U.S. 781, 789 (1988) (solicitation of charitable contributions is protected speech); and Edenfield v. Fane,507 U.S. 761, 767 (1993) (commercial speech protected under First Amendment);Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981).

76. The city of Jonesboro Arkansas is a major public accommodations stop for out of state travelers because of **Interstate 555 (I-555)** which is an

interstate highway that connects Turrell, Arkansas at I-55 to Jonesboro at Highway 91. Formerly known as U.S. Highway 63.

77. The Plaintiff would normally set up within a few 100 ft to 2 miles from the highway described above, major off ramps and intersections on lots that provided public accommodations as listed under 42 U.S.C. 2000a.

**78. I ,AFFIRM UNDER THE PENALTIES FOR PERJURY THAT THE FORGOING REPRESENTATIONS ARE TRUE AND ACCURATE TO THE BEST OF MY ABILITIES.**

_____        9 / 26 / 22

Signature                      Dated

_____        ____/____/_____

Signature of Witness 1         Dated

_____        ____/____/_____

Signature of Witness 2         Dated

STATE _Arkansas_

COUNTY _Greene_

Vicki Kuykendall

9/26/22

VICKI KUYKENDALL
CRAIGHEAD COUNTY
NOTARY PUBLIC -- ARKANSAS
My Commission Expires    JULY 22, 2030
Commission No. 12711275