IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

STEPHEN WARD                                                            PLAINTIFF

v.                      Case No. 3:22-cv-00250-LPR-BBM

HAROLD COPENHAVER, *et al.*,                               DEFENDANTS

## ORDER

Pending before the Court are six motions filed by Plaintiff Stephen Ward (and two more requests for relief filed in a "notice" and an unauthorized reply) seeking default judgments, sanctions, or related relief. (Docs. 140–143, 180, 187–189, 192, 195, 201, 207). Separate Defendants Harold Copenhaver, Carol Duncan, Larry Rogers, and Jeffery Moore moved to strike the aforementioned reply. (Docs. 202–203, 205). After carefully reviewing Ward's motions and other requests, the Defendants' motion to strike, the entire record, and the relevant law, the Court will grant, in part, Ward's motion concerning service of certain court filings on Turner, (Doc. 142), but will otherwise deny all other requested relief for the reasons that follow.

**I. BACKGROUND**

A. <u>Service of the Amended Complaint and the Defendants' Responses</u>. In the Amended Complaint, Ward claims that local government officials in Jonesboro, Arkansas, allegedly in cahoots with private citizens, "shut down" his "panhandling" activities that consisted of him selling "pony rides" in parking lots near Jonesboro businesses. (Doc. 10) ("Am. Compl." at 8–10, ¶¶ 23–29). In March 2024, the Court screened the Amended Complaint under 28 U.S.C. § 1915, dismissing some claims and allowing others to proceed.

(Doc. 14 at 2–3). Among the claims to survive the screening process were (1) certain statutory claims asserted against Copenhaver, Duncan, Rogers, Moore, and Wannda Turner under 42 U.S.C. § 1983; 42 U.S.C. § 1985; the Arkansas Freedom of Information Act (FOIA), 25 Ark. Code Ann. §§ 25-19-101 to 25-19-112; or some combination thereof; and (2) state-law defamation claims asserted against Turner, Melissa Hively, and Lisa Trevathan. *See* Am. Compl. at 65, 72, 74, ¶¶ 96(b), 100(g), 102(b) (asserting FOIA claims in Count I); *id*. at 80–88, ¶¶ 109–131 (asserting §§ 1983 and 1985 claims in Count II); *id.* at 95–102, ¶¶ 151–179 (defamation claims in Count IV). As to these seven Defendants, the litigation has proceeded to varying degrees. Turner, Hively, and Trevathan are proceeding *pro se*, and Copenhaver, Duncan, Rogers, and Moore (all city officials in Jonesboro) are represented by attorney M. Keith Wren of the Arkansas Municipal League.

Copenhaver, Duncan, Rogers, and Moore answered the Amended Complaint in April 2024. (Doc. 33). Hively did so in August 2024. (Doc. 85). Trevathan unsuccessfully sought dismissal under Federal Rule of Civil Procedure 12 and then timely filed her answer in April 2025. (Docs. 31–32, 73, 104, 108, 116).

As for Turner, she was served with process on August 23, 2024. (Doc. 93). In response to her 21-day summons, Turner timely filed a Rule 12 dismissal motion on September 10, 2024. (Doc. 96). The Court denied that motion on March 20, 2025. (Docs. 104, 108). According to Federal Rule of Civil Procedure 12(a)(4)(A), Turner should have filed an answer 14 days later, or by April 3, 2025. *See generally Pesce v. City of Des Moines*, 439 F. Supp. 3d 1101, 1107 (S.D. Iowa 2020) (stating that, under Rule 12(a)(4)(A), when a party "files a pre-answer motion to dismiss under Rule 12, the time to serve an

answer is extended until fourteen days after the court denies the motion"). But Turner failed to do so. That prompted Ward to file a motion on April 15, 2025, requesting the Clerk of Court to enter a default against Turner under Federal Rule of Civil Procedure 55(a). (Docs. 119–120). On April 17, 2025, with the docket still lacking any responsive pleading from Turner, the Clerk entered a default against her as Ward requested. (Doc. 123); *see generally United States v. Ramer*, 699 F. App'x 596 (8th Cir. 2017) (per curiam) (district court acted within its discretion in granting default judgment against defendants who "affirmatively refused to file an answer or otherwise participate in the proceedings once their motion to dismiss was denied").[1]

B. <u>Scheduling and Discovery Matters</u>. On August 21, 2025, the Court issued an Initial Scheduling Order (ISO) under Local Rule 16.1, setting deadlines for the parties to hold a discovery conference and file a report of their discovery plan as required by Federal Rule of Civil Procedure 26(f). (Doc. 160). The parties were required to hold a Rule 26(f) discovery conference by September 19, 2025, and to file their post-conference report by October 6, 2025. *Id.* at 2. The parties failed to file a *joint* report by that deadline; instead, the Court received individual Rule 26(f) proposals from some (but not all) of the parties. (Docs. 190–191, 193, 197). One of those was from Turner, who filed a report on October

---

[1] It appears that the Clerk based the default on Turner's failure to file an "answer or other responsive pleading" within "21 days" of her service-of-process date of August 23, 2024, *i.e.*, by September 13, 2024. (Doc. 123). A timely "motion to dismiss," however, "precludes entry of default." *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 628 (D. Del. 2007). As Turner filed such a motion on September 10, 2024, she met the summons's 21-day deadline and was not in default while her motion was pending. *See Williams v. Arkansas Dep't of Correction*, 2000 WL 227977, *1 (8th Cir. 2000) (per curiam) (district court did not abuse discretion in declining to issue default judgment against defendants where they "had filed a motion to dismiss and their answer was not yet due"). The default entry was nonetheless proper given Turner's *later* failure to file an answer within 14 days of the Court's denial of her motion to dismiss.

6, 2025, despite being in default and without addressing the default issue. (Doc. 191). This was Turner's first filing in the case since her September 2024 motion to dismiss.

On October 15, 2025, the Court issued a Final Scheduling Order that, among other things, set a discovery cutoff of March 20, 2026; a general motions deadline of April 20, 2026; and a trial date for the week of August 17, 2026. (Doc. 198). On October 20, 2025, the Court ruled on six of Ward's motions regarding alleged discovery violations. (Doc. 200). In that discovery order, as the Court will point out below, it denied much of the relief that Ward seeks in the motions now before the Court. On November 26, 2025, the Court denied Ward's motion to reconsider the ISO (and a second order concerning substitution of parties) and declined to certify those orders for immediate appeal under 28 U.S.C. § 1292(b). (Doc. 209).

C. Pending Motions and Requests. The six motions now before the Court (plus the two additional requests for relief Ward made in a notice and a reply) were filed from May to November of 2025. Ward filed the first two motions on May 19, 2025. In the first, he asks the Court to enter a default judgment against Turner under Rule 55(b)(2), given the Clerk's earlier entry of default. (Doc. 140 at 1, 3; Doc. 141 at 1–3). Ward also seeks an order under Federal Rule of Civil Procedure 37, compelling Turner to respond to his discovery requests and sanctioning her for her alleged failure to respond to those requests and for her alleged spoliation of evidence. (Doc. 140 at 1–3; Doc. 141 at 1–3). In the second motion, Ward says that he served the default-judgment motion on Turner "via USPS to her listed address and to her email" but still asks that, "if" the Court "finds that additional service is needed," it order service of the default-judgment motion on Turner at her address

of record and appoint an attorney "for the limited purpose of effectuating" such service. (Doc. 142 at 2–3; Doc. 143 at 2–3).

On September 10, 2025, Ward filed a third motion, asking the Court to "acknowledge" that Turner failed to respond to the default-judgment motion and that Hively and Trevathan failed to respond to certain other discovery motions that Ward filed against them. (Doc. 180 at 1–3). As to Turner, Ward repeats his request for a Rule 55(b) default judgment and asks the Court to "promptly set a damages hearing," *id.* at 3–4. As to Hively and Trevathan, Ward asks the Court to grant "as unopposed" the discovery motions he filed against them (*i.e.*, a motion to compel as to Hively and a spoliation motion as to Trevathan); to bar Hively "from contesting the discovery sought"; and to "impose terminating sanctions" against Trevathan, "including striking pleadings and entering default judgment" under Rule 37. *Id.* at 4. Lastly, as to Turner, Hively, and Trevathan collectively, Ward asks the Court for "entry of judgment and terminating sanctions" and to bar them "from further participation in this case, including filing any new pleadings, defenses, or motions," *id.* at 1, 4.

Ward filed the fourth motion at issue on September 23, 2025. (Doc. 187). To some extent, this motion is a rehash of Ward's other ones insofar as it repeats his requests under Rules 37 and 55(b) for default judgments and spoliation sanctions against Turner, Hively, and Trevathan and, again, asks the Court to strike those Defendants' "pleadings and defenses," *id.* at 1–2, 10, 22. But in addition, Ward asks that the Court (1) find that the alleged spoliation by Turner, Hively, and Trevathan was "designed to protect" their co-Defendants and, therefore, warrants "a case-wide adverse inference" against all Defendants

5

"equally," *id*. at 2, 11, 22; (2) "deem admitted" all "factual assertions" contained in Ward's motions to which Turner, Hively, and Trevathan failed to respond, *id*. at 3, 8–11, 22; (3) find that former Defendant Kimberly Randall sent Trevathan "threatening messages" that amounted to "witness tampering" and "obstruction of justice" and refer those allegations to the United States Attorney for "investigation and potential prosecution," *id.* at 12, 20–21, 23; (4) prohibit all Defendants and their "agents" or "associates" from "communicating ex parte with any potential witness about this litigation, except through counsel and with immediate notice to Plaintiff," *id.* at 24; and (5) certify any ruling adverse to Ward for immediate, interlocutory appeal under 28 U.S.C. § 1292(b), *see id.* at 12, 25 (requesting § 1292(b) certification "[i]f the Court declines to grant full relief" or if "any portion of this relief be reconsidered, denied, or delayed").

On October 6, 2025, Copenhaver, Rogers, Moore, and Duncan filed a response in opposition to Ward's motions for default and sanctions, to which Ward replied on October 23, 2025, without leave of Court. (Docs. 192, 201). The reply incorporates a purported "motion" in which Ward again requests, apparently as to all Defendants, that the Court impose "case-wide" spoliation sanctions and "deem admitted" all factual assertions contained in Ward's various motions that are "unrebutted." (Doc. 201 at 11, 13).[2] Later

---

[2] This is not the first time that Ward has presented a purported "motion" within the confines of a "reply." (Doc. 135). Such a practice is contrary to this Court's Local Rules. *See*, *e.g.*, *Crystal Clear Computer Sols., LLC v. City of Helena-W. Helena*, No. 2:20-cv-00017-LPR, 2022 WL 179049, *2 n.19 (E.D. Ark. Jan. 19, 2022) (noting that plaintiff's motion for reconsideration "also embeds a request to 'strike'" certain of the defendants' defenses, but stating that, under Local Rule 7.2, "such a motion would have to be separate from the Motion for Reconsideration and include a separate brief").

that day, Copenhaver, Rogers, Moore, and Duncan moved to strike the reply. (Doc. 202). On November 3, 2025, Ward opposed the motion to strike. (Doc. 205).

The two remaining filings addressed in this order are (1) a "notice" that Ward filed on November 6, 2025, which included a "request" for "an order confirming" that the pending default-judgment motion against Turner "shall remain preserved and unaffected by the forthcoming Second Amended Complaint," (Doc. 207 at 1);[3] and (2) a motion that Ward filed on September 26, 2025, seeking default judgment or "adverse inference sanctions" against Copenhaver, Rogers, Moore, Duncan, Turner, Hively, and Trevathan for their alleged spoliation and/or failure to participate in the Rule 26(f) process as directed by the ISO. (Doc. 188). On September 28, 2025, Copenhaver, Rogers, Moore, and Duncan opposed that motion, and Ward replied on October 9, 2025, again without leave of Court. (Docs. 189, 195).[4]

Related to these motions, Ward has filed various other "notices" or "supplements" (Docs. 174–176, 193, 196–197, 206). These filings are not docketed as motions, and they

---

[3] Ward sought leave to file a Second Amended Complaint on November 25, 2025. (Doc. 208).

[4] Turner, Hively, and Trevathan have not responded to any motion addressed in this order, and their time to do so has passed. *See* RULE 7.2(b), LOCAL RULES FOR THE EASTERN AND WESTERN DISTRICTS OF ARKANSAS (prescribing 14-day period for oppositions to motions); *but see Ward v. Copenhaver*, No. 3:22-cv-00250-LPR-BBM, 2025 WL 2964335, *4 (E.D. Ark. Oct. 20, 2025) (interpreting Local Rule 7.2(f) "*not* to divest courts of their discretion to deny non-dispositive motions—even when unopposed"). Moreover, in that order, the Court cautioned the parties that they "must seek and receive leave of Court" before filing "a reply in support of anything other than a summary-judgment motion," *id*. at *5. However, that order was issued on October 20, 2025. Thus, it post-dates the October 9 reply and, most likely, was not received by Ward before he filed the October 23 reply, which, as mentioned, Copenhaver, Rogers, Moore, and Duncan moved to strike. Thus, in its discretion, the Court will decline to strike the two replies that Ward filed without permission and will consider them in connection with his motions.

seek no relief beyond what is already sought in the motions described above. Nonetheless, the Court has considered these filings in evaluating Ward's motions.

## II. DISCUSSION

### A. Ward's Motions for Default Judgment against Turner

The pursuit of a default judgment under Rule 55 involves "a two-step process." *United States v. Yennie*, 585 F. Supp. 3d 1194, 1198 (D. Minn. 2022); *accord Helena Agri-Enters., LLC v. Lewis*, No. 4:24-cv-00544-LPR, 2025 WL 636434, *1 (E.D. Ark. Feb. 27, 2025). In this case, as mentioned, the Clerk entered a default against Turner under Rule 55(a), thereby "completing the first step" toward a potential default judgment. *Webster Indus., Inc. v. Northwood Doors, Inc.*, 244 F. Supp. 2d 998, 1003 (N.D. Iowa 2003). The question now is whether this Court "should . . . take the second step . . . by entering default judgment" against Turner on Ward's motion under Rule 55(b)(2). *Id*. at 1003–04.[5]

In a supplemental filing, Ward insists that "Rule 55(b) contemplates prompt entry of judgment after default." (Doc. 175 at 2). "Default judgments, however, are not favored by the law," *United States v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993)—and "'should be a rare judicial act," *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015) (quoting *In re Jones Truck Lines, Inc.,* 63 F.3d 685, 688 (8th Cir. 1995))—given the "'judicial preference for adjudication on the merits,'" *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998) (quoting *Oberstar v. F.D.I.C.,* 987 F.2d 494, 504 (8th

---

[5] Rule 55(a) addresses the first step as follows: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). At the second step, any "party" seeking a default judgment against the defaulted party must, in most cases, "apply to the court" for it. FED. R. CIV. P. 55(b)(2). That is what Ward did here. (Doc. 140 at 1, 3; Doc. 141 at 2–3).

Cir. 1993)).[6] The entry of default thus "raises no protectable expectation that a default judgment will follow," *Johnson,* 140 F.3d at 785, and whether it does or not is a decision "committed to the sound discretion of the district court." *Harre*, 983 F.2d at 130 (citing *F.T.C. v. Packers Brand Meats, Inc.,* 562 F.2d 9, 10 (8th Cir. 1977) (per curiam)); *see Wright v. Smith*, No. 4:21-cv-00536-BSM-JTK, 2022 WL 17656445, *5 (E.D. Ark. Nov. 23, 2022) (M.J. Rec.) ("the Court has broad discretion in determining the circumstances under which a default judgment should enter"), *adopted*, 2022 WL 17629798 (E.D. Ark. Dec. 13, 2022).[7]

The court may consider "various factors" when determining whether to enter a default judgment, including:

> [T]he amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; and whether the grounds for default are clearly established or are in doubt. Furthermore, the court may consider how harsh an effect a default judgment might have; or whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant.

---

[6] *See also Swink v. City of Pagedale*, 810 F.2d 791, 792 n.2 (8th Cir. 1987) ("There is a strong public policy, supported by concepts of fundamental fairness, in favor of trial on the merits, particularly when the monetary damages sought are substantial.") (citations omitted); *Marshall v. Boyd*, 658 F.2d 552, 554 (8th Cir. 1981) (acknowledging "the strong policy against default judgments") (citing *Assmann v. Fleming*, 159 F.2d 332, 336 (8th Cir. 1947)).

[7] *Accord Daniels v. Dep't of Hous. & Urb. Dev.*, No. 4:16-CV-00749-BSM, 2017 WL 3161207, *2 (E.D. Ark. July 25, 2017) ("Even if an entry [of default] did occur, 'a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.'") (quoting *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2011)), *aff'd*, 730 F. App'x 399 (8th Cir. 2018) (per curiam); *F.D.I.C. v. Manatt*, 723 F. Supp. 99, 106 (E.D. Ark. 1989) ("The grant or denial of a motion for entry of default judgment is within the Court's discretion. Nevertheless, the entry of judgment by default is a drastic remedy which should be used only in extreme situations.").

*Belcourt*, 786 F.3d at 661 (citation omitted). Additionally, where, as here, a defaulted defendant is sued in an action with "similarly situated" co-defendants who have not defaulted, that scenario presents the risk of "inconsistent judgments" resulting "if one defendant defends and prevails on the merits" and the "other" defaulting defendant "suffers a default judgment." *Angelo Iafrate Constr., LLC v. Potashnick Constr., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004) (citing *Frow v. De La Vega,* 82 U.S. 552 (1872)). "To avoid such inconsistent results, a judgment on the merits for the answering party should accrue to the benefit of the defaulting party." *Id.* Consequently, no judgment should be entered against the defaulting defendant "until the matter has been adjudicated with regard to all defendants or all defendants have defaulted." *Farmers Ins. Co., Inc. v. Settle*, No. 4:13-cv-00024-KGB, 2014 WL 12564094, *7 (E.D. Ark. Mar. 28, 2014) (citing 10A WRIGHT & MILLER, *Fed. Prac. & Proc.* § 2690 (3d ed. 2013) (West)); *see Tennessee Farmers Mut. Ins. Co. v. Tim W. Smith Props., LLC*, No. 3:11-cv-00057-BRW, 2012 WL 956182, *2 (E.D. Ark. Mar. 21, 2012) ("In a multiple-defendant case, default judgment against one defendant should be avoided if the default judgment could create 'inconsistent and unsupportable' results as to the non-defaulting defendants.") (footnote omitted); *Bastien v. R. Rowland & Co.*, 631 F. Supp. 1554, 1561 (E.D. Mo. 1986) (observing that Supreme Court in *Frow* "held that entry of judgment against the party in default must await adjudication of liability on the merits with regard to the answering parties"), *aff'd without opinion*, 815 F.2d 713 (8th Cir. 1987).

As the law disfavors default judgments, *see*, *e.g.*, *Harre*, 983 F.2d at 130, the Court, in its discretion, will "resolve[]" any such "doubt . . . in favor of the defaulting party," *i.e.*,

10

Turner, and deny Ward's default-judgment motion without prejudice to its renewal later. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *see* 10A WRIGHT & MILLER, *supra*, § 2681 ("Under modern procedure, defaults are not favored by the law and any doubts usually will be resolved in favor of the defaulting party.") (footnotes omitted). Furthermore, the Court finds that Turner is similarly situated to her co-Defendants who are sued with her on the same § 1985 conspiracy and defamation claims and that all such Defendants likely will have closely related defenses. In other words, "the issues as to" Turner and those co-Defendants appear to be "so intertwined that incongruity would result" were the co-Defendants "to succeed on the merits of their arguments" but a default judgment were entered against Turner. *Buck v. Clearbrook, LLC*, No. 4:10-CV-04103, 2011 WL 2435939, *2 (W.D. Ark. June 16, 2011).[8] Moreover, "'because a default judgment cannot be entered until the amount of damages has been ascertained,'" *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000) (citation omitted), Eighth Circuit precedent cuts against Ward here:

> When there are multiple defendants who may be jointly and severally liable for damages alleged by plaintiff, and some but less than all of those defendants default, the better practice is for the district court to stay its determination of damages against the defaulters until plaintiff's claim against the nondefaulters is resolved. This is not because the nondefaulters would be bound by the damage determination against the defaulters, but to avoid the

---

[8] *See also Larry v. Arkansas*, No. 4:18-cv-00116-KGB, 2018 WL 11579909, *5 (E.D. Ark. Oct. 12, 2018) (denying request for default judgment where "all defendants did not default," and "[s]everal" of them timely sought dismissal of plaintiff's claims) (citing *Frow*, *Angelo Iafrate*, and *Bastien*); *Universal Cooperatives Inc. v. AAC Flying Serv. Inc.*, No. 4:11-cv-304-DPM, 2012 WL 1019582, *6 (E.D. Ark. Mar. 26, 2012) (where claims against defaulting defendant and those who won dismissal were "the same in their essentials and in their failings as a matter of law," the plaintiffs could not, under *Frow* and *Angelo Iafrate*, "take a default judgment against one defendant, thereby producing inconsistent judgments on identical claims"), *aff'd*, 710 F.3d 790 (8th Cir. 2013).

11

problems of dealing with inconsistent damage determinations against jointly and severally liable defendants.

*Pfanenstiel Architects v. Chouteau Petroleum Co.*, 978 F.2d 430, 433 (8th Cir. 1992).

Thus, this Court declines to enter a default judgment against Turner at the present time and will deny Ward's default-judgment motion from May 2025. (Doc. 140). It also denies Ward's two motions from September 2025, insofar as they, too, request a Rule 55(b) default judgment against Turner and a "damages hearing." (Docs. 180, 187). These rulings, however, are without prejudice to the default-judgment motion's "reassertion" after "the claims against" Turner's co-Defendants "are resolved." *First Magnus Fin. Corp. v. First United Mortg., L.L.C.*, No. 06-0736-CV, W-FJG, 2007 WL 1343679, at *1 (W.D. Mo. May 7, 2007); *see Washburn v. C6-Zero, LLC*, No. C24-67, 2025 WL 890166, *2 (N.D. Iowa Mar. 21, 2025) (where "[o]ther defendants" had "appeared" and were "defending" the action, court declined to enter default judgment against defaulting defendants "at this time" but stated that plaintiff "may renew her request for default judgment . . . once her claims against the other defendants have been resolved"). Lastly, as the Court will deny Ward's default-judgment motion from May 2025, it also will deny as moot his most recent request (included in his "notice" of November 6, 2025) that the Court "preserve" his default-judgment motion against Turner notwithstanding the submission of a proposed Second Amended Complaint. (Doc. 207).

### B. As Ward requests, Turner will be re-served by mail with certain default-related filings.

Turning now to Ward's second motion from May 2025, it conditionally seeks the Court's assistance with re-serving the default-judgment motion on Turner "if" the Court

"finds that additional service is needed." (Doc. 142 at 2-3). The Court, however, has no reason to believe that Ward failed in his previous attempt to serve that motion on Turner. *See id*. at 3 (asserting that Ward served the motion on Turner "via USPS to her listed address" and by "email"). To the contrary, the Court assumes that Turner is receiving party filings and Court orders in this case. *See supra* p. 3–4 (noting that Turner filed a Rule 26(f) proposal in response to the ISO, suggesting that she received that order). Thus, the Court lacks a sufficient basis on which to "find that additional service is needed" or that it is necessary to appoint counsel for that purpose as Ward suggests. (Doc. 142 at 1–3).

Nevertheless, in an abundance of caution, the Court will direct the United States Marshal to serve Turner, by mail at her address of record, with the following: (1) a copy of this order; (2) Ward's default-judgment motion and supporting brief (Docs. 140–141); (3) his earlier default motion and supporting brief (Docs. 119–120); and (4) the Clerk's entry of default (Doc. 123). Thus, Ward's Motion for Service is granted in part and denied in part. (Doc. 142). Additionally, the Court advises Turner that, despite the rulings contained in this order, she is presently, and will remain, *in default* until such time, if any, as (1) she files a motion (with a supporting brief) to set aside the default under Federal Rule of Civil Procedure 55(c); and (2) the Court grants such a motion upon a finding of good cause.

### C. Ward's remaining motions and requests are denied.

Ward's remaining motions and requests can be handled with greater dispatch. Those include, among other things, motions or requests that the Court compel discovery or impose sanctions for alleged discovery violations under Rule 37, including default judgment and spoliation-based "adverse-inference instructions" for any jury. (Docs. 180, 187–188, 201).

13

Ward made identical requests in previously filed discovery motions that the Court denied on October 20, 2025. (Doc. 200). For the same reasons explained in that discovery order, the Court denies such requests here as well and, likewise, declines to penalize Turner, Hively, or Trevathan for failing to respond to Ward's earlier default-judgment and discovery motions. (Doc. 180).

The Court also declines to sanction any party for any alleged violation of the ISO or Rule 26(f). (Doc. 188). The ISO and the parties' Rule 26(f) submissions were meant to facilitate the issuance of a Final Scheduling Order, which occurred in this case on October 15, 2025. (Doc. 198). So, at this point, the parties' failure to submit a *joint* Rule 26(f) report, although no cause for condonation, is arguably moot and, in any event, does not, in the Court's discretion, warrant sanctions. Nor does the Court find a sufficient basis on which to strike any Defendant's "pleadings and defenses," to "deem admitted" any of Ward's allegations, to refer former Defendant Randall for any federal investigation or potential prosecution, or to regulate—beyond what the rules of ethics already require—any party's contacts with potential witnesses. (Doc. 187).[9]

Lastly, the Court declines to certify this order (or any part of it) for immediate appeal under 28 U.S.C. § 1292(b). (Doc. 187 at 12, 25). As previously explained in the order denying Ward's motions for reconsideration, this Court's authority over such a request is uncertain under Eighth Circuit precedent. (Doc. 209 at 18 n.10). Here, however, the request

---

[9] *See* ARK. R. PROF'L CONDUCT 4.2(a) ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law.").

is procedurally improper because (1) Ward included it in his motion for relief in a way that is preemptive or anticipatory; (2) it fails to address an order previously entered; and (3) it doesn't explain how it meets the statutory criteria for certification. As the Court explained, the allowance of an "interlocutory appeal under § 1292(b) is an 'extraordinary course,' and '[p]ermission . . . should . . . be granted sparingly and with discrimination.'" Doc. 209 at 19 (quoting *Union County v. Piper Jaffray & Co., Inc.*, 525 F.3d 643, 646 (8th Cir. 2008) (citation and internal quotation marks omitted)).

Here again, Ward has not shown that this order (or any part of it) "involves a controlling question of law as to which there is substantial ground for difference of opinion," 28 U.S.C. § 1292(b), and, on the latter point, he cites no "conflicting and contradictory opinions" from other courts that might "provide substantial ground for disagreement" with this Court's order. *Union County*, 525 F.3d at 647 (citation and internal quotation marks omitted). Nor has Ward shown that "an immediate appeal" from this order "may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b).

Consequently, the Court will deny any § 1292(b) request contained in any of Ward's motions now before the Court. If Ward is unhappy with any aspect of this order, his proper course is (1) to appeal to United States District Judge Lee P. Rudofsky, citing objections under Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636; and (2) if unhappy with Judge Rudofsky's resolution of such an appeal, to request him to certify the matter for an immediate appeal under § 1292(b).

### III. CONCLUSION

IT IS THEREFORE ORDERED THAT:

1. Plaintiff's Motion for Default Judgment and Sanctions Against Defendant Turner is DENIED without prejudice. (Doc. 140).

2. Plaintiff's Motion for Service and to Appoint Attorney for the Limited Purpose of Service upon Wannda Turner is GRANTED in part and DENIED in part. (Doc. 142).

3. The United States Marshal is directed to serve: (1) a copy of this Order; (2) Ward's default-judgment motion and supporting brief, (Docs. 140–141); (3) Ward's earlier default motion and supporting brief, (Docs. 119–120); and (4) the Clerk's entry of default, (Doc. 123), on Wannda Turner at her address of record without requiring prepayment of fees and costs.

4. Plaintiff's Motion to Acknowledge Non-Responses, Enter Judgment, and Bar Further Participation is DENIED. (Doc. 180).

5. Plaintiff's Post-Discovery Motion for Default Judgment, Sanctions, and Adverse Inference Against Defendants Trevathan, Turner, and Hively, or in the Alternative, for Interlocutory Certification under 28 U.S.C. § 1292(b), is DENIED without prejudice. (Doc. 187).

6. Plaintiff's Motion to Deem Unrebutted Facts Admitted and Request for Sanctions is DENIED without prejudice. (Doc. 201).

7. Separate Defendants' Motion to Strike Plaintiff's Reply Brief is DENIED. (Doc. 202).

8.      Plaintiff's Motion for Sanctions, Defaults, and Request for Damages Hearing is DENIED without prejudice. (Doc. 188)

9.      Plaintiff's Request to Preserve Plaintiff's Motion for Default Judgment Against Defendant Turner is DENIED as moot. (Doc. 207)

SO ORDERED this 2nd day of December, 2025.

_____
UNITED STATES MAGISTRATE JUDGE