IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

STEPHEN WARD                                                                    PLAINTIFF

v.                              Case No. 3:22-cv-00250-LPR-BBM

HAROLD COPENHAVER, *et al*.,                                          DEFENDANTS

**ORDER REGARDING THE DEPOSITION OF PLAINTIFF STEPHEN WARD**

Pending before the Court are two motions regarding the upcoming deposition of Plaintiff Stephen Ward. In the first, Ward seeks an order quashing the deposition notice he received from Defendants Harold Copenhaver, Larry Rogers, Jeffrey Moore, and Carol Duncan or, alternatively, a protective order requiring that his deposition be taken remotely. (Doc. 225). In the second motion, Ward asks the Court to stay the deposition pending its ruling on the first motion. (Doc. 235). For the reasons that follow, the Court will grant in part and deny in part the first motion, and it will deny the second motion as moot.

I.      BACKGROUND

In 2022, Ward filed this lawsuit based on events that allegedly occurred in Jonesboro, Arkansas. (Doc. 2). When he filed suit, Ward lived in the Eastern District of Arkansas, *id*. at 3, 83, but it appears that he now lives in Humble, Texas. (Doc. 216). In January 2026, Copenhaver, Rogers, Moore, and Duncan noticed their deposition of Ward for February 23, 2026, at their counsel's office in North Little Rock, Arkansas. (Doc. 224). The Defendants want to depose Ward there in person, but Ward wants to appear for the deposition remotely, from Texas, using a videoconference platform.

With the parties at an impasse over this issue, Ward filed a motion on January 20,

2026, seeking an order quashing the deposition notice or, alternatively, a protective order requiring that his deposition be taken remotely by Zoom. (Doc. 225). He seeks this relief under Federal Rules of Civil Procedure 26(c) and 30(b)(4), which the Court will discuss below. Ward says it would subject him to "significant travel time and expense"—including an approximately 10-hour road trip "each way" between Texas and Arkansas—were he required to appear in person for a deposition in North Little Rock. *Id*. at 3, 5. In Ward's view, this would be "unnecessary" because depositions "by Zoom" are "a common, reasonable, and efficient means of conducting depositions in modern federal litigation." *Id*. at 2, 4; *see id*. at 4 ("Remote depositions are standard practice in federal courts and are widely accepted as reliable, efficient, and cost-effective."). Nor, in Ward's view, would it "prejudice" the Defendants were they required to "conduct[] the deposition by Zoom." *Id*.

According to Ward, in his pre-motion conferral with Defendants' counsel, M. Keith Wren, Esq., Ward proposed an alternative site for an in-person deposition that is closer to his current location (*i.e.*, Houston, Texas), but Wren was not agreeable. *Id*. at 2. Ward also says that Wren objected to a remote deposition because, earlier in the case, "internet issues" negatively affected some other remote deposition. *Id.* at 3; *see id*. at 2 (quoting conferral email in which Ward told Wren, "[t]he prior internet issue you referenced was not on my end, and I do not believe it justifies refusing a remote deposition now"). As Ward sees it, "[t]he mere assertion of a prior technical issue, particularly one not attributable to Plaintiff, does not constitute good cause to impose significant travel burdens where a routine, court-approved alternative is available." *Id*. at 5.

In their opposition filed on January 27, 2026, Copenhaver, Rogers, Moore, and

Duncan argue that Ward, having chosen to file suit in the Eastern District of Arkansas, should be required to appear here for an in-person deposition. (Doc. 228 at 1–2). The Defendants say that Ward's purported travel burdens are "not a legitimate reason" for the relief he seeks and that, if Ward "did not want to travel back to the Eastern District of Arkansas for his deposition, perhaps he should not have moved so far away from it after filing his lawsuit." *Id.* at 2. Additionally, the Defendants aver that Ward's motion is inconsistent with (1) his position in a separate dispute with the City of Jonesboro, wherein Ward claimed that he is only "visiting Texas to help a friend" but is still an Arkansas resident entitled to documents he seeks under the Arkansas Freedom of Information Act; and (2) a Facebook post in which Ward appears to seek actor auditions "for a movie and series" in which he is involved and which will be "filmed in Jonesboro during 2026." *Id.* at 2–3. According to the Defendants, if Ward's "assertion" in the documents dispute is "true, then he should not protest returning to his state of residency to take part in the litigation process that he started here," and if Ward "can come to the Jonesboro area to shoot a movie in 2026, then certainly he can come to North Little Rock on February 23, 2026 for his deposition." *Id.* at 3.

Copenhaver, Rogers, Moore, and Duncan also address the previous remote deposition mentioned in Ward's motion, suggesting that it was Ward's remote depositions of these four Defendants that experienced technical difficulties. *Id*. at 3–4. The Defendants aver that (1) it "is a vast understatement" to say that those depositions were affected by "internet issues"; (2) the Defendants reasonably "wish to avoid the possibility of 'internet issues'" also affecting their deposition of Ward; and (3) the prior "depositions were fraught

with technical difficulties that can be avoided by an in-person deposition." *Id.* at 3–4. Lastly, the Defendants forecast that their deposition of Ward will be "document heavy," and they say that, although "it is not impossible to deal with voluminous exhibits in a video deposition, it is cumbersome" to do so such that they "should not have to deal with that issue in a case that the Plaintiff has brought here." *Id.* at 4.

In his reply filed on February 2, 2026, Ward argues that an in-person deposition would subject him to an "undue burden" because he would have to *drive* from Texas to Arkansas, and back to Texas again, over "hundreds of miles in mid-winter conditions that are objectively dangerous," as they potentially involve "frequent ice storms, black ice, white-out visibility, and multi-vehicle pileups on the relevant highways." (Doc. 234 at 1–2). According to Ward, "[a]ir travel is impossible" because he allegedly lacks a passport or other "Real ID-compliant identification" now mandated by "federal law . . . for domestic air travel," and he lacks time before the deposition to obtain such identification, as the process "requires in-person application, birth certificate, proof of address, and weeks of processing time," *id.* at 2. In Ward's view, a Zoom deposition is a "safer, equally effective alternative[]" to an in-person deposition, and the Defendants "offer zero reason" why a Zoom deposition "would prejudice their defense." *Id.* at 3.

In a second motion filed on February 10, 2026, Ward asks the Court to stay the deposition pending its ruling on his remote-deposition request. (Doc. 235). The Defendants' time to respond to the stay motion has not yet expired, *see* RULE 7.2(b), LOCAL RULES FOR THE EASTERN AND WESTERN DISTRICTS OF ARKANSAS, but under the circumstances, the Court finds it appropriate to rule on that motion now.

Having carefully reviewed the parties' briefing, the entire record, and the relevant law, the Court will grant Ward's motion for protective order requiring that his deposition be taken remotely and deny the motions to quash and to stay the deposition as moot.

## II.    DISCUSSION

As mentioned, Ward seeks relief with respect to his deposition under two separate rules—Rule 26(c) and Rule 30(b)(4). (Doc. 225 at 3–5). His request for relief thus implicates this Court's "very wide discretion in handling pretrial discovery," *Rowles v. Curators of Univ. of Missouri*, 983 F.3d 345, 353 (8th Cir. 2020) (citation omitted). "To be sure, Rule 26(c) confers broad discretion" on district courts "to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *accord Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999); *see Pavlik v. Cargill, Inc.*, 9 F.3d 710, 713–14 (8th Cir. 1993) (district court had "broad discretion to decide discovery motions" and did not abuse it by issuing protective order to prevent deposition). Similarly, district courts "possess wide discretion" under Rule 30(b)(4) "in determining the manner for taking depositions, including whether they should take place by remote means." *Patterson Dental Supply, Inc. v. Pace*, No. 19-CV-1940, 2020 WL 10223626, *3 (D. Minn. Nov. 5, 2020) (citation omitted); *accord Doe v. Board of Regents of Univ. of Nebraska*, No. 4:21-CV-3049, 2022 WL 17343852, *2 (D. Neb. Nov. 30, 2022); *Edwards v. Thomas*, No. 4:19-CV-4018, 2021 WL 8316970, *2 (W.D. Ark. Nov. 18, 2021). Thus, when the parties, as here, "cannot agree on the logistics of a deposition, the Court has 'great discretion in designating the location'" or manner "of taking a deposition."

5

*Stebbins v. University of Arkansas*, No. CV 10-5125, 2012 WL 12985136, *2 (W.D. Ark. July 27, 2012) (quoting *Thompson v. Sun Oil Co.*, 523 F.2d 647, 648 (8th Cir. 1975) (per curiam)).

As explained below, whether Ward has satisfied Rule 26(c) presents a close call. But the Court need not resolve that question because, under the more flexible standards of Rule 30(b)(4), Ward has shown that a videoconference deposition is appropriate in the circumstances of this case. The deposition of Ward, then, shall proceed by videoconference.

### A.    Rule 26(c)

Under Rule 26(c), this Court "may, for good cause, issue an order to protect a party . . . from . . . undue burden or expense, including" by "specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery," and by "prescribing a discovery method other than the one selected by the party seeking discovery," FED. R. CIV. P. 26(c)(1)(B)-(C). The party seeking a protective order bears the "burden . . . to show the necessity of its issuance," and this "contemplates 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements,'" *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973) (citation omitted); *see Miscellaneous Docket Matter*, 197 F.3d at 926 (protective-order movant "had the burden to demonstrate good cause for issuance of the order," and "his claim of harm must be based on more than stereotypical and conclusory statements"); *Frazier v. Graves*, No. 4:20-cv-00434-KGB, 2021 WL 4502150, *17 (E.D. Ark. Sept. 30, 2021) (good-cause showing for protective order requires more than "conclusory or speculative statements about the need"

6

for it and "the harm which will be suffered without one").

For a few reasons, Ward's efforts to show "good cause" for a Rule 26(c) protective order arguably fall short. For starters, Ward refers to the "expense" he says he would incur were he required to travel to Arkansas for an in-person deposition, but he provides no travel-cost specifics or even an estimate. (Doc. 225 at 3–4).[1] Next, the Court will accept, for present purposes, Ward's assertion that he lacks a passport or other "Real ID-compliant identification," but it does not necessarily follow, as Ward claims, that this makes air travel "impossible" or takes flying "off the table." (Doc. 234 at 2). Using the "TSA ConfirmID" program of the Transportation Security Administration ("TSA"), a passenger in Ward's position still may fly if (1) he pays a $45 fee; and (2) TSA is able to "verify" the passenger's "identity" so that he "can go through security," *see* www.tsa.gov/tsaconfirm-id. Nor does Ward move the good-cause needle with his speculation about dangerous "mid-winter conditions" and "multi-vehicle pileups" on the "highways" between Humble and North Little Rock. (Doc. 234 at 1–2).

Lastly, the Court will assume, as Ward claims, that he would "incur significant travel time," *i.e.*, approximately 10 hours "each way," were he to drive between Texas and Arkansas for his deposition in this District. (Doc. 225 at 1, 3, 5). But the Court is also

---

[1] Ward did not provide an affidavit or declaration supporting his arguments. *Compare Johnson v. Ben E. Keith Co.*, No. 4:18-cv-00340-KGB, 2019 WL 13212427, *1–2 (E.D. Ark. May 16, 2019) (excusing plaintiff—who lived in the Eastern District of Arkansas when she filed suit but later moved to Utah—from appearing for in-person deposition in this District where she "submitted an affidavit" and treating-physician letters explaining how "serious medical conditions" precluded her travel from Utah to Arkansas); *see de Dalmady v. Price Waterhouse & Co.*, 62 F.R.D. 157, 159 (D.P.R. 1973) (plaintiff who lived in Venezuela but filed suit in Puerto Rico could not avoid in-forum deposition based on asserted financial hardship where protective-order motion lacked supporting affidavits and contained only his attorneys' "naked assertions" about the plaintiff's "financial and hardship conditions").

7

mindful that, because Rule 26(c) protects parties only from "unreasonable" discovery burdens, "[a] mere showing of some . . . annoyance or expense . . . does not require the issuance of a protective order." *Ericson v. Ford Motor Co.*, 107 F.R.D. 92, 94 (E.D. Ark. 1985); *see Lehnert v. Ferris Faculty Ass'n-MEA-NEA*, 556 F. Supp. 316, 318 (W.D. Mich. 1983) ("good cause is not established merely by showing that discovery may involve inconvenience and expense"). Additionally, there is the "'well-recognized, general rule that a plaintiff is required to make itself available for a deposition in the District in which the suit was commenced,'" *Garrison v. Conagra Foods Packaged Food, LLC*, No. 4:12-cv-00737-SWW, 2014 WL 11395836, *1 (E.D. Ark. Jan. 22, 2014) (citation omitted). Consequently, the Court is skeptical whether Ward's claimed travel time would constitute a "*substantial* hardship beyond the ordinary inconvenience that any deposition necessarily entails," *Huddleston v. Bowling Green Inn of Pensacola*, 333 F.R.D. 581, 585–86 (N.D. Fla. 2019) (emphasis added), and whether it would "demonstrate an undue burden as required to overcome [the Defendants'] presumptive entitlement to depose [Ward] in the Eastern District of Arkansas." *Garrison*, 2014 WL 11395836, at *1; *see Johnson*, 2019 WL 13212427, at *1 (presumption favoring in-forum deposition of plaintiff may be overcome by "a compelling showing" of "an unduly heavy burden") (citation omitted).

Ultimately, however, the Court need not resolve these Rule 26(c) issues in considering Ward's remote-deposition request. As explained below, Ward's request fares better when analyzed under Rule 30(b)(4).

**B.**     **Rule 30(b)(4)**

"Separately" from Rule 26(c), *Patterson Dental Supply*, 2020 WL 10223626, at *2,

Rule 30(b)(4) provides that this Court, on motion, "may . . . order . . . that a deposition be

taken by telephone or other remote means." FED. R. CIV. P. 30(b)(4). The Court of Appeals

for the Eighth Circuit does not appear to have established "any standard" for district courts

to apply when considering a remote-deposition request under Rule 30(b)(4) or its

predecessor, *i.e.*, former Federal Rule of Civil Procedure 30(b)(7). *Doe*, 2022 WL

17343852, at *2. Nevertheless, as the Defendants acknowledge in their response, district

courts in the Eighth Circuit generally conduct a two-step analysis when considering such

requests. (Doc. 228 at 1–2) (citing *United States v. Balega*, No. 19-CV-2959, 2022 WL

20100634, *2 (D. Minn. Mar. 10, 2022)).

Under this line of cases, Ward "must advance a legitimate reason for seeking a

remote deposition," and, "if that foundational showing is made, then the burden shifts to

[the Defendants] to make a particularized showing that conducting the deposition by

remote means would be prejudicial." *Balega*, 2022 WL 20100634, at *2 (quoting *List v.

Carwell*, No. 18-cv-2253, 2020 WL 5988514, *8 (D. Minn. Oct. 9, 2020)). Moreover, in

contrast to Rule 26(c), Rule 30(b)(4) does not require Ward to demonstrate "good cause"

for his remote-deposition request. *Doe*, 2022 WL 17343852, at *2; *Patterson Dental

Supply*, 2020 WL 10223626, at *5; *H & T Fair Hills, Ltd. v. Alliance Pipeline L.P.*, No.

CV 19-1095, 2020 WL 5512517, *1 (D. Minn. Sept. 14, 2020). To the contrary, a remote

deposition under Rule 30(b)(4) "is a presumptively valid means of discovery," *id.* at *3

(cleaned up), and, generally speaking, "leave to take depositions by remote means should

be granted liberally." *Swenson v. GEICO Cas. Co.*, 336 F.R.D. 206, 209 (D. Nev. 2020) (M.J. Order), *objections overruled*, No. 2:19-CV-01639, 2020 WL 8871311 (D. Nev. Aug. 26, 2020); *accord Brown v. Carr*, 236 F.R.D. 311, 312–13 (S.D. Tex. 2006). As recognized by district courts throughout the country, remote depositions under Rule 30(b)(4) are now the "new normal" following the COVID pandemic. *See, e.g.*, *Krause v. Integra Lifesciences Corp.*, No. 24-CV-4339, 2025 WL 1911735, *11 n.4 (D. Minn. July 11, 2025); *Carmon v. Saks Fifth Avenue LLC*, No. 4:19-CV-02855, 2020 WL 5701892, *2 (E.D. Mo. Sept. 24, 2020); *Grupo Petrotemex, S.A. de C.V. v. Polymetrix A.G.*, No. 16-cv-2401, 2020 WL 4218804, *2 (D. Minn. July 23, 2020); *Wilkens v. ValueHealth, LLC*, No. 19-1193, 2020 WL 2496001, *2 (D. Kan. May 14, 2020).

Applying this precedent, the Court finds that Ward has established a legitimate reason for requesting that his deposition be taken remotely. As mentioned, Ward "cites a general concern about a desire to save money," and this is "a valid reason to seek a remote deposition." *Doe*, 2022 WL 17343852, at *3; *accord In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2020 WL 3469166, *7 (N.D. Ill. June 25, 2020); *see Loughin v. Occidental Chem. Corp.*, 234 F.R.D. 75, 76 n.1 (E.D. Pa. 2005) (stating that former Rule 30(b)(7) "aims to simplify discovery and reduce the cost of litigation" and that the Federal Rules of Civil Procedure, generally, "favor the use of our technological benefits in order to promote flexibility, simplify the pretrial and trial procedure and reduce expense to parties") (citation omitted).

The burden thus shifts to the Defendants to show, with particulars, how they would be prejudiced if required to take Ward's deposition using Zoom or some comparable

10

videoconference platform. The Court finds that the Defendants have not satisfied their burden. Their concern about technical difficulties plaguing a remote deposition of Ward is speculative. (Doc. 228 at 3–4). But if that problem arises, the Defendants are free to return to the Court and seek "a follow-up in-person deposition" of Ward if they "can demonstrate that they were unable to conduct a meaningful deposition by . . . videoconference." *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 398 (S.D.N.Y. 2006).

Nor have the Defendants shown any particularized prejudice based on their concern about dealing with "voluminous exhibits" in a videoconference deposition of Ward. (Doc. 228 at 4). As explained by a district court in Minnesota, "exhibits can be managed in remote depositions by sending Bates-stamped exhibits to deponents prior to the depositions or using modern videoconference technology to share documents and images quickly and conveniently." *Grupo Petrotemex*, 2020 WL 4218804, at *3 (citations and internal quotation marks omitted). Nevertheless, as the Court "recognizes that there may be delays during the deposition in the handling of exhibits by the witness and counsel," it will seek to "ameliorate any prejudice caused by such delays" by granting the Defendants "an extra hour" beyond the presumptive seven-hour limit to conduct their remote deposition of Ward. *Rouviere v. DePuy Orthopaedics, Inc.*, 471 F. Supp. 3d 571, 575 (S.D.N.Y. 2020).[2]

---

[2] Additionally, the Court finds that the Defendants have not satisfied their burden by pointing to (1) the possibility of Ward visiting Jonesboro this year in connection with his film/television project; and (2) Ward's claim to Arkansas residency in connection with his pursuit of documents under the Arkansas Freedom of Information Act. (Doc. 228 at 2–3).

## III.   CONCLUSION

IT IS THEREFORE ORDERED THAT:

1.      Plaintiff's Motion to Quash Notice of Deposition or, In the Alternative, For Protective Order and to Require Remote Deposition by Zoom is GRANTED in part AND DENIED in part. (Doc. 225).

2.      Plaintiff's Motion to Quash Notice of Deposition is DENIED as moot.

3.      Plaintiff's Alternative Motion for Protective Order and to Require Deposition by Zoom is GRANTED. Defendants shall take their deposition of Plaintiff remotely, under Federal Rule of Civil Procedure 30(b)(4), using Zoom or any comparable videoconference platform. The Defendants are granted an eight-hour period for any such remote deposition.

4.      Plaintiff's Motion to Stay Deposition is DENIED as moot. (Doc. 235).

SO ORDERED this 18th day of February, 2026.


_____
UNITED STATES MAGISTRATE JUDGE

12