IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

STEPHEN WARD                                                    PLAINTIFF

v.                          Case No. 3:22-cv-00250-LPR-BBM

HAROLD COPENHAVER, *et al*.                                     DEFENDANTS

**ORDER DENYING PLAINTIFF'S MOTION TO CONTINUE DEPOSITIONS
FOR DEFENDANTS HAROLD COPENHAVER, CAROL DUNCAN,
JEFFREY MOORE, AND LARRY ROGERS**

Having already deposed Defendants Harold Copenhaver, Carol Duncan, Larry Rogers, and Jeffrey Moore in December 2025, Plaintiff Stephen Ward seeks permission under Federal Rule of Civil Procedure 30 to depose them again. On March 20, 2026, Ward filed a Motion to Continue those Defendants' depositions. (Doc. 265). On March 24, 2026, Copenhaver, Duncan, Rogers, and Moore filed a Response in opposition. (Doc. 266). For the reasons that follow, the Court will deny the Motion.

I.      **BACKGROUND**

On December 9, 2025, Ward deposed Copenhaver, Duncan, Rogers, and Moore—all government officials or employees of the City of Jonesboro, Arkansas—as well as a fifth defendant, Wannda Turner, who is a private citizen. (Doc. 265 at 1, 7; Doc. 266 at 3). On March 4, 2026, Ward served notices purporting to schedule "continued depositions" of those five Defendants for March 18, 2026, prompting Copenhaver, Duncan, Rogers, and Moore to file a Motion to Quash on March 12, 2026. (Doc. 253). Later that day, the Court granted the Motion to Quash because Ward had noticed the additional depositions without first obtaining either the parties' stipulation or leave of Court, as required by Rule

30(a)(2)(A)(ii). (Doc. 257 at 2). That ruling, however, was "without prejudice to Ward's right to file a proper Rule 30(a)(2)(A)(ii) motion for leave, explaining why he believes he needs a second round of depositions of these five Defendants." *Id*.

Ward then filed a Motion to Continue Depositions, seeking leave to re-depose Copenhaver, Duncan, Rogers, and possibly Moore, but not Turner. (Doc. 265).[1] Ward says that he deposed Copenhaver, Duncan, Rogers, and Moore on December 9, 2025, but that those depositions were "incomplete" because the Defendants' counsel, Keith Wren, provided "limited availability" for his clients to be questioned, leaving Ward with "only . . . 2 hours" per Defendant "instead of the 7 hours allotted by" Rule 30(d)(1). *Id.* at 1, 7, 10.

Ward also says that, on the day of the deposition, Wren told Ward that Copenhaver and Duncan "would have to leave early due to other engagements" and, thus, "did not honor the deposition timeline" that Ward had set for those two Defendants. *Id*. at 2, 10–12; *see id*. at 10–11 (averring that Copenhaver "changed his availability on the day of his deposition and had to leave by 1:00 p.m., instead of the 1:00 p.m. to 3:00 p.m. slot Wren had provided"). In Ward's view, then, Wren's "unilateral time restrictions" and "the witnesses' early departures" left him with "several hours of unused examination time," and so he contends that there is "good cause," now, for the Court to subject Copenhaver, Duncan, Rogers, and possibly Moore to additional depositions of "up to 5 hours . . . for each," *id*. at 11, 13.

---

[1] As discussed below, the scope of the Motion is unclear because Ward includes Moore in the caption but elsewhere identifies only Copenhaver, Duncan, and Rogers as targets of his request for leave to re-depose. (Doc. 265 at 1–2, 11, 14).

In their opposition, Copenhaver, Duncan, Rogers, and Moore assert that the Motion seeks "disfavored" discretionary relief that requires a "showing" of "good cause," which they say Ward has not made. (Doc. 266 at 1–3). The Defendants also aver that the Motion was untimely filed, *id*. at 3, and they dispute Ward's "assertion about not being given enough time" for the December 2025 depositions. *Id.* at 2.

## II.    DISCUSSION

District courts have "broad discretion to decide discovery motions," *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993); *accord Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 353 (8th Cir. 2020). So, as with "most discovery disputes, the availability of a second deposition is left to the discretion" of the district court. *Perry v. Kelly-Springfield Tire Co.*, 117 F.R.D. 425, 426 (N.D. Ind. 1987); *accord Marco Techs., LLC v. Midkiff*, No. 19-cv-2323, 2020 WL 12442102, *9 (D. Minn. Dec. 7, 2020) (M.J. Order), *aff'd*, 2021 WL 62471 (D. Minn. Jan. 7, 2021); *Haddley v. Next Chapter Tech., Inc.*, No. 16-cv-1960, 2018 WL 11419658, *3 (D. Minn. Sept. 7, 2018); *see Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 924–27 (8th Cir. 1999) (district court did not abuse discretion in quashing subpoena for second deposition of non-party corporate officer as plaintiffs could have questioned him about the topics at issue at his prior deposition "but failed to do so"); *Bell v. Fowler*, 99 F.3d 262, 271 (8th Cir. 1996) (district court did not abuse discretion in denying plaintiff's motion to exceed Rule 30(a)(2)(A)(i)'s ten-deposition limit where she "presented no good reason why the additional depositions were necessary"). "[T]here is no automatic right to take a second deposition," *Ransom v. Herrera*, No. 1:11-cv-01709, 2018 WL 4008386, *2 (E.D. Cal. Aug. 21, 2018), and as the

3

Defendants suggest, (Doc. 266 at 1), courts "'generally disfavor repeat depositions.'" *Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 690 (D. Kan. 1996) (citation omitted); *see E.E.O.C. v. Product Fabricators Inc.*, 285 F.R.D. 418, 422 (D. Minn. 2012) ("additional deposition is disfavored"); *accord Haddley*, 2018 WL 11419658, at *4.

Certain Federal Rules of Civil Procedure guide the exercise of a court's discretion in this context. First, if "the deponent has already been deposed in the case," and "the parties have not stipulated" to a second deposition, then the seeker of the second deposition "must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2)," FED. R. CIV. P. 30(a)(2)(A)(ii). Second, "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours. The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." FED. R. CIV. P. 30(d)(1). Third, Rule 26(b)(1) provides for "the scope of discovery" as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). And in relevant part, Rule 26(b)(2) says this about limitations on the frequency and extent of discovery:

> (A) *When Permitted*. By order, the court may alter the limits in these rules on the number of depositions . . . or on the length of depositions under

Rule 30. . . .

\* \* \*

(C) *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

FED. R. CIV. P. 26(b)(2).

Although Rule 30(a)(2) is not "explicit" as to whether "a 'good cause' standard applies when determining whether to reopen or retake a deposition," many "district courts have utilized a 'good cause' standard when making such a determination" under Rule 30(a)(2)(A)(ii). *Kleppinger v. Texas Dep't of Transp.*, 283 F.R.D. 330, 335 n.7 (S.D. Tex. 2012). Among them are district courts in at least five districts in the Eighth Circuit, including at least one in the Eastern District of Arkansas. *See Cole v. Hutchins*, No. 4:17-cv-00553-JLH, 2018 WL 11352010, \*1 (E.D. Ark. Nov. 15, 2018) (denying defendants' motion to re-depose witness because "[t]he defense has failed to show good cause"); *Petersen v. Rapid City, Pierre, & E. R.R. Inc.*, No. 5:22-CV-05064, 2024 WL 4625161, \*1 (D.S.D. Oct. 30, 2024) ("a movant must show good cause to re-depose a witness"); *J&M Mfg. Co. v. Kinze Mfg., Inc.*, No. 22-CV-94, 2024 WL 6956124, \*9 (N.D. Iowa Feb. 16, 2024) ("Absent some showing of a need or good reason for doing so, the court will

5

generally not require a deponent to appear for a second deposition.") (footnote, citations, and internal quotation marks omitted); *accord Miller v. Union Pac. R.R. Co.*, No. 8:18-CV-568, 2021 WL 424439, *3 (D. Neb. Feb. 8, 2021); *Product Fabricators*, 285 F.R.D. at 422–23; *Benson v. Giordano*, No. CIV. 05-4088, 2007 WL 2355783, *3 (D.S.D. Aug. 17, 2007). Given this precedent (which does not appear to be contrary to any decision of the Court of Appeals for the Eighth Circuit); the broad language in Rule 30(d)'s Advisory Committee Note from 2000;[2] and the parties' own reliance on a good-cause standard in their briefing, (Doc. 265 at 13; Doc. 266 at 2–3), the Court will evaluate Ward's Motion in light of that standard *and* the above-quoted portions of Rules 26(b)(1) and 26(b)(2), as required by Rule 30.[3]

Against that backdrop and on the record now before it, the Court finds that Ward has not shown good cause to re-depose Copenhaver, Duncan, Rogers, and Moore for an additional five hours per Defendant and that such discovery would not be consistent with Rules 26(b)(1) and 26(b)(2). As a threshold matter, the Defendants are right to observe that

---

[2] *See* FED. R. CIV. P. 30(d), Advisory Comm. Note, 2000 Amendment (good-cause standard governs motion "seeking a court order to extend the examination, *or otherwise alter the limitations*") (emphasis added).

[3] As courts have suggested, "good cause" and the discovery limitations in Rules 26(b)(1) and 26(b)(2) are interrelated in any event. For example, in *Cole*, 2018 WL 11352010, at *1, Judge Holmes found no good cause for a second deposition and then cited to Rule 26(b)(2)(C)(ii), suggesting that good cause was lacking in that case *because of* a Rule 26 limitation, *i.e.*, the movant already "had ample opportunity to obtain the information by discovery in the action," FED. R. CIV. P. 26(b)(2)(C)(ii); *see also Bonneau v. City of Portland*, No. 3:18-CV-518, 2020 WL 1467045, *2 (D. Or. Mar. 26, 2020) ("a showing of 'good need'" is required to re-open a deposition, and Rule 26(b)(2)(C) "provides guidance on when there may be 'good need'"); *Arugu v. City of Plantation*, No. 09-61618-CIV, 2010 WL 2609394, *3 (S.D. Fla. June 27, 2010) (stating that Rule 26(b)(2)'s "principles" governed plaintiff's motion to re-depose and finding that, "[u]pon full consideration of the parties' arguments, . . . no good cause exists to allow" the second deposition).

Ward does not "mention" in his Motion "any topics" that he "was unable to cover" with them in the December 2025 depositions. (Doc. 266 at 2). Indeed, Ward does not identify any particular questions, or even general areas of inquiry, that he would like to ask or explore in a second round of depositions with Copenhaver, Duncan, Rogers, and Moore. And although the Motion says that Wren provided "limited" deposition "availability" for those Defendants in December 2025, Ward does not support that broad assertion with many specifics. (Doc. 265 at 7). Ward suggests that he had set a "timeline" for the Defendants' December 9 depositions, but, other than Copenhaver's purported slot that day (1:00-3:00 p.m.), *id.* at 11–12, Ward doesn't describe the full deposition schedule that the parties established at the outset or the particular time period that each Defendant, ultimately, spent in the witness chair. Deposition notices and transcripts might have shed light here, but Ward did not attach such documents to his Motion.

Thus, Ward failed to provide the Court enough information to allow it to consider and decide (1) whether the depositions would be "proportional to the needs of the case" and produce a "likely benefit" not outweighed by the depositions' "burden or expense," FED. R. CIV. P. 26(b)(1); (2) whether the information sought in the depositions would be "unreasonably cumulative or duplicative" or could "be obtained from some other source that is more convenient, less burdensome, or less expensive," FED. R. CIV. P. 26(b)(2)(C)(i); (3) whether Ward "has had ample opportunity to obtain the information by discovery in the action," FED. R. CIV. P. 26(b)(2)(C)(ii); and (4) ultimately, whether there is good cause for additional depositions. When presented with a dearth of records, courts have denied leave to re-depose, and the record here requires the Court to do the same. *See*,

*e.g.*, *Marlow v. City of Clarendon*, 78 F.4th 410, 416 (8th Cir. 2023) (district court did not abuse discretion in declining to subject police chief to second deposition as plaintiff did not "specify what additional evidence he could have elicited . . . had the deposition continued"); *Adkisson v. Jacobs Eng'g Grp.*, No. 3:13-CV-505, 2020 WL 8257749, *3 (E.D. Tenn. Nov. 2, 2020) (no leave to re-depose where plaintiffs did not "identify specific issues that were not appropriately addressed during the first deposition"); *Bonneau*, 2020 WL 1467045, at *2 (no leave to re-depose where plaintiff did not "explain what additional questions he still needs to ask" and did not show that "the reopening of these depositions would not be unreasonably cumulative or duplicative"); *Ransom*, 2018 WL 4008386, at *2 (no leave to re-depose where defendants did not establish good cause to "reopen any specific topic . . . already covered" and did not "identify an earlier question that was insufficiently answered or required additional questioning"); *Gillespie v. Block Maint. Sols.*, No. 12-947-CV, 2013 WL 3772518, *2 (W.D. Mo. July 17, 2013) (no leave to re-depose where plaintiff "provided no reasons supporting his request," leaving court with "no way to determine" whether he "already had an opportunity to obtain the information sought or whether additional deposition time would unreasonably cumulative").

Next, to the extent that Ward offers any substantive argument in support of the relief he seeks, the argument boils down to an asserted right to depose each Defendant up to Rule 30(d)(1)'s seven-hour limit across one or more days in addition to December 9, 2025. (Doc. 265 at 2, 10–14). But for several reasons, this argument neither demonstrates a need for "additional time" under Rule 30(d)(1), nor establishes good cause, nor shows that a second round of depositions would be consistent with Rules 26(b)(1) and 26(b)(2).

First, Ward is wrong on the law. Even accepting his assertion that he "was only able to depose each of" the four Defendants "for around 2 hours" on December 9, 2025, (Doc. 265 at 10), this "is not a license to notice/take a second deposition of the same individual on a different day or days until the seven hour limit is reached." *Schmidt v. City of Pasadena*, No. 2:21-CV-08769, 2023 WL 11950417, *3 (C.D. Cal. June 19, 2023); *see id*. at *2 (rejecting argument that plaintiff was "entitled to take multiple depositions" of non-party witness "on different days so long as he does not exceed the seven-hour maximum limit"). The parties, of course, were free to stipulate to such a schedule, and the Court has the discretion to approve it. *See id*. at *3 ("Absent a stipulation or court approval, a deposition of an individual may be taken *only once* on a single day and, *on that single day*, may not exceed seven hours (exclusive of reasonable breaks).") (emphasis added).[4] But the parties did not agree to such a schedule. And in these particular circumstances, the Court is not inclined to compel the Defendants to sit for serial depositions—occurring incrementally from December 9, 2025, through one or more other days until each Defendant's seven-hour threshold is reached—simply because the earlier depositions were only two hours each. *See*, *e.g.*, *Bonneau*, 2020 WL 1467045, at *2 ("[The fact that these depositions did not last the entire limit of seven hours per deposition provided for in Rule 30(d)(1) is insufficient, by itself, to show good need."); *Couch v. Wan*, No. CV F 08-1621, 2012 WL 4433470, *4 (E.D. Cal. Sept. 24, 2012) (denying leave for plaintiffs to re-open

---

[4] *See also* FED. R. CIV. P. 30(d), Advisory Comm. Note, 2000 Amendment ("The limitation is phrased in terms of a single day on the assumption that ordinarily a single day would be preferable to a deposition extending over multiple days; if alternative arrangements would better suit the parties, they may agree to them.").

deposition, for three additional hours, of non-party witness who was deposed "originally for only two hours," as a "reopened deposition would be unreasonably cumulative or duplicative," and plaintiffs failed to "demonstrate an absence of ample opportunity or likely benefit" of an additional deposition and, thus, to "substantiate need and good cause" for it); *cf. In re Sulfuric Acid Antitrust Litig.*, 230 F.R.D. 527, 532 (N.D. Ill. 2005) ("The rules do not allow for endless depositions, the modern form of trial by ordeal.").[5]

Second, even if a deposing party's non-use of all seven hours allowed by Rule 30(d)(1) might *sometimes* justify a deposition's re-opening, this Court still finds such relief to be unwarranted on the particular facts of this case. Perhaps of most importance, what Ward now argues in his Motion (*i.e.*, an asserted right to subject each of the four Defendants to a total deposition time of seven hours) is wholly contrary to the position he took during his deposition planning with Wren in November and December of 2025. During that time, Ward and Wren exchanged a number of emails in which they endeavored to schedule Ward's depositions of Wren's four clients for December 2025. (Doc. 266 at 2– 3; Doc. 266-1; Doc. 266-2; Doc. 266-3; Doc. 266-4). As shown below, and as the Defendants correctly observe, (Doc. 266 at 2–3), the emails establish that, during the

---

[5] Although some courts have permitted the re-opening of a deposition that was less than seven hours, such cases typically have involved some additional factor—like the production of discovery documents after the initial deposition or the addition of new claims or parties in an amended complaint— that justified the re-opening. *See*, *e.g.*, *Carroll v. City of Stockton*, No. 2:23-CV-00194, 2025 WL 1295469, *2 (E.D. Cal. May 5, 2025) (allowing second deposition of "up to two additional hours" where first deposition was "only 3.7 hours" and was followed by the production of "medical information" that warranted questioning); *Zorich v. St. Louis County*, No. 4:17-CV-1522, 2018 WL 10394880, *2 (E.D. Mo. Apr. 24, 2018) (allowing second deposition in light of newly added claims and defendants but limiting it to the "four hours" not used in first deposition); *Alexander v. Martin*, No. 2:08-CV-400, 2010 WL 11531257, *3 (E.D. Tex. June 29, 2010) (allowing second deposition so that plaintiff could question defendant about 500,000 pages of documents produced after first deposition but limiting second deposition "to the remaining two hours and fifty-three minutes of deposition time permitted" by Rule 30(d)(1)).

conferral process, Ward did *not* insist on a seven-hour deposition for each Defendant and, in fact, was content with far less deposition time.

According to the emails, Ward was agreeable from the start to deposing all four Defendants on one day—either December 8, 2025, or December 9, 2025. (*See* Doc. 266-1 at 1, containing Ward's emails to Wren in late November 2025). Later, Wren offered both dates to Ward, specifying the Defendants' availability on each, and Ward responded that he was "fine using December 8 and 9." (Doc. 266-2, emails of Nov. 26, 2025). In another email thread a few days later, Ward said that he also expected to depose Turner on December 9, 2025; that he was open to deposing Copenhaver "at 1:00 on both days"; but that he also was "completely open to doing all four depositions in a single day," adding that, "[i]f we begin at 9:00, I think we could reasonably be finished sometime around 5:00 or so." (Doc. 266-3 at 2, emails of Nov. 30, 2025). That same day, Wren told Ward that it "will be better" if all depositions "can be done in one day" and asked for Ward's preference as to December 8 or 9; Ward responded that "December 9 works fine for me as well." *Id*. at 1. Lastly, on December 8, 2025, Ward emailed Wren to confirm that Turner would be on the December 9 deposition schedule with Wren's four clients, adding that he wanted to depose Turner first and then Rogers, after which

> we should be able to move swiftly through the others. I am hopeful that we can move through everything and be done by 5. I will try to condense down the questions for your clients to balance it out so [Turner] does not cost much if any extra time. We can work around so [Copenhaver] is in and out as well.

(Doc. 266-4 at 1).

Given Ward's position during the deposition planning, the Court is hard-pressed to find a basis for relief simply because Ward "was only able to depose each of" the four Defendants "for around 2 hours" on December 9, 2025. (Doc. 265 at 10).[6] Moreover, even if Copenhaver and Duncan changed their start time on December 9 because they "had to leave early," *id.* at 2, it's unclear what difference this made because, according to Ward, Copenhaver and Duncan still were subject to a deposition that day of "around 2 hours," *id.* at 10. Thus, for Rule 30(d)(1) purposes, the Court finds no "impeding" or "delay" based on Ward's allegations about Wren's conduct on December 9, 2025; the two-hours-per-Defendant schedule; or the "early departures" of Copenhaver and Duncan.  Lastly, even accepting that Copenhaver and Duncan changed their start times to accommodate "early departures," this could not possibly subject *Rogers and Moore* to any additional deposition time. Ward makes no "early departure" allegation as to those two Defendants and says nothing, otherwise, to justify a re-opening of *their* depositions. For all of these reasons, the

---

[6] In one of the March 2026 conferral emails leading to the Motion to Quash, (Doc. 253), Ward referred Wren to a moment in a December 9, 2025 deposition when Ward purportedly "reserved the right to come back again to finish depositions that we did not complete," citing a time-stamp of "6:47–7:07." (Doc. 265 at 6). But as mentioned, Ward did not include with his Motion a deposition transcript showing any such "reservation of rights" he might have made on the record during a December 9 deposition. And as worded, this assertion in Ward's email to Wren conveys few specifics, such as the particular deposition in which any "reservation of rights" might have occurred and which, if any, of the depositions was declared by Ward on the record to be incomplete in his view. The email is certainly insufficient to show the parties' agreement to "temporarily recess[]" any December 9 deposition "for convenience of counsel or the deponent or to enable additional materials to be gathered before resuming the deposition." FED. R. CIV. P. 30(a), Advisory Comm. Note, 1993 Amendment (explaining that the leave-of-court "requirement does not apply" in such temporary-recess situations); *see Scott v. Abernathy Motorcycle Sales, Inc.*, No. 1:18-cv-01077, 2020 WL 1666945, *2 n.3 (W.D. Tenn. Apr. 3, 2020) (applying good-cause standard to motion to re-depose as there was "no indication that the parties" suspended or recessed the witness's first deposition "for any of [the] reasons" mentioned in this Advisory Committee Note).

12

Court will not compel the Defendants to sit for another 20 hours of depositions (collectively) simply because of the seven-hour provision in Rule 30(d)(1).

As mentioned previously, Wren initially made his clients available on both December 8 and 9, 2025, and there is every reason to credit the Defendants' assertion that, if Ward "needed additional time to depose" them, "he could have had it by agreement in December of 2025." (Doc. 266 at 3). Instead, Ward "did not begin to complain about not being able to finish the depositions . . . until March 2026," *id.*, and he did not file the Motion to Continue Depositions until March 20, 2026, which was the discovery deadline set in the Final Scheduling Order. (Doc. 198 at 1). The Defendants, then, are technically correct to say that the Motion was untimely when filed because, under the Final Scheduling Order, "'[a]ll discovery requests and motions must [have been] filed sufficiently in advance of that date to allow for a timely response.'" (Doc. 266 at 3) (quoting Doc. 198 at 1); *see*, *e.g.*, *Cerda v. Blue Cube Operations, L.L.C.*, 95 F.4th 996, 1004 (5th Cir. 2024) (district court did not abuse discretion in denying plaintiff's request to reconvene deposition made "one week before the discovery deadline").

Nonetheless, even if the Court excuses Ward from complying with the letter of the Final Scheduling Order's discovery-motion deadline, he still failed to pursue additional deposition time within a reasonable time frame. And for that reason, and for the other reasons discussed above, Ward has shown neither good cause for the requested relief nor that the benefit of additional depositions would outweigh their burden or expense. FED. R. CIV. P. 26(b)(1). Moreover, on this record, Ward has not shown that the information he seeks in the additional depositions would not be "unreasonably cumulative or duplicative"

13

or could not "be obtained from some other source that is more convenient, less burdensome, or less expensive," FED. R. CIV. P. 26(b)(2)(C)(i), or that he lacked "ample opportunity to obtain the information by discovery in the action," FED. R. CIV. P. 26(b)(2)(C)(ii).

## III.   CONCLUSION

IT IS THEREFORE ORDERED THAT Plaintiff's Motion to Continue Depositions, (Doc. 265), is DENIED.

DATED this 20th day of May, 2026.

_____
UNITED STATES MAGISTRATE JUDGE