IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

STEPHEN WARD PLAINTIFF

v. Case No. 3:22-cv-00250-LPR-BBM

HAROLD COPENHAVER, *et al.*, DEFENDANTS

**ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Pending before the Court is Plaintiff Stephen Ward's Motion for Leave to File Second Amended Complaint, (Doc. 208), which Defendants Harold Copenhaver, Carol Duncan, Jeffrey Moore, and Larry Rogers oppose. (Doc. 215). For the following reasons, Ward's Motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

Ward is proceeding *pro se*. On September 26, 2022, he filed his Complaint, (Doc. 2), and, on October 12, 2023, Ward filed a First Amended Complaint (FAC), which is presently the operative pleading. (Doc. 10). On October 17, 2023, Ward was granted leave to proceed *in forma pauperis*. (Doc. 11). Accordingly, on March 25, 2024, United States District Judge Lee P. Rudofsky screened the FAC under 28 U.S.C. § 1915(e)(2), dismissing some of the FAC's claims and allowing others to proceed. (Doc. 14).

### A. The FAC

In the FAC, Ward alleges that, after he was evicted from his home in September 2021, he was "penniless and homeless" and, therefore, turned to "panhandling activities" involving the sale of "pony rides" in parking lots near businesses in Jonesboro, Arkansas.

FAC at 7–9, ¶¶ 19–27. According to Ward, his panhandling was protected by the First Amendment and was "consistent with" his Muslim faith. *Id.* at 8, ¶ 24.

In March 2022, Ward allegedly "started hearing rumors" that the Mayor of Jonesboro and others in city government and private animal-rights groups were "planning to shut . . . down" the pony rides "because they didn't like" Muslims and "were getting tired of seeing [Ward] panhandling around town." *Id.* at 9, ¶ 28. Thus, in March and April of 2022, "a malicious scheme"—aimed at stopping the pony rides—was allegedly pursued by Defendant Copenhaver (the Mayor of Jonesboro); Defendants Moore and Rogers (two Animal Control Supervisors employed by the City of Jonesboro); and two private citizens, Defendant Wannda Turner ("the Director of NAFA Rescue") and Defendant Lisa Trevathan, who allegedly "works at" the Northeast Arkansas Humane Society (NEAHS). *Id*. at 4–5, 10, 47, ¶¶ 4–6, 8–9, 29, 74.[1]

As Ward tells it, one consequence of the alleged scheme occurred on April 22, 2022, when he was panhandling in a private parking lot and approached by Moore, who purportedly subjected Ward to "an unlawful search and seizure" in violation of the Fourth Amendment and said that he was "shutting [Ward] down and making him leave" because "the Mayor wanted him gone." *Id*. at 11–12, ¶¶ 30–31. Ward also claims that Copenhaver,

[1] According to its Facebook page, "NAFA" stands for Northeast Arkansans for Animals and is "an all volunteer rescue that specializes in low cost vaccination events and low cost cat neuters." https://www.facebook.com/nafahelp (last visited Sept. 23, 2026). On its website, the City of Jonesboro Animal Services Department states that it "partner[s] with . . . NAFA . . . to offer low-cost vaccination clinics, and low-cost cat neuter clinics." https://www.jonesboroar.gov/132/Animal-Services (last visited Sept. 23, 2026). As for the NEAHS, it describes itself on its website as "a 501c non-profit animal shelter devoted to placing surrendered or abandoned pets into loving homes." https://www.neahs.org/about-us (last visited Sept. 23, 2026).

Moore, Rogers, Turner, and Trevathan "spread[] misinformation" about him as part of a "smear campaign" or "plot" to "incite public outrage" and, thereby, drive away his pony-ride customers, discourage property owners from letting him operate on their premises, generate complaints about him and "animal abuse" to city officials, and, ultimately, lay the groundwork for passage of a city ordinance restricting his panhandling activity. *Id*. at 17, 23, 28, 32, ¶¶ 43, 46, 52, 53(g), 63. The FAC ascribes particular falsehoods of this sort to Turner and Trevathan. *See id*. at 18–19, 23–25, 28–30, 32, 96, ¶¶ 44–46, 52–58, 63, 152 (attributing to Turner a July 4, 2022 post on NAFA Rescue's Facebook page that Trevathan allegedly "magnified" or "shared and/or republished," and which "falsely accus[ed] [Ward] of neglecting and abusing the horses"). The FAC attempts to do the same as to three additional Defendants (apparently also private citizens)—Melissa Hively,[2] Kimberly Randall, and "Simrit Kaur" (the latter an "alias" as discussed below). *See id*. at 49–56, ¶¶ 79–85.[3]

Next, the FAC accuses Copenhaver, Rogers, Turner, and Trevathan of "creating" a city ordinance whose purpose and effect was to halt Ward's pony-ride panhandling

[2] Hively was misidentified in the FAC as Melissa Kathryn Morrison. (Doc. 10 at 6, ¶ 13; Doc. 85; Doc. 100 at 3, ¶ 7).

[3] The FAC alleges that Randall and Kaur, "along with" Hively, falsely claimed that Ward "had sex with [underage] girls in order to ruin" his "reputation" and "credibility" and, thereby, "aid" Copenhaver, Moore, Rogers, Turner, and Trevathan in their alleged efforts to stop Ward from panhandling. FAC at 49, ¶ 79. The FAC says nothing more about Hively's alleged involvement in such conduct, but it alleges that Randall and Kaur made these statements to Ward's fiancée—and/or made "unwanted" diagnoses about Ward and "shared them publicly" on Facebook or otherwise—while "impersonating" or "posing as" psychologists. *Id*. at 49–50, 56, ¶¶ 79–81, 83–85. Moreover, Kaur allegedly "stated" (to some unspecified person(s)) that, "through her work," "she illegally accessed" Ward's "Crime Information Center" file and, after obtaining this "court sealed file," "shared" its "contents" with Ward's fiancée and advised "her to leave him." *Id*. at 54, ¶ 84.

activities. FAC at 32, 37–38, 65, ¶¶ 63, 69–70, 97. The FAC describes the title of the ordinance as "Subsection 13, Providing for Guidelines on the Handling, Displaying, or Giving Away of Animals in the City of Jonesboro, Arkansas," and suggests that the ordinance may be found in Article I, Chapter 10, Section 10, Subsection 10-13 of the Code of Ordinances of Jonesboro, Arkansas. *Id*. at 32, 65, ¶¶ 63, 97 (all-caps omitted).

Under one ordinance provision quoted in the FAC, any "person"

> wishing to charge a fee, seek monetary donations, or receive any financial benefit for any activities associated with animal rides, handling, or displaying any animal in the City of Jonesboro must possess and display, or make immediately available for inspection upon demand of any representative of the City of Jonesboro, proof of current liability insurance of no less than $1,000,000 . . . AND possess written permission personally endorsed by the property owner or legally responsible party for the property on which they are located.

FAC at 65–66, ¶ 97 (quoting § 10-13(a) of the ordinance). In a second provision, the City

> retains the right to stop any such activity should it be determined that there is not proper documentation or that a safety hazard or health concern exists to the public, or that the conditions place a clear risk to the animal(s) health and well-being.

*Id*. at 66, ¶ 97 (quoting § 10-13(c)). And in a third provision, the ordinance exempts from "the insurance requirements" any "[a]nimal rescue and/or adoption organizations that have been verified by the City of Jonesboro," *id.* at 66, ¶ 97 (quoting § 10-13(d)). A municipal website also contains the ordinance and indicates that it was enacted on September 6, 2022. *See* https://jonesboro.legistar.com/LegislationDetail.aspx?From=RSS&ID=5725344&GUID=1173741A-27AC-4BBB-9A85-27B67A0C55C8 (last visited Sept. 23, 2026).[4]

[4] *See generally Brakebill v. Jaeger*, 905 F.3d 553, 562 n.5 (8th Cir. 2018) ("The district court properly took judicial notice of the state's official website.").

Ward avers that he was "the single target" of the ordinance, FAC at 36, ¶ 70, and that, because he was unable or unwilling to satisfy the insurance requirement and was denied an exemption, he was forced by the ordinance to stop offering pony rides while panhandling.[5]

As redress, Ward seeks damages or equitable relief on six counts asserted under federal or Arkansas law—*e.g.*, for conspiracy under 42 U.S.C. § 1985(3); constitutional torts under 42 U.S.C. § 1983; and state-law defamation—against 10 Defendants sued in their individual capacities. *See* FAC at 2, ¶ 1 (suing "each" defendant in his or her "individual capacity"); *accord id*. at 4–6, ¶¶ 4–13. The named Defendants include the eight individuals mentioned above—Copenhaver, Moore, Rogers, Turner, Trevathan, Hively, Randall, and Kaur—plus Defendant Carol Duncan (the Jonesboro City Attorney, *see* FAC at 4, ¶ 7), and former Defendant Stan Morris (FAC at 5, ¶ 12), whom Ward voluntarily dismissed in 2024 under Federal Rule of Civil Procedure 41. (Docs. 66, 68, 72).

**B. The Screening Order (Doc. 14)**

On his review of the FAC under § 1915(e)(2), Judge Rudofsky found that only a "few of the claims . . . have enough meat on the bones to pass the screening stage." (Doc. 14 at 2). He then identified the following five claims (or categories of claims) as the FAC's "only potentially viable claims." *Id.*

---

[5] *See* FAC at 61–62 ¶ 91 (Rogers "refused to . . . approve" Ward's request to be treated as an "animal rescue" operator who would be "exempt from" the ordinance's "insurance requirement"); *id*. at 70–71, ¶ 100(e) (Copenhaver "refused to let [Ward] be excluded from an ordinance that he qualified to be excluded from"); *id*. at 66–67, ¶ 97(A) (referring to "a special ordinance targeting" Ward and "forcing him to purchase a $1 million insurance policy for giving pony rides"); *id.* at 97, ¶ 159 (Ward "has been damaged by having to stop giving pony rides in the area where he is domiciled").

First, Judge Rudofsky allowed Ward to pursue § 1983 claims against Copenhaver, Moore, and Rogers—for "(a) the alleged April 22, 2022 shut-down of Mr. Ward's pony rides/panhandling activities and (b) the passage or enforcement of the ordinance referenced in the [FAC]"—as potential violations of the Fourteenth Amendment Equal Protection Clause or the Free Speech or Free Exercise Clauses of the First Amendment. (Doc. 14 at 2). Second, Judge Rudofsky let Ward proceed on his § 1985 claims—against Copenhaver, Moore, Rogers, and Turner—"to the extent they are premised on a conspiracy concerning the same incidents as just identified . . . above," *i.e.*, the alleged April 22, 2022 parking-lot incident, and the passage or enforcement of the ordinance. *Id*. The third claim to survive screening was a § 1983 claim against Moore "to the extent it is based on the Fourth Amendment . . . for the April 22, 2022 interaction with Ward," *id.* at 3. Fourth, Judge Rudofsky allowed Ward to proceed on his claims against Turner, Trevathan, Hively, Randall, and Kaur for "defamation/libel/slander" under Arkansas law. *Id*. Fifth, Judge Rudofsky allowed Ward to pursue claims against Copenhaver, Duncan, Moore, and Rogers under the Arkansas Freedom of Information Act (AFOIA), 25 Arkansas Code Annotated §§ 25-19-101 to 25-19-112 (Volume 25B, 2024 Repl. & 2025 Supp.). (Doc. 14 at 3).[6]

[6] *See* FAC at 80–88, ¶¶ 109–31 (asserting §§ 1983 and 1985(3) claims in Count II); *id*. at 95–102, ¶¶ 151-79 (defamation claims in Count IV). In contrast to how he pleaded his §§ 1983/1985(3) and defamation claims, Ward did not assert a distinct AFOIA *count* in the FAC. *But see Janes, Inc. v. Moates*, No. 2:13-CV-02049, 2014 WL 348588, *4 (W.D. Ark. Jan. 31, 2014) ("The preferred manner of pleading is to set out the various claims for relief in separate counts.") (citing FED. R. CIV. P. 10(b)). Instead, Ward sprinkled references to alleged AFOIA violations here and there throughout his pleading. *See* FAC at 56–60, ¶¶ 86–89 (mentioning alleged AFOIA violations in Statement of Facts); *id.* at 65, 72, 74, 84–85, 129, ¶¶ 96(b), 100(g), 102(b), 119, 129 (mixing references to alleged AFOIA violations with other claims in Counts I and II).

"All other claims," ruled Judge Rudofsky, "are out." (Doc. 14 at 3); *see id*. at 2 (stating that "[m]any . . . claims" in the FAC "are deficient—either because they are pled in a conclusory manner or because they are legally invalid"). And Judge Rudofsky was careful to limit "the surviving claims above . . . to the specific Defendants the Court has detailed. To the extent those claims were also brought against other defendants, they are also out vis-à-vis those other defendants." *Id.* at 3.

**C. Relevant Procedural History**

Copenhaver, Duncan, Moore, and Rogers answered the FAC in April 2024. (Doc. 33). Hively and Trevathan did so, respectively, in August 2024 and April 2025. (Docs. 85, 116). Turner is in default for not answering the FAC after the Court denied her motion to dismiss under Federal Rule of Civil Procedure 12(b). (Docs. 104, 108, 123). On December 2, 2025, this Court denied without prejudice Ward's motion for a default judgment against Turner under Federal Rule of Civil Procedure 55(b). (Doc. 212). And on February 27, 2026, Judge Rudofsky denied Ward's appeal of that default-judgment ruling. (Doc. 243).

For some time, the "alias" defendant, Kaur, *see* FAC at 5, ¶ 11, remained unidentified and was never served with process. (Docs. 16, 27, 35, 37, 41). As for Randall, the Court dismissed her without prejudice in June 2024 based on a Rule 41 voluntary-dismissal notice that she and Ward jointly filed after reaching a confidential settlement. (Docs. 67–68, 72). In April 2025, however, Ward sought to reinstate Randall as a party-defendant—to "substitute" her for Kaur—based on information he acquired from Google LLC, suggesting that Randall allegedly acted in the underlying events not only in her own name but also using the alter-ego of "Simrit Kaur." (Docs. 125–128, 157–158). On August

21, 2025, the Court denied Ward's request, finding that substitution could not be ordered under Federal Rule of Civil Procedure 25, but that Ward was free to seek leave under Federal Rule of Civil Procedure 15 "to file another amended complaint that includes Randall as a defendant." (Doc. 159 at 2). On February 24, 2026, Judge Rudofsky denied Ward's appeal of that substitution ruling. (Doc. 242).

On October 15, 2025, the Court issued a Final Scheduling Order that, among other things, scheduled a jury trial for the week of August 17, 2026, and set deadlines for (1) the addition of parties or amendment of pleadings (December 1, 2025); (2) the completion of discovery (March 20, 2026); and (3) the filing of dispositive motions (April 20, 2026). (Doc. 198 at 1–2). Based on their discovery motions, the parties appear to have completed substantial discovery.[7] Moreover, Ward, Copenhaver, Duncan, Moore, and Rogers have filed motions for summary judgment under Federal Rule of Civil Procedure 56. (Docs. 285, 287, 290, 293, 296, 301). Given the pendency of this Motion and other discovery motions, the Court stayed "all pretrial deadlines in the Final Scheduling Order" pending the motions' resolution, at which point, the Court advised, it "will consider modifications to the Final Scheduling Order with the parties' input, subject to approval by" Judge Rudofsky. (Doc. 284). For these same reasons, the Court also stayed briefing on the summary-judgment motions pending further order. (Docs. 299, 313).

[7] (Docs. 240, 261, regarding certain Defendants' deposition of Ward); (Docs. 253, 257, 300, regarding Ward's depositions of Copenhaver, Duncan, Moore, Rogers, and Turner); (Doc. 282, granting Ward's motion to compel deposition of Trevathan and directing its completion by May 21, 2026).

On July 29, 2026, Judge Rudofsky continued the trial to November 16, 2026. (Doc. 326). On July 30, 2026, Judge Rudofsky denied Ward's appeal of the stay-of-briefing order concerning his summary-judgment motions. (Docs. 304, 327).

**D. The Proposed Second Amended Complaint (SAC)**

On November 25, 2025, Ward filed his Motion for Leave, (Doc. 208), attaching the proposed SAC, (Doc. 208-1). On December 9, 2025, Copenhaver, Duncan, Moore, and Rogers filed a Response in Opposition to Plaintiff's Motion to Amend Complaint. (Doc. 215). The Court has received no other responses, and the time to file one has expired. *See* LOCAL RULE 7.2(b).

The proposed SAC essentially retains (with some variation) the FAC's surviving claims against Copenhaver, Duncan, Moore, Rogers, Turner, Trevathan, and Hively. And Ward seeks to re-sue Randall, naming her as a defendant in place of Kaur on the FAC's surviving defamation claims. But also in the SAC, Ward attempts to add five new defendants—three private individuals (Margaret Bradley, Daya Shipman, and Laura Dacus Daniels) and two private or public entities (the NEAHS and the City of Jonesboro)—and to veer into new subject matter concerning the City's alleged involvement in veterinary clinics.

Insofar as the SAC repleads the FAC's claims that survived screening, Ward may continue to pursue those claims, and he may pursue the SAC's new-but-related federal claims against Duncan and Turner. Additionally, for the reasons that follow, leave to amend will be granted as to Ward's new claims against Randall, Bradley, Shipman, and Daniels, but denied as to all claims against the NEAHS and the City of Jonesboro and as

to any claim against any party based on the operation of veterinary clinics or the distribution or use of veterinary medications.

## II. DISCUSSION

### A. Legal Standards[8]

"Rule 15 governs when and how a plaintiff may amend his complaint." *Thomas v. United Steelworkers Loc. 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014). Rule 15(a) permits a party to "amend its pleading once as a matter of course" within certain pretrial time periods, FED. R. CIV. P. 15(a)(1), and, "[i]n all other cases," to do so "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). As Ward lacks consent, and he previously amended the original Complaint when he filed the FAC, he may amend again only with this Court's leave, as he acknowledges. (Doc. 208 at 1).

A court "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). But "justice does not always require" a court to "grant[] leave to amend," *Trump v. Vance*, 480 F. Supp. 3d 460, 503 (S.D.N.Y. 2020), *aff'd*, 977 F.3d 198 (2d Cir. 2020). Whether to do so is a "decision . . . left to the sound discretion of the district court," *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008); *see Foman v. Davis*, 371 U.S. 178, 182 (1962) ("the grant or denial of an opportunity to amend is within the discretion of the

---

[8] In the Eighth Circuit, a Rule 15 "motion to amend a complaint is a 'non-dispositive pretrial motion,'" *Vanicek v. Lyman-Richey Corp.*, 145 F.4th 810, 816 (8th Cir. 2025) (quoting *Daley v. Marriott Int'l, Inc.*, 415 F.3d 889, 893 n.9 (8th Cir. 2005)), that a magistrate judge may "appropriately" resolve by order under 28 U.S.C. § 636(b)(1)(A). *Charles v. Cole*, No. 3:25-cv-00073-LPR-ERE, 2025 WL 2983130, *1 n.2 (E.D. Ark. Oct. 22, 2025); *see Satanic Temple v. City of Belle Plaine*, 80 F.4th 864, 871 (8th Cir. 2023) (magistrate judge "had the authority to decide" a "motion to amend," and his order denying that motion "was not a binding decision on a dispositive motion").

District Court"). Rule 15(a)(2) gives no party "'an absolute or automatic right to amend.'" *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009) (citation omitted).[9]

An "outright refusal" to grant leave to amend "without any justifying reason appearing for the denial is . . . an . . . abuse of . . . discretion and inconsistent with the spirit of the Federal Rules." *Foman*, 371 U.S. at 182. But a court acts within its discretion if it rejects an amendment for any of the "classic 'good reasons,'" *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) (citation omitted), identified by the Supreme Court in *Foman*—*i.e.*, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," 371 U.S. at 182.

"An amendment is futile if it would fail to withstand a motion to dismiss under Rule 12(b)(6)," *Ghosh v. Abbott Lab'ys, Inc.*, 170 F.4th 1141, 1144 (8th Cir. 2026), which permits a party to assert "by motion" the defense of "failure to state a claim upon which

[9] "A motion to amend a complaint *to add a party* may also implicate Federal Rules of Civil Procedure 20 and 21, the joinder rules." *Adams v. Quattlebaum*, 219 F.R.D. 195, 197 n.1 (D.D.C. 2004) (emphasis added); *accord Davis v. United States*, 196 F. Supp. 3d 106, 122 n.12 (D.D.C. 2016); *Air Now, Inc. v. Cincinnati Cas. Co.*, No. 4:11-CV-671, 2013 WL 141733, *1 (E.D. Mo. Jan. 11, 2013). Under Rule 20, "[p]ersons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2)(A)-(B). And under Rule 21, a district court, "[o]n motion or on its own, . . . may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." FED. R. CIV. P. 21. "Once a responsive pleading has been served, however, the standard for adding a party is the same regardless of the rule under which the motion is made: the decision lies within the discretion of the court." *Adams*, 219 F.R.D. at 197 n.1. Thus, because "'in practical terms . . . there is . . . little difference'" among Rules 15, 20, and 21, the Court need not "separately analyze" Ward's Motion "under each of those three Rules." *Oneida Indian Nation of New York State v. County of Oneida*, 199 F.R.D. 61, 72 (N.D.N.Y. 2000) (citation omitted); *accord Mytee Prods., Inc. v. H.D. Prods., Inc.*, No. 05-CV-2286, 2007 WL 4105713, *3 (S.D. Cal. Nov. 16, 2007).

relief can be granted," FED. R. CIV. P. 12(b)(6). "The 'futility' analysis for a motion to amend a complaint . . . thus applies the same standard of review as a motion to dismiss." *Euphoric, LLC v. Westport Cmty. Improvement Dist.*, No. 4:25-cv-00023, 2026 WL 1587314, *3 (W.D. Mo. June 3, 2026); *see Zutz v. Nelson*, 601 F.3d 842, 850–51 (8th Cir. 2010) (if a district court denies "a motion for leave to amend on the basis of futility," it "'means the . . . court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6)'") (citation omitted). And so a court must apply the pleading standards from *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when subjecting a proposed amendment to Rule 15 futility review. *See Zutz*, 601 F.3d at 850–51 (applying "the *Twombly* pleading standard" on review of futility-based denial of leave to amend).

For a complaint to "show[] that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and thereby "survive a motion to dismiss," it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "That plausibility standard 'asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 589 (2026) (quoting *Iqbal*, 556 U.S. at 678). "If the complaint 'pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Instead, to nudge a claim 'across the line from conceivable to plausible,' a plaintiff must plead facts that, if true, 'allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' and to rule out 'obvious alternative

explanation[s]' for the defendant's conduct," *id.* at 589–90 (quoting *Iqbal*, 556 U.S. at 678, 680, and *Twombly*, 550 U.S. at 567).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief," *Iqbal*, 556 U.S. at 679, "affording the plaintiff all reasonable inferences that can be drawn from those allegations." *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S at 678; *see id*. at 679 ("pleadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

Because Ward is proceeding *pro se*, his proposed SAC "is 'to be liberally construed'" and, "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted). Even *pro se* litigants, however, "must allege sufficient facts to support the claims advanced," and a court is not required "to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone v. Harry*, 364 F.3d 912, 914–15 (8th Cir. 2004); *see Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("Although it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions."); *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (per curiam) (a *pro se* complaint "may not be merely conclusory" but "must allege facts, which if true, state a claim as a matter of law").

### B. Ward's Proposed Amendments

#### 1. Old and New Claims Against Current Defendants

##### a. The Old

Insofar as the SAC repleads the same claims that the FAC asserted against Copenhaver, Duncan, Moore, Rogers, Turner, Trevathan, and Hively, and that survived screening, *see supra* Part I-B, those claims will remain in the case for now. *See Benner v. Saint Paul Pub. Schs., I.S.D. #625*, 407 F. Supp. 3d 819, 824 (D. Minn. 2019) (magistrate judge declined "to reach a different conclusion on a legal issue already decided by the District Judge presiding over the litigation").[10]

##### b. The New

Now, Ward seeks to assert additional federal claims against Duncan and Turner. As to Duncan, Judge Rudofsky allowed only the FAC's AFOIA claims to proceed. (Doc. 14 at 3). But in the SAC, Ward wants to add Duncan as a defendant to all previously allowed

[10] By the same token, insofar as the SAC repleads any "other claims" from the FAC that Judge Rudofsky already said "are out," (Doc. 14 at 3), such claims will stay "out" of the case. This includes any claim based on (1) any state statute other than the AFOIA, *e.g.*, Arkansas Code Annotated § 16-63-207 (repealed), *see* SAC at 3, ¶ 1; FAC at 3, ¶ 1, and Arkansas Code Annotated § 14-43-504, *see* SAC at 55–56, ¶ 87; FAC at 48, ¶ 75; (2) the "Jonesboro, Arkansas employee Handbook" and the "The Law Enforcement Code of Ethics," *see* SAC at 56, ¶¶ 88–89; FAC at 48, ¶¶ 76–77; (3) "unfair trade practice and anti trust violations," *see* SAC at 41, ¶ 74; FAC at 37, ¶ 70; (4) Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, *see* SAC at 67, ¶ 103; FAC at 2–3, 64, ¶¶ 1, 95; (5) 18 U.S.C. § 241, *see* SAC at 73, ¶ 119; FAC at 2–3, 65, ¶¶ 1, 96; and (6) any separate § 1983 "conspiracy" theory. SAC at 72, ¶ 117; FAC at 84, ¶ 118. Leave to amend is denied as to all such claims. *See Baldwin v. Estherville, Iowa*, 333 F. Supp. 3d 817, 828 (N.D. Iowa 2018) (a "proffered amendment" may be rejected as "futile" if it is "contrary to a determination that the court has already made") (citing *Miss. River Revival, Inc. v. City of Minneapolis*, 319 F.3d 1013, 1018 (8th Cir. 2003)); *see also Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) ("Duplicative and frivolous claims are futile.").

§§ 1983/1985(3) claims.[11] Additionally, Ward seeks to expand his claims against Turner beyond the previously allowed § 1985(3) and defamation claims, adding Turner as a defendant to the same § 1983 claims allowed against Copenhaver, Moore, and Rogers on the theory that Turner, although a private citizen, acted in the underlying conduct "under color of law" either "individually" or "in joint participation" with (or "through") those government officials. *Id.* at 70–74, ¶¶ 114–16, 118–22; *see also id*. at 40, ¶ 72 (alleging that Turner "wrote the terms for" the ordinance "even though she does not work for the city . . . and has no authority . . . to write ordinances or act under the color of law").[12]

**(i) Initial *Foman* Analysis**

As to these new §§ 1983/1985(3) claims against Duncan and Turner, the Court will grant Ward leave to amend. Discovery did not start in this case until Fall 2025, (Docs. 160, 198), and that process provided Ward with document productions from Moore and Rogers in October/November 2025. (Doc. 230 at 2–3; Doc. 231 at 3; Doc. 244 at 2, 4; Doc. 244-2 at 1–11). Ward filed the Motion for Leave on November 25, 2025. (Doc. 208). The Court finds neither "undue delay" by Ward in filing his Motion, nor "bad faith or dilatory motive" on his part, with respect to these particular amendment requests. *Foman*, 371 U.S. at 182.

---

[11] *See* SAC at 70–77, ¶¶ 114–23, 125–27, 129–30 (asserting § 1983 claims against Duncan and others in Count I); *id.* at 10–11, ¶ 30 (adding Duncan to list of Defendants who allegedly "started a malicious scheme to shut down" Ward's "panhandling activities"); *id.* at 15, ¶ 39 (new allegation that Duncan, while "on the phone" with Moore, was "an active participant" in his alleged "stop" of Ward in parking lot on April 22, 2002, and that she "was the decision maker and calling the shots that were spoken by . . . Moore"); *id*. at 77–79, ¶¶ 132–33, 136) (asserting § 1985(3) claims against Duncan and others in Count II).

[12] Given these allegations, Ward is mistaken when he says in the Motion for Leave that "no new claims are asserted against" Turner in the SAC. (Doc. 208 at 3).

Nor can the Court say that these particular amendments are futile. *Id*. The new claims against Duncan and Turner are not time-barred because they assert "a claim" against two current Defendants "that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading" and, thus, "relate[] back to the date of the original pleading," FED. R. CIV. P. 15(c)(1)(B). Moreover, the new §§ 1983/1985(3) claims against Duncan are substantially similar to the §§ 1983/1985(3) claims against Copenhaver, Moore, and Rogers that the Court allowed to proceed. And as the Court already approved the § 1983 claims against Copenhaver, Moore, and Rogers, Ward may pursue comparable § 1983 claims against Turner, too, although the "color of law" allegations against this private actor are admittedly borderline under *Twombly* and *Iqbal*.

**(ii) Defendants' Response in Opposition**

Copenhaver, Duncan, Moore, and Rogers appear to raise "futility" and "prejudice" arguments against the proposed amendments concerning Duncan and Turner. (Doc. 215 at 2–3, ¶¶ 11, 13).

Futility. As to the new federal claims against Duncan and Turner, the Response's only futility point concerns the § 1985(3) conspiracy claims. The Response says that, insofar as Copenhaver, Duncan, Moore, and Rogers "allegedly conspired with each other, such a claim is barred by the intracorporate conspiracy doctrine." (Doc. 215 at 2) (citing *Kelly v. City of Omaha*, 813 F.3d 1070, 1078–79 (8th Cir. 2016)).

According to "the intra-corporate conspiracy doctrine," an "agreement" between or among employees "of the same official entity" cannot form the "basis of an unlawful conspiracy claim." *Gray v. Mallory*, No. 4:25-cv-01057-LPR, 2026 WL 1195833, *8 (E.D.

Ark. May 1, 2026) (footnotes omitted); *see generally Torres v. City of St. Louis*, 39 F.4th 494, 506 (8th Cir. 2022) (doctrine "extend[s] . . . to § 1985(2) and (3) conspiracy claims"). For at least two reasons, however, the Court will not rely on this doctrine to reject any proposed amendment as futile at this point in the case.

First, the intracorporate-conspiracy doctrine only applies when "all of the defendants are members of the same collective entity," *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991).[13] But Ward's § 1985(3) claims are not limited to an alleged conspiracy involving *only* the employees of one government entity. Rather, Ward alleges that Copenhaver, Duncan, Moore, and Rogers—all City of Jonesboro employees—conspired not only amongst themselves but also with Turner, a private actor who is not a fellow municipal employee. *See* SAC at 77, ¶ 132 (identifying Turner in Count II as among the § 1985(3) conspirators); *id*. at 40, ¶ 72 (alleging that Turner "does not work for the city").[14] For futility purposes, then, this doctrine does not bar the proposed amendments of Ward's § 1985(3) claims insofar as they're premised on an alleged conspiracy between Turner on the one hand and, on the other, one or more of the four municipal employees sued in this case. *Compare Denney v. City of Albany*, 247 F.3d 1172, 1190–91 (11th Cir. 2001) (doctrine barred § 1985(3) claim

[13] *Accord Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999); *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994); *see Rehberg v. Paulk*, 611 F.3d 828, 854 (11th Cir. 2010) (doctrine barred § 1983 conspiracy claim where alleged conspiracy "occurred only within a government entity"), *aff'd*, 566 U.S. 356 (2012).

[14] Section 1985(3) potentially "covers" this type of alleged conspiracy "between public and private actors," *Redwood v. Dobson*, 476 F.3d 462, 466 (7th Cir. 2007); *see Means v. Wilson*, 522 F.2d 833, 836, 840–41 (8th Cir. 1975) (plaintiffs stated § 1985(3) claim against president of Oglala Sioux Tribal Council who allegedly "conspired with private individuals to insure his reelection by illegal means").

where "the only two . . . identified" conspirators were "both City employees," and "no outsiders" were "alleged to be involved"), *with Novak v. City of Parma*, 932 F.3d 421, 436–37 (6th Cir. 2019) (doctrine did not bar § 1983 conspiracy claim, at pleading stage, where conspirators were alleged to have been members of different agencies and, thus, "not in the same 'legal entity'").

Second, the Screening Order already allowed the FAC's comparable § 1985(3) claims to proceed against Copenhaver, Moore, Rogers, and Turner. (Doc. 14 at 2); *see* FAC at 80–88, ¶¶ 109–31. So at this leave-to-amend stage, the Court is not inclined to reach a contrary conclusion as to the SAC's version of the § 1985(3) claims—including their expansion to reach Duncan—based on the intracorporate-conspiracy doctrine (which, on the pleadings, is not dispositive of the whole conspiracy claim, anyway, given Turner's alleged involvement).[15]

Prejudice. The Response also states that the "addition of . . . new claims will likely result in the undue delay of these proceedings because the current defendants will need to conduct additional discovery concerning the new claims," (Doc. 215 at 3). Under *Foman*, a court must consider whether "allowance of the amendment" will cause "undue prejudice to the opposing party," 371 U.S. at 182; "to the judicial system" or "the public's interest in speedy resolution of legal disputes," *Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir.

[15] Nevertheless, Copenhaver, Duncan, Moore, and Rogers are free to invoke the intracorporate-conspiracy doctrine in a proper response to the SAC, bearing in mind the doctrine's limitations under the case law discussed above. Indeed, that doctrine was part of the summary-judgment argument made by Copenhaver, Moore, and Rogers in response to the FAC's § 1985(3) claims. (Doc. 302 at 26–27). Those Defendants, plus Duncan, are free to revise or supplement their summary-judgment motion, as they see fit, after the SAC is served and an amended scheduling order issues.

1992); or to "other litigants by making them wait longer in the court queue." *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 838 F.2d 904, 909 (7th Cir. 1988). "[V]irtually every amendment to a complaint results in some degree of prejudice to the defendant in that the potential for additional discovery arises as well as the possibility of a delay of the trial date." *Lanigan v. LaSalle Nat'l Bank*, 108 F.R.D. 660, 662 (N.D. Ill. 1985). But only "undue" prejudice can defeat a proposed amendment. *Foman*, 371 U.S. at 182; *see McDonald Apiary, LLC v. Starrh Bees, Inc.*, No. 8:14-CV-351, 2016 WL 4919885, *3 (D. Neb. Sept. 14, 2016) ("As a practical matter, any substantive amendment to the pleadings will 'prejudice' the party at whom the pleading is directed—the question is whether that prejudice is undue.").

Given the age of this case and its present procedural posture, the Court arguably would be within its discretion to reject *all* of Ward's proposed amendments on prejudice grounds. In circumstances like these, courts have the discretion to deny leave to amend if they perceive prejudice in "reopening discovery or forcing the court to continue the trial." *Swanson v. Van Otterloo*, 177 F.R.D. 645, 650 (N.D. Iowa 1998). Courts may be especially likely to find prejudice if the proposed amendment would inject "new substantive claims" and "new theories of recovery" into the case, raising "different factual and legal issues" that require extensive additional discovery. *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998). And late amendments may be prejudicial if, given the case schedule, the

non-movant would be hindered in its "ability to prepare [a] defense" to the new claims before trial. *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 996 (8th Cir. 2001).[16]

Ultimately, "the party opposing the amendment" bears the "burden" of showing undue prejudice. *Beeck v. Aquaslide "N" Dive Corp.*, 562 F.2d 537, 540 (8th Cir. 1977). In its discretion, the Court finds that, on this record, Copenhaver, Duncan, Moore, and Rogers have not met their burden of showing that they (or the court system writ large) will be unduly prejudiced by the addition of Duncan and Turner as defendants to the §§ 1983/1985(3) claims. Such amendments will not greatly expand the scope of the case because they would only add two current Defendants (Duncan and Turner) to the same §§ 1983/1985(3) claims that Judge Rudofsky allowed to proceed as to other Defendants. These new federal claims against Duncan and Turner, then, concern the same basic facts and legal theories that are already the subject of the litigation. That undercuts any prejudice claim. *See*, *e.g.*, *Bell*, 160 F.3d at 454 (suggesting that district courts may abuse their discretion in denying leave to amend if new claims are "based on facts similar to the original complaint" and involve no "new theories of recovery"); *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir. 1981) (denial of leave to amend was an abuse of discretion as new claim was based on "facts" that were "substantially similar to those" underlying the original claim).[17]

---

[16] *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) (amendment may be prejudicial if it "unfairly affects the defendants 'in terms of preparing their defense to the amendment'") (citation omitted).

[17] *See also Carter v. United States*, 123 F. App'x 253, 259 (8th Cir. 2005) ("we divine no undue prejudice" in allowing amendment whose "factual underpinnings . . . are identical" to claims in original complaint); *accord Popp*, 210 F.3d at 943–44; *Sanders v. Clemco Indus.*, 823 F.2d 214, 217 (8th Cir. 1987).

Moreover, the parties already conducted substantial discovery that included depositions of Ward, Duncan, and Turner and, presumably, some focus on the §§ 1983/1985(3) claims as so far constituted. Although the Response forecasts that "additional discovery" will follow the expansion of those claims to reach Duncan and Turner, (Doc. 215 at 3), it offers no specifics. In the Court's view, any such additional discovery is unlikely to be significant. In any event, "an 'adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.'" *Dennis v. Dillard Dep't Stores*, 207 F.3d 523, 526 (8th Cir. 2000) (citation omitted); *see Clark v. Baka*, No. 4:07-cv-00477-GTE, 2008 WL 11344847, *2 (E.D. Ark. July 10, 2008) (granting plaintiffs leave to amend as defendants' "concerns about the additional discovery that will be required" were "not enough alone to justify" denial).

At this point, of course, discovery is closed. (Doc. 198 at 1). But the Court has "discretion to reopen it for the limited purpose of exploring" the additional claims allowed in this Order. *Dennis*, 207 F.3d at 526. Similarly, although less than two months remain until the rescheduled trial date of November 16, 2026, (Doc. 326)—which may or may not be "ample time" for any additional discovery, *Dennis*, 207 F.3d at 526—Judge Rudofsky has the discretion to reset the trial date a second time in light of this Order. Any party interested in scheduling relief (or in revising an earlier summary-judgment motion, *see supra* n.15), in light of this Order need only file an appropriate motion requesting such relief. Indeed, "it is well within the district court's power," when allowing amendments that may necessitate "some additional discovery," to "alleviate the resulting burden" on the non-movant "by granting a continuance," *Buder*, 644 F.2d at 694, or similar relief.

Accordingly, the Court concludes that Copenhaver, Duncan, Moore, and Rogers will not suffer "undue prejudice" if they have to participate in additional discovery because of the amendments allowed by this Order. Even if "some prejudice" to those Defendants "would result if the motion to amend were granted, that prejudice must be balanced against the hardship to the moving party if it is denied." *Buder*, 644 F.2d at 694; *see Bell*, 160 F.3d at 454 ("Any prejudice to the nonmovant must be weighed against the prejudice to the moving party by not allowing the amendment."). And on balance, for all the reasons set forth above, the equities favor the modest amendments proposed by Ward with respect to his §§ 1983/1985(3) claims against Duncan and Turner.[18]

### 2. Defamation Claims Against Kimberly Randall

The FAC's defamation claims against Kimberly Randall and "Simrit Kaur" were among those to initially survive screening. (Doc. 14). Ward later voluntarily dismissed Randall but then sought, unsuccessfully, a Rule 25 substitution of Randall for Kaur on the theory that Randall had defamed him while using the Kaur alias. Now, the Motion for Leave seeks Randall's reinstatement as a party-defendant. In the proposed SAC, Ward identifies Randall as a defendant in the caption and the "Parties" section, and he names her as a defendant to the SAC's defamation count, essentially repleading the same allegedly defamatory conduct previously ascribed to Kaur but now ascribing it to Randall. *See* SAC at 1; *id*. at 5, ¶ 10; *id*. at 80–91, ¶¶ 138–71 (Count III).

[18] The Court emphasizes—as Judge Rudofsky sometimes does at the screening stage of a case—that its "legal conclusions" in this Rule 15 order "are tentative and without the benefit of adversarial briefing," *Warren v. Hutchinson*, No. 4:22-cv-00561-LPR, 2022 WL 4102535, *3 n.27 (E.D. Ark. Sept. 6, 2022), and "a strong motion to dismiss might change the Court's mind." *Wright v. Harris*, No. 4:25-cv-00164-LPR-BBM, 2026 WL 147548, *1 (E.D. Ark. Jan. 20, 2026).

Given Judge Rudofsky's analysis of the Kaur conduct alleged in the FAC, (Doc. 14 at 3), the Court declines to find that the proposed SAC's defamation claims against Randall would be futile or otherwise contrary to *Foman*. Accordingly, the Court will grant Ward leave to amend to pursue the SAC's defamation count against Randall.[19]

### 3. Defamation Claims Against Margaret Bradley, Daya Shipman, and Laura Dacus Daniels

Next, Ward seeks leave to assert state-law claims of defamation (libel and slander) against three new potential defendants—Margaret Bradley, Daya Shipman, and Laura Dacus Daniels. (Doc. 208 at 3, 5); *see* SAC at 80–91, ¶¶ 138–71 (Count III). For the following reasons, the Court will allow Ward to pursue these new defamation claims against Bradley, Shipman, and Daniels as set forth in the SAC.

To begin, the Court notes that the SAC's defamation allegations concerning Bradley, Shipman, and Daniels are similar to the FAC's defamation allegations concerning Turner, Trevathan, Hively, Randall, and Kaur.[20] So as a matter of pleading sufficiency

[19] The effect of this Order will be to return Randall to the case despite the Rule 41 dismissal that followed her confidential settlement with Ward. That dismissal, however, was without prejudice. (Doc. 72). And the gist of Ward's argument is that Randall procured the settlement by fraud, *i.e.*, by settling the "Randall" claims while concealing that she also acted as "Kaur" in the underlying events. (Doc. 100 at 3; Doc. 127 at 2; Doc. 128 at 3; Doc. 157 at 2). If Randall believes that the settlement bars the claims asserted against her in the SAC, she may raise that argument (and any other she believes she has) in an appropriate response to the SAC after she is served with process.

[20] *See*, *e.g.*, SAC at 19, 29, 81, ¶¶ 45, 60, 139 (referring to Turner's allegedly defamatory Facebook post of July 4, 2022, and alleging that it was "shared and/or republished" by Shipman, Bradley, and an original Defendant); *id.* at 81, ¶ 140 (Shipman and Bradley also "falsely accused [Ward] of 'drug use'" and portrayed him "as abusive toward animals and unsafe to be around children"); *id.* at 82, ¶ 141 (Shipman, Bradley, Daniels, and three original Defendants published statements falsely accusing Ward of "various crimes"); *id.* at 88, ¶ 164 (alleging that, "[a]fter [Ward's] pony rides were shut down," Daniels "made public statements" falsely implicating Ward in "criminal sexual misconduct involving a minor"); *compare supra* n.3 and surrounding text (summarizing the FAC's similar defamation allegations that survived screening).

under *Twombly* and *Iqbal*, the Court is disinclined to reject as futile the proposed defamation claims against Bradley, Shipman, and Daniels.

The Court also considered whether these new defamation claims might be futile under the statute of limitations. *See generally Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (leave to amend may be "properly denied" on futility grounds if "proposed amendment . . . would . . . be time-barred"). According to the SAC, much of the allegedly defamatory conduct appears to have occurred on or around July 4, 2022, when Turner supposedly made the aforementioned Facebook post, and others (such as Shipman and Bradley) "shared" or "republished" it. SAC at 19, 29, 81, ¶¶ 45, 60, 139. Moreover, Ward generally describes the alleged defamation as being part of a "smear campaign" whose "goal was to shut . . . down" his pony-ride activities and that culminated in the passage of the ordinance on September 6, 2022. *Id.* at 36, 38, ¶¶ 67, 69; *see supra* Part I-A (sourcing passage date of ordinance to municipal website).

Over three years later, *i.e.*, on November 25, 2025, Ward tried to sue Bradley, Shipman, and Daniels for the first time in this lawsuit by filing his Motion for Leave. (Doc. 208). That's the effective "commencement" date for purposes of any limitations analysis. *See J.D. Fields & Co., Inc. v. Nucor-Yamato Steel Co.*, No. 4:12-cv-00754-KGB, 2015 WL 12696209, *3 (E.D. Ark. Dec. 4, 2015) (concurring with "[m]ultiple courts" that have held that, "'[w]hen a plaintiff seeks to add a new defendant in an existing action, the date of the filing of the motion to amend constitutes the date the action was commenced for statute of limitations purposes'") (citations omitted).

Arkansas law supplies the limitations periods for these claims.[21] An "action for slander must be brought within one year of publication," *Milam v. Bank of Cabot*, 937 S.W.2d 653, 656 (Ark. 1997) (citing ARK. CODE ANN. § 16–56–104(3)), "whereas a libel claim is governed by a three year limitations period," *Hackett v. Vinco, Inc.*, No. 4:10-cv-00003-JLH, 2010 WL 716422, *2 n.1 (E.D. Ark. Feb. 24, 2010) (citing ARK. CODE ANN. § 16–56–105(5)). Thus, Ward's defamation claims against Bradley, Shipman, and Daniels may be time-barred insofar as they are based on any slander that occurred prior to late November 2024 and on any libel that occurred prior to late November 2022.

At this juncture, however, the Court cannot reject these new defamation claims as time-barred. A limitations defense permits dismissal—and, by extension, rejection of a proposed amendment as futile—only if "it appears from the face of the complaint itself that the limitation period has run," *Guy v. Swift & Co.*, 612 F.2d 383, 385 (8th Cir. 1980). Here, the SAC does not specify *when* Bradley, Shipman, and Daniels uttered or published any allegedly defamatory statements. The SAC suggests that they may have done so from July to September of 2022—in which case, the claims are likely time-barred—but the SAC does not clearly confine the allegedly defamatory conduct to that period. Indeed, in one passage,

[21] In certain circumstances described in 28 U.S.C. § 1367, such state-law claims may be brought in a federal court under its supplemental jurisdiction. As "in a diversity case" under 28 U.S.C. § 1332, a federal court exercising § 1367 "supplemental jurisdiction" over state-law claims "is bound to apply the substantive state law governing [those] claims." *Emmenegger v. Bull Moose Tube Co.*, 324 F.3d 616, 624 n.9 (8th Cir. 2003). State statutes of limitations are "substantive," *Paracelsus Healthcare Corp. v. Philips Med. Sys., Nederland, B.V.*, 384 F.3d 492, 495 (8th Cir. 2004), and so they apply to state-law claims when "brought in federal court under diversity or supplemental jurisdiction." *Wood v. Mike Bloomberg 2020, Inc.*, No. 1:20-CV-2489, 2023 WL 5747343, *6 (S.D.N.Y. Sept. 6, 2023); *see Barrett v. Carlos O'Kelly's Inc.*, No. 13-CV-2047, 2013 WL 5503666, *2 (N.D. Iowa Oct. 2, 2013) (when "a federal court exercises supplemental jurisdiction over a state-law claim," it "should apply the forum state's substantive law," including "state statutes of limitations") (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988); *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945)).

the SAC ascribes alleged defamation to Daniels that, as pleaded, may have occurred *after* the September 2022 ordinance passage. *See* SAC at 88, ¶ 164 (describing false statements allegedly made by Daniels "[a]fter the Plaintiff's pony rides were shut down"). Because Ward does not "allege facts" in the SAC that "would permit the Court to determine when" Bradley, Shipman, and Daniels allegedly defamed him, the Court cannot determine "the triggering date for purposes of applying a statute of limitations." *Muff v. Wells Fargo Bank, N.A.*, No. 21-CV-4003, 2021 WL 6881380, *5 (N.D. Iowa Dec. 28, 2021), *aff'd*, 71 F.4th 1094 (8th Cir. 2023). And so, on the present record, the Court cannot conclude—"from the face of the complaint itself," *Guy*, 612 F.2d at 385—that the proposed claims against Bradley, Shipman, and Daniels are time-barred and, therefore, futile.[22]

Copenhaver, Duncan, Moore, and Rogers raise no futility objection to the proposed addition of defamation claims against Bradley, Shipman, and Daniels. (Doc. 215). Rather, their Response opposes "[t]he addition of new parties" (including, presumably, Bradley, Shipman, and Daniels) because they "will have to be served, have time to file a response, and to then conduct discovery," and this "will likely result in the undue delay of these proceedings," *id.* at 3. The Response thus raises another prejudice argument, which the Court again rejects. *See supra* Part II-B(1)(b)(ii). Although it will take *some* time for Bradley, Shipman, and Daniels to be served and to respond to the SAC—and additional

[22] *See Brazil v. Ark. Dep't of Hum. Servs.*, No. 5:15-cv-253-DPM, 2015 WL 13767014, *1 (E.D. Ark. Oct. 27, 2015) (plaintiff asserting ADEA claim "cut it close on the 90-day window to sue," but court allowed claim to proceed past screening because, "without knowing when [the plaintiff] received her right-to-sue notice," it could not "call her claim untimely"); *Hui Kun Li v. Shuman*, No. 5:14-CV-00030, 2015 WL 3766182, *13 & n.14 (W.D. Va. June 16, 2015) (as complaint contained "no allegations as to when or where" the defendant made the alleged "misrepresentations," the court could not "say with certainty" that fraud claims were "time-barred").

discovery may be necessary to accommodate their addition to the case—the Court does not foresee that such processes will unduly delay the case's resolution in a way that causes *undue* prejudice to any Defendant or the Court. Again, the Court is open to a motion to reopen discovery "for the limited purpose of exploring" the additional claims allowed in this Order, *Dennis*, 207 F.3d at 526, and it would not expect any additional discovery concerning Bradley, Shipman, and Daniels to be significant.[23]

Lastly, any harm to any Defendant occasioned by the allowance of the defamation claims against Bradley, Shipman, and Daniels must be "balanced" against the hardship to Ward were he denied leave to add these claims. *Buder*, 644 F.2d at 694. Of note, Ward says that he only "recently" acquired evidence of these individuals' alleged involvement in the underlying events. (Doc. 208 at 5, ¶ 18); *see id*. at 3, ¶ 11(D) (referring to "[n]ewly identified defamation" by Bradley, Shipman, and Daniels). No one disputes that assertion, and, at least for present purposes, the Court accepts it as plausible. On balance, then, the equities favor the defamation amendments that Ward proposes as to Bradley, Shipman, and Daniels.

**4. City of Jonesboro and NEAHS**

In the proposed SAC, Ward purports to sue the City of Jonesboro under § 1983 and *Monell v. Department of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978); *see* SAC at 92–96, ¶¶ 172–80 (Count IV), and the NEAHS for defamation under Arkansas law. *Id*. at 96–99, ¶¶ 181–86 (Count V). Ward appears to base the proposed *Monell* claim on (1) new

[23] Not least because the parties already have taken discovery on Ward's related defamation claims against Turner, Trevathan, and possibly Hively. (Docs. 282, 283, 300).

allegations concerning the involvement of municipal personnel (and Defendant Daniels) in the operation of veterinary clinics and the improper use or distribution of certain veterinary medications, *see id.* at 24–27, 43–46, ¶¶ 53–59, 75–81; and (2) Ward's earlier allegations implicating Copenhaver, Duncan, Moore, and Rogers in "constitutional violations" (*e.g.*, concerning the ordinance and parking-lot incident) that Ward now says resulted from municipal "policies, customs, [or] practices," *id*. at 92–95, ¶¶ 172–77, 179. Ward appears to base the proposed defamation claim on the alleged conduct of Defendants Trevathan and Shipman (who, respectively, are said to be an NEAHS employee and a member of the NEAHS Board of Directors), and he asserts this claim against the NEAHS relying on theories of *respondeat superior*, "ratification," "deliberate indifference," and "failure to intervene." *Id.* at 97–98, ¶¶ 181, 184–85. For the reasons that follow, the Court will deny Ward's request to assert these new claims in this lawsuit.

**a. Tangential Claims Concerning Veterinary Practices**

First, Ward avers that his proposed amendments are necessitated by "newly obtained evidence" that includes, among other things, "[r]ecords and receipts showing City of Jonesboro personnel selling prescription-only veterinary drugs to NAFA." (Doc. 208 at 2, ¶ 6(B)). As previously mentioned, NAFA appears to be a private, volunteer animal-rescue organization that, with Defendant Turner as its "Director," SAC at 4, ¶ 8, partners with the City of Jonesboro Animal Services Department in the provision of vaccination and cat-neuter clinics. *See supra* n.1 (citing NAFA and municipal websites). Now, Ward alleges that NAFA and Turner operated these clinics using "regulated" veterinary medications in ways violative of state and federal law, SAC at 24, ¶¶ 53–54, and that

Defendant Rogers improperly distributed the medications to NAFA "with the knowledge, acquiescence, or approval of Defendants Copenhaver, Moore, and Duncan." *Id.* at 24–25, ¶¶ 54–55. Ward also avers that "promotional materials" identified Defendant Daniels, *i.e.*, "Laura Dacus, DVM," as a veterinarian who participated in the NAFA clinics. *Id.* at 44, 46, ¶¶ 76, 80–81.[24]

What Ward means to do with these allegations is unclear. Elsewhere in the SAC, he points to NAFA's operations in the animal-care sphere—allegedly without having to buy an insurance policy—as evidence of the ordinance's "selective enforcement" against him. SAC at 25–26, 27, 44–46, 78, ¶¶ 55–57, 59, 76, 78–80, 134. The Screening Order arguably allows Ward to pursue such a claim. (Doc. 14 at 2). If Ward offers these new veterinary-practice allegations merely as background information for such a selective-enforcement claim that's already in the case, then the allegations (although "extra") raise no significant concern for the Court right now.

But it's also possible to read the SAC as attempting to assert a *Monell* claim against the City of Jonesboro, and perhaps some unspecified claim against Daniels, based on municipal personnel's alleged distribution of veterinary medications to NAFA, their "tolerance" of NAFA's "unlicensed veterinary practice," and Daniels's participation as a

[24] *See also* SAC at 25, ¶ 56 (alleging that "the City of Jonesboro, through . . . Copenhaver, Duncan, Rogers, and Moore, knowingly allowed NAFA to operate in this unlicensed manner"); *id.* at 26, ¶ 58 (alleging that municipal "personnel, including but not limited to individuals within Jonesboro Animal Control, made prescription-restricted veterinary biologicals and controlled veterinary substances available to NAFA members, despite knowing that NAFA was not a registered nonprofit, not a verified rescue, and had no licensed veterinary staff" as required by Arkansas statutes and "applicable federal standards"); *see also id*. at 43–46, ¶¶ 75–81.

veterinarian. SAC at 26, ¶ 57.[25] Indeed, as suggested by Copenhaver, Duncan, Moore, and Rogers, the proposed SAC "appears to add the City of Jonesboro as a Defendant for purportedly selling prescription veterinary drugs" to NAFA. (Doc. 215 at 1, ¶ 4).

If that is Ward's aim, then the Court denies him leave to assert in this case any claim for relief against any Defendant based on these veterinary-practice allegations. "These new allegations," as the Response says, "are not based on the same core of operative facts as the FAC," and they "are unrelated to the facts alleged in the FAC" and "to any of the federal claims that are the basis" for the Court's "jurisdiction." *Id.* at 1–2, ¶¶ 5, 10. The Court agrees and finds that any veterinary-practice claim is tangential and "too far attenuated to proceed in the same action" with Ward's claims that survived screening. *Hill v. Carnard*, No. 4:25-cv-01205-LPR-BBM, 2026 WL 1893402, *2 (E.D. Ark. June 30, 2026).

**b. Prejudice**

Second, the Court finds that it would unduly prejudice the current Defendants and the court system generally if it allowed Ward to add the new *Monell* and *respondeat superior* claims he proposes against the City of Jonesboro and the NEAHS. For starters, the *Monell* and *respondeat superior* claims are substantively different from the FAC's claims. The FAC asserted no claim at all about veterinary practices. And although it mentioned the City and the NEAHS, the FAC asserted no claim of any kind against either

[25] *See* SAC at 25, ¶ 56 ("The City's deliberate indifference to NAFA's unlawful possession and use of veterinary biologicals, combined with its targeted enforcement actions against Plaintiff, demonstrates a coordinated scheme, custom, or practice undertaken to protect NAFA while depriving Plaintiff of equal protection of the laws."); *id.* at 27, ¶ 59 (describing the City's alleged facilitation of "this unlawful distribution of restricted veterinary substances," and its "willingness to enable NAFA's noncompliant clinics," as part of "an unlawful municipal custom within the meaning of *Monell*" that was "a moving force behind the constitutional injuries suffered by the Plaintiff").

entity.[26] Consequently, the Court finds that, if allowed, these particular amendments would inject "new substantive claims" and "new theories of recovery" into the case and raise "different factual and legal issues" compared to those in the FAC. *Bell*, 160 F.3d at 454. That portends a greater risk of prejudice based on the necessity of additional discovery that, in the Court's view, would be far more extensive and delay-causing than any discovery needed on the new claims, allowed above, that are narrower in scope and more similar to claims already in the case. *See id*. at 454–55 (affirming denial of motion to amend that would have injected into case new "substantive claims" because they "involve different factual and legal issues than the allegations in the original complaint").

Moreover, although Ward says he only recently learned of the alleged underlying involvement of Bradley, Shipman, and Daniels, (Doc. 208 at 3, 5, ¶¶ ¶ 11(D), 18), he certainly has known for much longer—since at least September 2022 when he filed the original Complaint—of the employment relationships between the City and NEAHS on the one hand and, on the other, the individual-capacity Defendants who allegedly worked for those entities. (Doc. 2 at 3–4, ¶¶ 1–2, 4–5). Yet Ward provides no explanation for why he did not seek to sue the City and NEAHS any earlier. *See*, *e.g.*, *Kozlov v. Associated Wholesale Grocers*, 818 F.3d 380, 395 (8th Cir. 2016) (motion to amend "was properly denied" where it was filed "four years after the filing of the complaint," the defendant "would have been prejudiced by the amendment," and the plaintiff "gave no cause or valid

[26] As noted in the Screening Order, Ward "plainly state[d]" in the FAC that he was "suing Defendants in their individual capacities only, and *he has not named the City as a Defendant*." (Doc. 14 at 2 n.7) (emphasis added).

reason for failing to amend the complaint earlier"); *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D. 578, 583 n.2 (D. Minn. 1999) (motion to amend may be properly denied if filed "long after the moving party was on notice of" the proposed claim, "or reasonably should have been aware that such a claim existed," and "the suggested amendments would broadly expand the issues in the case" and "necessitate a significant enlargement in the scope of the parties' current discovery").

**c. Futility**

Third, as previously mentioned, "futility of amendment," *Foman*, 371 U.S. at 182, is another "'valid basis for denying leave to amend.'" *Sorace v. United States*, 788 F.3d 758, 768 (8th Cir. 2015) (citations omitted). Given the preceding analysis, the Court need not make any definitive findings as to whether the proposed claims against the City of Jonesboro and the NEAHS are futile. But, if it had to reach the issue, it would find these claims to be futile as pleaded.

For instance, as noted in the Response, "the SAC does not in any meaningful way describe what cause of action is created by" Ward's new veterinary-practice allegations or how Ward "has standing to complain" about the alleged violations of the state and federal veterinary laws he cites. (Doc. 215 at 1, ¶ 5). The Court agrees. *See*, *e.g.*, *Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 538 (8th Cir. 2024) (to show "standing," *i.e.*, "a personal stake in the lawsuit," the plaintiff "must plead facts that demonstrate, among other

things, that she suffered an injury that is 'concrete' and 'real,' not merely 'abstract'") (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 340 (2016)).[27]

Moreover, although Ward seeks to sue NEAHS for defamation based on *respondeat superior* and the alleged conduct of its employee, Trevathan, his bare assertion that she acted "within the scope" of her NEAHS employment, SAC at 97, ¶ 181, "amounts to a legal conclusion" that is "insufficient" under *Twombly* and *Iqbal* to state a "plausible" *respondeat superior* claim. *Victoria Select Ins. Co. v. R&G Transp.*, No. 3:16-cv-624, 2017 WL 5158684, *4 (E.D. Va. Sept. 7, 2017); *see Miles v. Simmons Univ.*, 514 F. Supp. 3d 1070, 1075–76 (D. Minn. 2021) (plaintiff alleging vicarious liability must "plead enough facts to make it plausible" that employee acted "within the scope of his employment"). The *Monell* allegations against the City of Jonesboro also fall short under the Supreme Court's "well-established federal pleading standards," *Hikma Pharms.*, 608 U.S. at 589.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Ward's Motion for Leave in part. The Clerk of Court will be directed to file the SAC, (Doc. 208-1), on the docket of this case but *not* to add the City of Jonesboro and the NEAHS as defendants.

---

[27] *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573–74 (1992) ("a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy"); *Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties").

IT IS THEREFORE ORDERED THAT:

1. Plaintiff's Motion for Leave to File Second Amended Complaint, (Doc. 208), is GRANTED in part and DENIED in part.

2. The Clerk of Court is directed to file on the docket of this case the proposed SAC that is currently at (Doc. 208-1). Subject to the terms of this Order, the SAC will be treated as the operative pleading in this case.

3. Ward is now proceeding with these claims against these Defendants:

- Claims against Copenhaver, Duncan, Moore, Rogers, and Turner—under § 1983, the Fourteenth Amendment Equal Protection Clause, and the First Amendment's Free Speech or Free Exercise Clauses—based on (a) the alleged April 22, 2022 incident in which one or more City of Jonesboro employees interfered with Ward's panhandling activities in a parking lot, and (b) the passage or enforcement of the aforementioned city ordinance, SAC at 68–77, ¶¶ 110–31 (Count I);

- A claim against Moore and Duncan under § 1983 and the Fourth Amendment regarding Moore's alleged parking-lot interaction with Ward on April 22, 2022, SAC at 69–71, 73, ¶¶ 110, 114(a), 116, 119–21 (Count I);

- Section 1985(3) claims against Copenhaver, Duncan, Moore, Rogers, and Turner insofar as they are based on an alleged "conspiracy" concerning the April 22, 2022 parking-lot incident and the passage or enforcement of the ordinance, SAC at 77–80, ¶¶ 132–37 (Count II);

- Claims for defamation (*i.e.*, libel and slander) under Arkansas law against Turner, Trevathan, Hively, Randall, Bradley, Shipman, and Daniels, SAC at 80–91, ¶¶ 138–71 (Count III); and

- AFOIA claims against Copenhaver, Duncan, Moore, and Rogers, SAC at 56, 61, 72, ¶¶ 88, 96, 118.

4. Leave to amend is DENIED as to the City of Jonesboro, the NEAHS, and any separate veterinary-practice claim as to any party. The Clerk of Court is directed *not* to add the City of Jonesboro and the NEAHS as defendants to this action.

5. As to the current Defendants—including Copenhaver, Duncan, Moore, Rogers, Trevathan, Hively, and also Turner (because the SAC asserts new claims against this defaulted defendant, *see* FED. R. CIV. P. 5(a)(2))—service of the SAC shall be accomplished according to Federal Rule of Civil Procedure 5.

6. As to the new Defendants—Randall, Bradley, Shipman, and Daniels—the SAC shall be served in accordance with Federal Rule of Civil Procedure 4.

7. The Clerk of Court is directed to prepare summonses for Randall, Bradley, Shipman, and Daniels, and the United States Marshal is directed to serve copies of the SAC, this Order, and the summonses for these Defendants without requiring prepayment of fees and costs or security.

8. Service may be attempted by mail as to Bradley, Shipman, and Daniels at their respective addresses provided by Ward. *See* SAC at 6–7, ¶¶ 13–15.

9. Given its previous difficulties in serving documents on Randall by mail, (Docs. 146–148, 151), the Court directs the United States Marshal to attempt to serve Randall with her summons, this Order, and the SAC—in person—at the address provided by Ward, *see* SAC at 5, ¶ 10 (listing 920 Neville Court, Jonesboro, AR 72401), and if unsuccessful, at her last-known address suggested by earlier court records (*i.e.*, 6007 Beaver Creek Lane, Jonesboro, AR 72404).

SO ORDERED this 25th day of September, 2026.

UNITED STATES MAGISTRATE JUDGE